UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| ) | No. 1:18cv05391 |
| v. ) | |
| ) | Hon. Judge Rowland |
| BROADCASTING BOARD OF ) | |
| GOVERNORS et al. ) | |
| ) | |
| Defendants ) | |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OR FOR LIMITED DISCOVERY**

    The Freedom of Information Act (FOIA), 5 U.S.C. §552 et seq, is designed to pierce the veil of administrative secrecy: the Act is a means to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *See N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). The law was enacted to promote government transparency and accountability by bringing agency records reflecting opaque government activities into public view upon request. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976) (internal citation and quotation omitted)("[D]isclosure, not secrecy, is the dominant objective of the Act"). Although an agency may withhold records under the enumerated FOIA exemptions, the agency must justify each withholding with enough detail for the FOIA requester and the court to meaningfully evaluate its legitimacy. This level of detail not only holds the agency accountable but also helps balance FOIA's inherently asymmetrical distribution of knowledge to ensure a

1

fair adversarial process. The need for transparency is especially acute whereas here even protracted litigation has not resolved the initial requests.

In response to Plaintiff Stevens's 29 separate FOIA requests, the various agencies have produced thousands of heavily redacted records and kept thousands more behind its respective administrative veil. Before the parties may even discuss whether these withholdings were proper, each agency has a legal obligation to (1) perform an adequate search for the requested records; (2) identify the withheld records; and (3) explain why they are exempt. For these reasons, Plaintiff Stevens respectfully requests that she be allowed limited discovery, to wit, production of the actual index searches (or FOIA processing records) used in each of the 8 challenged FOIA requests identifying the locations/files/components searched and the search terms used to respond to each request at issue. In the alternative, each agency should produce a detailed declaration and full *Vaughn* index to allow Plaintiff to determine and/or identify any deficiencies in the searches performed and withholding applied. At this point of the litigation Plaintiff simply does not know what searches were performed and what records are being withheld. Nor does she have enough information about the withheld records to know whether a *Vaughn* index could be reasonably narrowed further without detrimentally affecting Plaintiff's right to access public records.

**FACTS AND RELEVANT PROCEDURAL HISTORY**

In her *pro se* complaint Plaintiff Jacqueline Stevens sought declaratory and injunctive relief with respect to 29 separate FOIA requests she filed with the following administrative agencies: the Board of Broadcasting Governors ("BBG"), the Bureau of Industry and Security ("BIS"), Immigration and Customs and Enforcement ("ICE"), Citizenship and Immigration Services ("USCIS"), the United States Geological Survey ("USGS"), Executive Office of Immigration Review ("EOIR"), Federal Bureau of Investigation ("FBI"), Office of Justice

2

Programs ("OJP"), the Department of Health and Human Services ("HHS"), the United States Department of State ("DOS"), and the United States Administration for International Development ("USAID"). (ECF #1). After the agencies failed to respond or produce the requested records Stevens filed this lawsuit on 8 August 2018. *Id*. In her complaint Plaintiff specifically alleges that "the withholding of responsive records by the Department of Defense ("DOD"), Navy; Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"); and the Department of State ("DOS") are part of a pattern and practice of these agencies." (ECF #1 at ¶4) Stevens further avers that she needs "these records for her scholarship and journalism analyzing professional and criminal misconduct in government, corporations, and non-profit organizations that implement policies on behalf of U.S. national sovereignty." *Id*. at ¶3. At issue in this Motion to Compel are the scope and reasonableness of the searches performed by Defendants to date and the unreasonable withholding of broad categories of responsive records for the following outstanding requests:

1. **BBG FOIA Case No. 16-046-1**

On 13 March 2016 Stevens sent a FOIA request to Defendant BBG seeking the following:

All D3 Systems, Inc. contracts (including addenda) and work products associated with these contracts produced since January 1, 1985. This includes but is not limited to background information and work status updates shared with or received from D3 Systems, Inc. and its employees or subcontractors. (ECF #1 at ¶21)

2. **HHS FOIA Requests**

Stevens made two separate FOIA requests to Defendant HHS. (ECF #1 at ¶¶53-62)

**Case No. 18-F-0210 [Correspondence with David Senn and ICE practices for age assessments]**

The 7 May 2018 Request requested the following records:

> All contracts, invoices, email, work products, draft and final reports, system records, and screen shots of tabs for system records containing materials received, produced, or maintained by HHS and its components, including but not limited to the Office of Refugee Resettlement and its contractors and subcontractors for work requested, performed, OR discussed in any medium with Professor David R. Senn or his representatives between January 1, 2016, and the date your office produces the responsive records.
>
> All correspondence, including but not limited to email and text messages, with employees of Immigration and Customs Enforcement or Customs and Border Protection or its components related to policies, protocols, and practices for assessing the age of those in the custody of HHS or ICE in the United States between January 1, 2016, and the date your offices produces responsive records. ((ECF #1 at ¶53)

**Case No. 18-F-0211 [HHS ORR contracts with Southwest Key Programs for age assessments]**

The second 7 May 2018, FOIA request addressed to HSS was for the following additional records:

> All contracts, addenda, attachments and other materials produced or received by HHS Office of Refugee Resettlement to which Southwest Key has committed for the performance of age assessments, as indicated in the protocols indicated here: (hps://www.acf.hhs.gov/orr/resource/children-entering-the-united-statesunaccompanied-secon-1 # 1.62).
>
> All invoices or other records maintained or submitted by Southwest Key for documenting expenditures for providing age assessments to HHS or its components, including but not limited to the Office of Refugee Resettlement. I am requesting these for work performed between January 1, 2016 and the present. (ECF #1 at ¶54)

3. <u>USCIS FOIA Requests</u>

Plaintiff Stevens submitted to Defendant USCIS two separate FOIA requests:

> **Case No. COW2018000623 [Northwestern University E-Verify data]**
>
> (1) All information in any form from Northwestern University, Evanston, IL used for registering, reviewing, and renewing E-Verify for employees at Northwestern University between January 1, 2008 and the present with the exception of individual-level data entered in the system This includes but is not limited to email, submission forms, and data submitted online.
>
> (2) All email between Northwestern employees or agents of Northwestern pertaining to E-Verify, including all attachments, linked documents, and referenced documents. This

4

includes email related to specific personnel, with the understanding that names and other identifying information will be redacted. (ECF #1 at ¶116)

**Case No. CNT2018000017 [General Dynamics Contract]**

The initial Scope of Work, attachments, renewals, and email associated with the contract to General Dynamics with Award ID HSSCCG07J00120 and IDV HSHQDC06D00024, with additional details available. Here: https://www.fpds.gov/common/jsp/LaunchWebPage.jsp?command=execute&requestid=87789429&version=l.5 (ECF #1 at ¶138)

4. **USGS FOIA**

**Case No. 2018-00160 [Northwestern University Contracts with Award ID: 140G0118P0244]**

The 22 May 2018 FOIA sent to Defendant USGS requested the following records:

All contracts, MOUs, email, and attachments to email or contracts ,and all other materials related to the contract between Northwestern University and the USGS associated with the AwardID: 140G0118P0244. Please go here for related information: https://www.fpds.gov/common/j sp/Launch WebPage.i sp?command=execute&requestid=87791893&version=l.5 . I am requesting also the Scope of Work and similar documents defining the service expected by the USGS, and all attachments, including from similar contracts from earlier time frames; finally, I am requesting all USGS materials associated with the evaluation and extensions of the contract. (ECF #1 at ¶141)

5. **USAID FOIA Case No. F-00040-16**

On 18 October 2015 Plaintiff Stevens submitted a FOIA request to Defendant USAID for the

following records:

All contracts, reports, memoranda of understanding, grants, and email to, from, or about Northwestern University produced, received, or maintained by employees in your office. This includes but is not limited to records concerning the Northwestern campus in Education City, Doha, Qatar and surveys on media use commissioned by the State Department. (ECF #1 at ¶168)

6. **ICE FOIA Requests**

Plaintiff Stevens submitted multiple FOIA requests to Defendant ICE including the following:

**Case No. 2018-ICFO-25719 [PLAnet records]**

>All documents uploaded to the PLAnet case management system since January 1, 2016 regarding persons claiming or proving U.S. citizenship. This includes, but is not limited to, memoranda on claims of U.S. citizenship and all related items (including but not limited to notes and screenshots of database interfaces), and any and all information entered in the "USC Claims" section of PLAnet, as well as screenshots of all tabs for PLAnet users who access information on USC claims. (ECF #1 at ¶67)

**Case No. 2018-ICFO-26000 [Private contractor use of detainee labor]**

>All material received, produced, referred to, or maintained since January 1, 2016 by Immigration and Customs Enforcement and its components related to the use of detainee labor by private contractors. This includes but is not limited to system records, contracts, including memorandums of understanding and addenda, letters, memoranda, reports, draft reports, policy proposals, notes, text messages, faxes, and email that is intra- and inter-agency as well as all communications with private lobbyists, firms, individuals, journalists, and members of Congress. Please include screenshots of interfaces used by ICE employees accessing responsive materials from databases. (ECF #1 at ¶75)

**ICE FOIA Case No. 2018-ICFO-47097, Grievance logs at Polk (Jan. 1, 2018 to present).**

>All records pertaining to grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance from January 1, 2018 to present.

**Case No. 2018-ICFO-47101, Grievance logs at Polk (Jan. 1, 2016 to Dec. 31, 2017).**
>All records pertaining to grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including buf:riot limited to Contract Inspectors evaluating Polk County performance from January **1,** 2016 to December 31, 2017.
>(ECF #1 at ¶109)

Since August 2018 Plaintiff and counsel for Defendants have attempted to resolve their disagreements regarding the voluminous document production. At the request of Defendants Plaintiff summarized the deficiencies she perceived with Defendants' production. *See* Exhibit A. Defendants responded through counsel and provided some clarifications and additional production. *See* Exhibit B & C. The various Defendants ultimately identified a total of approximately 12,416 pages of responsive records but withheld many thousands of pages in full and released others with massive redactions. *See* Exhibit E (representative sample). In addition,

Defendants claim that they cannot search for any text messages and have redacted nearly all substantive email content that were produced. *Id*. They generally left email salutations and some content visible but redacted most of the substantive contents and the domain name of the email addresses (after the '@' signal). While Defendants stamped the various redactions with (b)(3), (b)(4), (b)(5), or (b)(6), they provided no further justification. *See* Exhibit D. The records withheld in full are even more concerning. Some production letters alleged that these records were withheld under the (b)(3) and (b)(5) exemptions while other production letters did not allege any specified basis for the withholding. In sum, Plaintiff has no way of knowing what search methodology was used to respond to her requests, the databases/locations/files searched, the total number of records retrieved, the type of withheld records at issue, or even on what basis the various Defendants claim a (b)(5) privilege, for example.[1]

**II.    ARGUMENT**

I.    **Text Messages are "public records" and are subject to production**.

Defendants do not dispute that various government officials within DHS and HSS used hand-held devices to send and receive text messages. Defendants have asserted, however, that they allegedly cannot search for and thus cannot produce the text messages responsive to Plaintiff's FOIA requests: 18-F-0210, ICFO-26009, COW20180000623. Defendants' position is meritless.

*First*, with the 1996 amendments to the Act Congress included a definition of the term "records" in FOIA, defining it as including "any information that would be an agency record . . .

---

[1] Because Defendants have produced no detailed Vaughn indexes Plaintiff cannot and is not seeking summary judgment at this point. Plaintiff reserves the right to respond to any motion for summary judgment filed by Defendants and to respond to specific factual allegations that Defendant may interpose.

when maintained by an agency in any format, including an electronic format." *See* 5 U.S.C. § 552(f)(2)(A). As set forth in a National Archives and Records Administration (NARA) bulletin, "electronic messages" include "Chat/Instant messaging," "Text messaging, also known as Multimedia Messaging Service (MMS) and Short Message Service (SMS)," and "Other messaging platforms or apps, such as social media or mobile device applications. These include text, media, and voice messages." *See* NARA Bulletin No. 2015-02 available at https://www.archives.gov/records-mgmt/bulletins/2015/2015-02.html. In this context, text messaging involves "short message[s] sent electronically usually from one cell phone to another," *see* 'text message' definition, Merriam-Webster.com (last visited 2/28/2020), while instant messaging is defined as "an electronic messaging service that allows users to determine whether a certain party is connected to the messaging system at the same time" and that enables users "to exchange text messages with connected parties in real time," *see* Nat'l Archives & Records Admin., Frequently Asked Questions about Instant Messaging, http://www.archives.gov/records-mgmt/initiatives/im-faq.html. NARA thus has made clear that Instant Messaging content can "qualify as a Federal Record," since it "allows users" to "exchange text messages," which are "machine readable materials" and thus within the "statutory definition of records". *See id*.

  *Second*, the Federal Records Act defines "electronic messages" to mean "electronic mail and other electronic messaging systems that are used for purposes of communicating between individuals." *See* 44 U.S.C. §2911(c)(1). 36 C.F.R. §1220.18, in turn, defines an "electronic record" as "any information that is recorded in a form that only a computer can process and that satisfies the definition of a Federal record under the Federal Records Act. The term includes

8

both record content and associated metadata that the agency determines is required to meet agency business needs."

The Federal Records Act establishes the framework for records management throughout the federal government and requires the heads of all federal agencies, including DHS and HHS, to establish a system to capture, preserve, and safeguard records, including those in electronic form, created in the conduct of official government business. *See* 44 U.S.C. chps. 21, 29, 31, 33; 36 C.F.R pts. 1220-1239. The Federal Records Act defines a "record" as any material, "regardless of physical form or characteristics, made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the Government or because of the informational value of data in them." *See* 44 U.S.C. §3301. The Federal Records Act requires the head of each federal agency to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." *See* 44 U.S.C. §3101.

Further, each agency head must "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency," that, inter alia, provides for "effective controls over the creation and over the maintenance and use of records in the conduct of current business." *See* 44 U.S.C. §3102. Agency heads are also obligated to "establish safeguards against the removal or loss of records the head of such agency determines to be necessary and required by regulations of the Archivist." *See* 44 U.S.C. §3105; *see also* 36

C.F.R. §1230.10(a) (agency heads must "[p]revent the unlawful or accidental removal, defacing, alteration, or destruction of records"); 36 C.F.R. §1230.10(c) (agency heads must "[i]mplement and disseminate policies and procedures to ensure that records are protected against unlawful or accidental removal, defacing, alteration and destruction"). Moreover, records, including electronic record such as instant messages, may be disposed of only in accordance with the provisions of the Federal Records Act. *See* 44 U.S.C. §3314 ("The procedures prescribed by this chapter are exclusive, and records of the United States Government may not be alienated or destroyed except under this chapter.)

In a bulletin sent to the heads of all federal agencies, NARA explained that all "[e]lectronic messages created or received in the course of agency business are Federal records. Like all Federal records, these electronic messages must be scheduled for disposition." *See* Nat'l Archives & Records Admin., Bull. No. 2015-02, Guidance on Managing Electronic Messages (July 29, 2015). NARA further explained that "agencies must have records schedules that cover electronic messages. . . . If an existing authority does not cover electronic messages that are records, agencies must develop a new disposition authority. Electronic messages may have short-term, long-term, or permanent value and will need to be scheduled and managed accordingly. By law, unscheduled records must be treated as permanent." *Id*.; *see also* 36 C.F.R. §1230.3(b) (unlawful or unauthorized destruction "means disposal of an unscheduled or permanent record; disposal prior to the end of the NARA-approved retention period of a temporary record . . . .").

The Court must compel Defendants HSS and DHS to search for and produce all text messages responsive to Plaintiff's requests. In the alternative, the Court must declare that by failing to capture, preserve, or retain a whole class of federal records (i.e., instant message

10

records) Defendants DHS and HSS are in violation of their statutory obligations relating to the preservation, maintenance, and safeguarding of records under the Federal Records Act.

2. **Defendants HSS and DHS must search for and produce all records, including agency records maintained for the agencies by government contractors such as Dr. Senn and Southwest Keys.**

The FOIA's definition of "record" expressly provides that the term includes information that qualifies as 'a record' under the FOIA and "is maintained for an agency by an entity under government contract, for the purposes of records management." *See* 5 U.S.C. § 552(f)(2)(B); *see also Am. Small Bus. League v. US Small Bus.*, 623 F.3d 1052, 1053-54 (9th Cir 2010) (holding that wireless provider's records were not agency "records" because records were not "'maintained for an agency by an entity under Government contract, for the purposes of records management'" (quoting 5 U.S.C. § 552(f)(2)(B)); *see also* FOIA Post, "Treatment of Agency Records Maintained for an Agency by a Government Contractor for Purposes of Records Management" (posted 9/09/08) (advising that term "records" includes agency records maintained for agency by government contractor for purposes of records management, even if such records are not physically in possession of agency).

Defendants, however, refuse to produce various categories of records maintained by Dr. Senn and Southwest Keys under their respective contracts with HSS, including but not limited to (1) all dental radiographs performed by Dr. Senn under contract with DHS and HSS; (2) all Memorandum of Age Determination/Redetermination, (3) all contracts with Dr. Senn; and (4) all invoices submitted by Dr. Senn and Southwest Keys to HSS or its components. (Exhibit B&C) Here the requested documents were created pursuant to written contracts with HSS and were specifically used in the course of the respective agency's discharge of its official duties. *See Gen. Elec. Co. v. NRC*, 750 F.2d 1394, 1400- 01 (7th Cir. 1984) (determining that agency

11

"use" of internal report submitted in connection with licensing proceedings renders report an agency record); *Chi. Tribune Co. v. HHS, No*. 95-C-3917, 1997 WL 1137641, at *15-16 (N.D. Ill. Mar. 28, 1997) (finding that notes and audit analysis file created by independent contractor are agency records because they were created on behalf of (and at request of) agency and agency "effectively controls" them); *Los Alamos Study Group v. DOE*, No. 97-1412, slip op. at 4 (D.N.M. July 22, 1998) (holding that records created by contractor are agency records because government contract "establishes [agency] intent to retain control over the records and to use or dispose of them as they see fit" and agency regulation "reinforces the conclusion that [agency] intends to exercise control over the material"); *cf. Judicial Watch v. Fed. Hous. Fin*. Agency, 646 F. 3d 924, 928 (D.C. Cir. 2011) ("[W]here an agency has neither created nor referenced a document in the 'conduct of its official duties,' the agency has not exercised the degree of control required to subject the document to disclosure under FOIA" (quoting Tax Analysts, 492 U.S. at 145)); *Consumer Fed'n of Am. v. USDA*, 455 F.3d 283, 288 (D.C. Cir. 2006) (finding that agency employees' electronic calendars maintained on work computers were not agency records because they were not distributed to other employees so that they could perform their duties); *Katz v. NARA*, 68 F.3d 1438, 1442 (D.C. Cir. 1995) (holding that autopsy x-rays and photographs of President Kennedy, created and handled as personal property of Kennedy estate, are presidential papers, not records of any agency); *see also* OMB Circular A-110, "Uniform Administrative Requirements for Grants and Agreements with Institutions of Higher Education, Hospitals, and Other Non-Profit Organizations," 64 Fed. Reg. 54,926 (Oct. 8, 1999) (requiring agencies to respond to FOIA requests for certain grantee research data by first obtaining that data from grantee, in implementation of Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999).

In sum, the straight-forward purpose of the amendment was to make clear that agency records remain subject to the FOIA even if they have been placed in the physical possession of a government contractor for purposes of records management. Senator Leahy explained that Section 9 "clarifies that FOIA applies to agency records that are held by outside private contractors, no matter where those records are located." *See* 153 Cong. Rec. S15831 (daily ed. Dec. 18, 2007) (statement of Sen. Leahy); *see also*, 153 Cong. Rec. S14849 (daily ed. Dec. 6, 2007) (same); 153 Cong. Rec. S10987 (daily ed. Aug. 3, 2007) (same).

Contrary to Defendants' position whereas here an agency relinquishes possession of its agency records to a contractor for the purposes of records management, those records remain subject to the FOIA, just as if possession had not been transferred.

3. **Defendants must produce data fields, and computer-based or computer-generated information such as screenshots of platforms and software used by the agency.**

Plaintiff Stevens specifically requested production of PLAnet's "screenshots of database interfaces". (ICFO-25719) Defendant ICE contends that the request is beyond the scope of the Act but provide no authority for such proposition. (Exhibit B&C) FOIA states that "an agency shall provide [a] record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format." *See* 5 U.S.C. §552(a)(3)(B); *see also* 6 C.F.R. § 5.11(b)(3) ("Components shall honor a requester's specified preference of form or format of disclosure … ."); *see also DeLorme Pub. Co. v. Nat'l Oceanic & Atmospheric Admin.*, 907 F. Supp. 10, 12 (D. Me. 1995) ("An agency's duty is to disclose records, and records are formatted information. ….."). This means that agencies must be attentive not only to the content of the records sought by a FOIA request but also to their form. The question of whether computer software and/or platforms used by agencies is included within the definition of 'record' has been decided by the courts according to the particular nature and functionality of

13

the software at issue. Compare *Gilmore v. DOE*, 4 F. Supp. 2d 912, 920-21 (N.D. Cal. 1998) (holding that video conferencing software developed by privately owned laboratory was not a record under FOIA because it was "not designed to be . . . responsive to any particular database" and "does not illuminate anything about [agency's] structure or decision-making process"), with *Cleary, Gottlieb, Steen & Hamilton v. HHS*, 844 F. Supp. 770, 781-82 (D.D.C. 1993) (concluding that software program was a record subject to FOIA production because it was "uniquely suited to its underlying database" such that "the software's design and ability to manipulate the data reflect the [agency's study]," thereby "preserving information and 'perpetuating knowledge.'" (quoting *DiViaio v. Kelley*, 571 F.2d 538, 542 (10th Cir. 1978))). Here the PLAnet database contains both document and field data. Plaintiff has requested not only the output from ICE's PLAnet database but screenshots of the actual interface with the tabs or segments of information categorized as seen by the agency user. The screenshots are records as defined by FOIA because they are integral to the record keeping function of ICE wit respect to adjudication of United States citizenship claims not merely a means to store or access records and thus should be produced.

4. **Plaintiff must be allowed limited discovery to determine the scope of the searches performed.**

The Act defines the term "search" as "to review, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." *See* 5 U.S.C. §552(a)(3)(D). To demonstrate that its search was adequate, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *See Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990). In other words, the search must have been a

good faith effort and reasonable in light of the request. *See Anderson v. DOJ*, 326 F. App'x 591, 592 (2d Cir. 2009) (finding search reasonable and adequate where agency conducted two searches, and described in detail how it did so, including operation of database used); *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1257-58 (11th Cir. 2008) (emphasizing that agency is obligated to show that its search was reasonably calculated to uncover all relevant documents, but rejecting assertion that this requires agency to provide testimony from each person involved in search, and declining to establish "what inference [as to search adequacy], if any, can be . . . drawn from the late production . . . of FOIA documents).

FOIA also establishes a "strong presumption in favor of [record] disclosure," *Chiquita Brands Intern. Inc. v. S.E.C.,* 805 F.3d 289, 294 (D.C. Cir. 2015), so every requested document or segregable portion of a document must be disclosed unless the agency can establish that it falls within an enumerated exemption, 5 U.S.C. §552(a)(4)(B). Blanket, conclusory claims of privilege are not sufficient. *See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F.Supp.2d 4, 15 (D.D.C. 2013). The agency's justifications must be sufficiently detailed to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *See Campaign For Responsible Transplantation v. U.S. Food & Drug Admin.*, 219 F.Supp.2d 106, 111 (D.D.C. 2002) (internal quotation marks omitted). Here Defendants have failed to meet this standard. *See* Exhibit D. FOIA rightly recognizes that in a records-request dispute, the agency holds all the cards. Faced with this "asymmetrical distribution of knowledge" and the agency's "nearly impregnable defensive position," the FOIA requester has no meaningful way to evaluate—much less contest— the searches performed and the document withholdings unless the agency systematically identifies and thoroughly explains the searches and justifies each withholding.

15

*See Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006). In this case, Defendants have withheld thousands of records and categorically exempted record clearly covered by the Act. Because of the magnitude of these withholdings, Defendants bears a heavy burden of overcoming the presumption in favor of disclosure and proving that each withholding is exempt. By this motion, Plaintiff simply asks that Defendants produce what they are legally obligated to disclose.

Because Defendants have failed to show that they conducted adequate searches to respond the Plaintiff's at issue requests, the Court should permit Plaintiff to take limited discovery, including depositions either in person or by declaration, to develop a more detailed record of the searches each Defendant has conducted in response to Plaintiff's requests. "[C]ourts have consistently held that a court should not, of course, cut off discovery . . . where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." *See Vietnam Veterans of Am. Connecticut Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F.Supp.3d 188, 206 (D.Conn.2014) (quoting *Exxon Corp. v. FTC*, 466 F. Supp. 1088, 1094 (D.D.C. 1978)). Courts have explained that in FOIA cases, discovery focused on "the scope of the agency's search" is particularly appropriate and an expeditious means to resolve disputes. *See El Badrawi v. Department of Homeland SEC.*, 583 F. Supp. 2d 285, 301 (D. Conn. 2008); *Eberg v DOD*, 193 F. Supp. 3d. 95, 115, 119 (permitting depositions where an agency's declarations failed "to describe [its] file systems adequately," provided "no explanation of the databases that the various components use," and provided "no explanation as to why [its] office searched certain available databases and not others"); *Unidad Latina En Accion v. DHS*, No. 3:07-cv-1224-MRK, ECF No. 67 (D. Conn. Jan. 5, 2009)

(permitting depositions of two Department of Homeland Security officials); *Lion Raisins, Inc. v. U.S. Dep't of Agriculture*, 636 F. Supp. 2d 1081, 1107 (E.D. Cal. 2009) (granting a deposition "[i]n order to create a sufficient factual record regarding the adequacy of the search").

Here Defendants has provided no information at all about how it keeps their records, what databases each Defendant maintains, which ones each Defendant searched, or what search terms and methods were used to search those databases. Plaintiff has no way to uncover the information in order to mount a proper challenge to Defendants' blanket assertions of propriety. Defendants also refuse to provide categories of records such as text messages, screenshots of interfaces, and data output. (Exhibit A-C) Given these deficiencies, and the reasonable inferences drawn therefrom, it is appropriate for Plaintiff to depose, either in person or via written questions, a person most knowledgeable about the searches performed by Defendants or to receive the documents reflecting the search methodology and terms used for each of the 8 FOIA requests at issue.

In the alternative, the Court should order Defendants to produce detailed declaration(s) and full *Vaughn* index(es) describing the search and the withholdings. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) The Vaughn material must detail the search efforts and adequately describe each document withheld or redacted, and explain why a particular FOIA exemption applies to ensure that Plaintiff can meaningfully evaluate the claimed exemptions and contest them as needed. *See DiBacco v. U.S. Army*, 795 F.3d 178, 186 n.2 (D.C. Cir. 2015) (as to documents withheld in their entirety); *Prison Legal News v. Samuels*, 787 F.3d 1142, 1148 (D.C. Cir. 2015) (as to released documents redacted in part).

WHEREFORE Plaintiff respectfully requests that the Court order Defendants to (1) produce all text messages responsive to Plaintiff's outstanding requests, (2) the PLANet data and screenshots, and (3) all responsive records maintained by Dr. Senn and Southwest Keys. Further, Plaintiff request that she be permitted limited discovery on the issue of FOIA searches performed. Plaintiff requests a leave to take the deposition of the person(s) most knowledgeable on the issue of searches performed in the FOIA requests still at issue or to propound written interrogatories (not to exceed 25) regarding the scope of the search performed and the selection of the database/files/components searched. In the alternative, the Court should order Defendants to produce the documents showing what search terms were used and how locations or records were selected for search.

Respectfully Submitted by
_____/s/ *Nicolette Glazer*_____
Nicolette Glazer Esq. CSB209713
Law Offices of Larry R Glazer
Watt Plaza
1875 Century Park East #700
Century City, CA 90067
T:310-407-5353
F:310-407-5354
nicolette@glazerandglazer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 2 March 2020 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all parties' registrants by operation of the Court's electronic filing system.

LAW OFFICES OF LARRY R. GLAZER
_____*s/ Nicolette Glazer Esq.*_____
Nicolette Glazer