UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18 C 5391 ) |
| BROADCASTING BOARD OF GOVERORS, *et al.*, | ) Judge Rowland ) ) ) |
| Defendants. | ) |

**RESPONSE TO PLAINTIFF'S MOTION TO COMPEL AND**
**MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff Jacqueline Stevens has filed a motion to compel, challenging the scope and reasonableness of the searches various federal agencies conducted in responding to her requests for records under the Freedom of Information Act. The motion should be denied. The agencies have conducted adequate searches for records in numerous locations, and the responsive documents have been produced. As a result, the agencies are entitled to summary judgment.

**Background**

This lawsuit arose out of 29 FOIA requests that Stevens filed from 2015 to 2018, seeking records from 11 different federal agencies. Dkt. 13 (Answer) ¶¶ 2, 21, 29, 34, 39, 53, 58, 63, 67, 75, 81, 86, 92, 97, 101, 105, 109, 113, 116, 120, 126, 131, 134, 138, 141, 146, 151, 156, 162, 168. Stevens alleged that the agencies did not properly respond to her FOIA requests. *Id*. ¶¶ 1-2.

The parties worked together to resolve many of Stevens's concerns, leaving issues relating to only six agencies or departments: (1) Broadcasting Board of Governors, or BBG; (2) the Department of Health and Human Services, or HHS; (3) U.S. Citizenship and Immigration Services, or USCIS; (4) U.S. Geological Survey, or USGS; (5) U.S. Agency for International Development, or USAID; and (6) Immigration and Customs Enforcement, or ICE. Dkt. 44

1

(Motion to Compel) at 3-6. Stevens challenges the "scope and reasonableness" of these agencies' searches. Mot. at 3. Stevens has clarified that she is not challenging any withholdings. Defendants' Statement of Facts (DSOF) ¶ 80.

## Argument

Stevens's motion to compel should be denied, and the defendants' motion for summary judgment should be granted. The documents Stevens seeks either have been produced or are not required to be produced under FOIA. And the agencies conducted adequate searches for documents responsive to Stevens's requests and produced the responsive records.

**I.     Motion to Compel**

Stevens's motion to compel should be denied. The motion seeks documents that have already been produced or that Stevens is not entitled to under FOIA.

**A.     Text Messages**

Stevens says the court should order HHS and ICE to search for and produce certain text messages. She says she is entitled to see text messages sent by HHS and ICE employees, and she cites a number of statutes and regulations for the proposition that text messages are electronic records. Mot. at 7-10. But neither HHS nor ICE has the technical ability to search its employees' text messages. DSOF ¶¶ 14, 71. FOIA does not require an agency to search records that it cannot search. *Wilson v. DOJ*, 270 F.Supp.3d 248, 255 (D.D.C. 2017) (rejecting argument that agency violates FOIA when, because of technical inability, it does not search a particular file); *Lockett v. Wray*, 271 F.Supp.3d 205, 210 (D.D.C. 2017) (summary judgment for agency where agency had "inability" to conduct requested search); *Moore v. Nat'l DNA Index. Sys.*, 662 F.Supp.2d 136, 139 (D.D.C. 2009) (where the requested search is "literally impossible for the defendants to conduct," not searching satisfies FOIA's requirement to conduct a search reasonably calculated to uncover responsive documents).

Stevens asks the court, in the alternative, to declare that the failure to preserve employee text messages violates the Federal Records Act. *Id.* at 10-11. But the claims in this lawsuit have been brought under FOIA, not under the Federal Records Act. Dkt. 1. And a FOIA lawsuit is not the proper vehicle for alleging a Federal Records Act violation. *Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 154 (1980) ("Congress never intended, when it enacted the FOIA, to displace the statutory scheme embodied in the Federal Records Act and the Federal Records Disposal Act providing for administrative remedies to safeguard against wrongful removal of agency records").

  **B.**  **David Senn and Southwest Key**

Stevens says the court should order HHS and DHS to search for and produce records "maintained for the agencies" by a professor named David Senn and a company called Southwest Key. Mot. at 11; 5 U.S.C. § 552(f)(2)(B) (defining "record" as including records "maintained for an agency by an entity under Government contract, for the purposes of records management."). She says the requested documents were created pursuant to written contracts with HHS and DHS and were specifically used in the course of the agency's discharge of its official duties. Mot. at 11. And she says that agency records remain subject to FOIA even if they have been placed in the possession of a government contractor for the purpose of records management. *Id*. at 13.

In fact, though, HHS had no contractual relationship with Senn during the time of the request. DSOF ¶ 17. As explained in the cases Stevens herself cites, an agency is not obligated to produce records maintained by an entity with which it has no contractual relationship. *E.g.*, *Am. Small Bus. League v. U.S. Small Bus. Admin.*, 623 F.3d 1052, 1053-54 (9th Cir. 2010) (wireless provider's records were not agency records because they were not "maintained for an agency by an entity under Government contract, for the purposes of records management").

Regarding Southwest Key, HHS has already produced what Stevens requested. Stevens's

3

FOIA request to HHS sought contracts and related materials *produced or received by HHS* regarding any age assessments of unaccompanied alien children performed by Southwest Key. DSOF ¶ 16. And HHS has produced to Stevens the cooperative agreements between HHS and Southwest Key. DSOF ¶¶ 21-22. The request also sought invoices or other records maintained or submitted by Southwest Key documenting its expenditures, but HHS determined that it did not receive or maintain invoices or other records documenting expenditures made by Southwest Key. DSOF ¶¶ 16, 20. (And HHS *did* produce the financial reports that Southwest Key submitted. DSOF ¶¶ 20-21.) To the extent that Stevens means to argue that HHS should be ordered to produce any invoices that Southwest Key might have maintained on its own, (1) it would be odd for a government contractor to create invoices and not submit them; and (2) nothing suggests that Southwest Key maintained any such invoices *for* HHS "for the purposes of records management," which would need to be the case for FOIA to apply. 5 U.S.C. § 552(f)(2)(B).

As for the argument that the court should compel *DHS* to produce documents, that presumably is a reference to ICE (a component of DHS), and the FOIA requests to ICE that remain at issue in this case do not mention Senn or Southwest Key at all, DSOF ¶¶ 57-58, 65, 72, 76, so the basis for asking the court to compel DHS or ICE to produce records relating to them is unclear.

### C. Data Fields and Screenshots

Stevens says that the court should order ICE to produce "data fields" and screenshots of its PLAnet computer program. Mot. at 13. Whatever a "data field" is, Stevens did not say anything about this in her initial request, DSOF ¶ 58, so this aspect of the motion can be disregarded. As for screenshots of the PLAnet program, producing screenshots would require ICE to create new records, DSOF ¶ 64, and FOIA does not require the creation of new records. *Forsham v. Harris*, 445 U.S. 169, 186 (1980) ("FOIA imposes no duty on the agency to create records.").

Stevens insists that FOIA requires an agency to provide records "in any form or format

4

requested by the person if the record is readily reproducible by the agency in that form or format." Mot. at 13; 5 U.S.C. § 552(a)(3)(B); 6 C.F.R. § 5.11(b)(3) ("Components shall honor a requester's preference for receiving a record in a particular form or format where it is readily reproducible by the component in the form or format requested."). True enough, but whether an agency's records should be provided on a CD or in hard copy is not the issue here. Stevens seeks "screenshots of the actual interface" as seen by the user. Mot. at 14. So the issue is whether screenshots of the PLAnet interface exist, and they do not. DSOF ¶ 64.

Stevens says the question of "whether computer software and/or platforms" are records depends on the "particular nature and functionality" of the software. Mot. at 13-14. She says these screenshots are FOIA records because "they are integral to the recordkeeping function" of ICE's adjudication of citizenship claims. Mot. at 14. She offers no support for her assertion that PLAnet screenshots are "integral to the recordkeeping function" of ICE's adjudication of citizenship claims, let alone a citation for the notion that this is the standard for whether a screenshot is a record. On top of that, even the underlying theory is wrong: ICE does not adjudicate citizenship claims. DSOF ¶ 62.

Stevens cites *Cleary, Gottlieb, Steen & Hamilton v. HHS*, 844 F.Supp. 770, 781-82 (D.D.C. 1993), in which the court found that a software program *itself* was a record under FOIA. Needless to say, the software program in question existed, whereas screenshots of the PLAnet program do not. DSOF ¶ 64. Moreover, ICE has already gone above and beyond FOIA's requirements by *voluntarily creating for Stevens a 36-page PDF* of information from the PLAnet database on individuals who had made claims of citizenship, redacting only the names and other personally identifiable information for obvious privacy reasons. *Id*.

## D. Discovery

Stevens says she should be allowed limited discovery to "determine the scope" of the six

remaining agencies' searches. Mot. at 14. But discovery is inappropriate where, as explained below, the agencies conducted adequate searches for documents responsive to Stevens's requests and produced the responsive records. Stevens says that the agencies have "provided no information" about how they keep their records, what databases they maintain, which ones they searched, or what search terms and methods they used to search those databases. Mot. at 17. But the agencies have provided that information, in the form of declarations explaining in detail the searches each agency conducted. DSOF ¶¶ 10-79.

Stevens cites *Vietnam Veterans v. DHS*, 8 F.Supp.3d 188, 206 (D. Conn. 2014), for the proposition that a court should not "cut off" discovery "where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory." But none of that is the case here, for the reasons discussed below. Likewise, she cites *Eberg v. DOD*, 193 F.Supp.3d 95, 115 (D. Conn. 2016), for the proposition that depositions are appropriate where the agency's declarations failed to describe its file systems adequately, provided "no explanation of the databases that the various components use," and did not explain why its office "searched certain available databases and not others." As explained below, none of that is the case here.

## II. Summary Judgment

The agencies are entitled to summary judgment. As shown in the accompanying declarations, the agencies conducted adequate searches for documents responsive to Stevens's requests, and they produced the responsive records.

Summary judgment is proper when "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Stevens v. DHS*, 2014 WL 5796429, *4 (N.D. Ill. Nov. 4, 2014) (citing Fed. R. Civ. P. 56(a)). The moving party must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue exists, the court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001).

FOIA cases typically are resolved on summary judgment because they often hinge on whether an agency's undisputed actions violated FOIA. *E.g.*, *Bassiouni v. C.I.A.*, 2004 WL 1125919, *2 (N.D. Ill. Mar. 31, 2004). Summary judgment should be granted if the agency provides the court with declarations or other evidence showing that it conducted an adequate search for records and that any responsive documents were produced or are exempt from disclosure. *E.g., Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) (declarations "indicating the agency has conducted a thorough search" are sufficient to sustain agency's burden). Agency submissions in support of a summary judgment motion should be "accorded a presumption of good faith." *Demma v. DOJ*, 1996 WL 11932, *3 (N.D. Ill. Jan. 10, 1996) (citing *Carney*, 19 F.3d at 812).

Here, the agencies have satisfied their burden on summary judgment to demonstrate that they conducted an adequate search for responsive records, because they have shown that they made a good faith effort to conduct a search "reasonably calculated to uncover all relevant documents." *Hart v. FBI*, 1996 WL 403016, *2 (7th Cir. July 16, 1996); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C. Cir. 2015) (agency must make good faith effort to conduct search using methods that "can be reasonably expected to produce the information requested"). The issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quotation omitted).

An agency can establish the reasonableness of its search by "reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Here, all six agencies have submitted reasonably detailed, nonconclusory affidavits describing their efforts. DSOF ¶¶ 10-79.

### A. BBG

Stevens's request to BBG sought records relating to contracts with a company called D3 Systems, Inc. DSOF ¶ 10. BBG's FOIA office asked BBG's contracts office to search for D3 Systems contracts since 2003. *Id*. ¶ 11. An initial search yielded 14 pages of a contract from 2010, but BBG's FOIA office asked that the search be expanded to include *all* D3 Systems contracts. *Id*. A supplemental search yielded 109 pages, which BBG produced. *Id*. Stevens appealed the production, and BBG's appeals committee directed BBG's contracts office to search again for background information and work status updates shared with or received from D3 Systems, including emails, reports, and notes. *Id*. ¶ 12. BBG's contracts office performed this search and produced 1,487 pages to Stevens. *Id*. ¶ 13.

### B. HHS

Stevens submitted two FOIA requests to HHS. DSOF ¶ 15. The first request sought: (1) materials relating to work performed by a professor named David Senn, and (2) correspondence between HHS's "ORR" division and employees of ICE and CBP relating to age assessments of people in ORR or ICE custody, including manuals or handbooks. *Id*. ¶ 15. In response, HHS asked a FOIA officer to send a search request to HHS's information technology group to search for emails: (1) sent to or received by any of ORR's federal field specialists, who serve as liaisons with ORR care providers, or their supervisors; (2) that included an ICE email address, a CBP email address, or "senn@uthsca.edu" (Senn's email address); and (3) that included terms relating to age assessments. *Id*. ¶ 18. The search's date range was January 1, 2016, to December 6, 2018. *Id*.

8

HHS produced 88 pages of records responsive to part (1) and 29 pages responsive to part (2) in January 2019. *Id*. ¶ 22. HHS also referred 442 pages to DHS for review, because those pages originated with that agency. *Id*. One month later, in February 2019, HHS produced 258 pages of responsive records and referred 989 pages to DHS. *Id*. ¶ 23. And in March 2019 HHS produced 2,228 pages and referred 728 pages to DHS. *Id*. ¶ 24.

Stevens's second request to HHS sought: (1) contracts and related materials produced or received by ORR relating to age assessments of unaccompanied children by ORR care provider Southwest Key; and (2) invoices or other records maintained or submitted by Southwest Key for age assessment expenditures. *Id*. ¶ 16. For part (1), HHS obtained copies of cooperative agreements between HHS and Southwest Key, along with financial reports submitted by Southwest Key. *Id*. ¶ 20. For part (2), HHS determined that it had no responsive records because it did not receive or maintain records of invoices or other records documenting expenditures made by Southwest Key. *Id*. For part (1), HHS produced 78 responsive pages to Stevens in November 2018 and produced 66 more responsive pages in January 2019. *Id*. ¶¶ 21-22.

### C. USCIS

#### 1. May 2018 Request

Stevens submitted two FOIA requests to USCIS in May 2018, which USCIS consolidated into one case for expediency. DSOF ¶ 26. The request sought information relating to Northwestern University's E-Verify program, such as correspondence, contracts, and evaluations. *Id*. ¶ 9. FOIA staff familiar with the operations of program offices across USCIS determined that the USCIS program office most likely to have responsive records would be USCIS's verification division, which is responsible for the operation of USCIS's E-Verify program. *Id*. ¶ 27. FOIA staff directed the verification division to conduct a thorough search, reasonably calculated to locate responsive records. *Id*. An operations research analyst in the verification division searched for

9

responsive records using search terms and commonly used computer database search fields derived from the criteria in Stevens's request. *Id.* ¶ 28. The terms and fields included "Northwestern University," "E-verify," "Case FY," "Hire Date," "Initiated Date," "Citizenship," "Document Provided," "Eligibility Determination Summary," "Citizenship Type," "Employer Name," "Type," "address," "WF Size," "MOU and Termination Date," "Agent Name," "Hiring Sites," and "User Count." *Id.*

USCIS also produced to Stevens the memorandum of understanding between Northwestern University and DHS that allowed the University to participate in the E-Verify program. *Id.* The verification division staff used the names and contact information of University officials identified in that memorandum to search for emails and other communications between the University and the verification division. *Id.* The staff found no responsive emails, but they did locate three phone call "action logs" pertaining to calls between the verification division and the University. *Id.* USCIS produced those logs to Stevens. *Id.*

Ultimately, in October 2018 USCIS produced 51 responsive pages of documents and 5 responsive Excel spreadsheets to Stevens. *Id.* ¶ 29. USCIS's record search was reasonably calculated to locate records responsive to Stevens's requests, and USCIS has no reason to believe that additional responsive records exist that are within USCIS's custody and control. *Id.* ¶ 28.

### 2. August 2018 Request

Stevens submitted another FOIA request to USCIS in August 2018. *Id.* ¶ 30. This request sought information relating to two contracts with a company called General Dynamics. *Id.* One of those contracts was a contract between General Dynamics and Customs and Border Protection, so USCIS forwarded that portion of the request to that agency. *Id.* For the contract between General Dynamics and USCIS, USCIS staff familiar with the operations of program offices across USCIS determined that the office most likely to have responsive records was the office of

contracting. *Id.* ¶ 31. USCIS's national records center staff directed the office of contracting to conduct a thorough search reasonably calculated to locate records responsive to the request. *Id.*

A senior procurement analyst in the office of contracting conducted a computerized records search of the office's digitized records stored in the office's "J: drive," utilizing the contract number Stevens provided. *Id.* ¶ 32. Based on his experience as a senior analyst in the contracting office, he knew this was the method and source most likely to locate responsive records. *Id.* The analyst located the scope of work, amendments of solicitation, modification of contract, and all supporting documentation that was in the office's files pertaining to the contract. *Id.* No responsive emails were located. *Id.* The search was reasonably calculated to locate responsive records, and USCIS has no reason to believe that additional responsive records exist. *Id.* In October 2018, USCIS produced to Stevens 353 pages of responsive records. *Id.* ¶ 33.

**D. USGS**

Stevens submitted a FOIA request to USGS in May 2018 seeking: (1) records relating to a particular contract between Northwestern University and USGS; (2) records defining the scope of work and service expected by USGS, including from similar contracts from earlier time frames; and (3) records associated with the evaluation and extensions of the contract. DSOF ¶ 34. A supervisor in USGS's grants office—the office that approves contracts with outside parties—identified a contract specialist in the grants office's Reston, Virginia branch as being the custodian who would have responsive records, because he had most recently handled a USGS contract with Northwestern University. *Id.* ¶ 36. The specialist determined that any records relating to the contract at issue would be stored in the grants office's electronic filing system, and that no records would exist outside that system. *Id.* ¶ 37. He searched the electronic filing system for the folder corresponding to the requested contract, and USGS produced 33 pages of responsive records to Stevens. *Id.* ¶¶ 37-38.

11

USGS later identified seven more contracts with Northwestern University for which it might still possess records based on its record disposition schedule. *Id.* ¶ 39. The specialist searched the electronic filing system by the contracts' identifying numbers and found potentially responsive records for 6 of the 7 contracts. *Id.* ¶ 39. The specialist also identified another grants office employee as a potential source of records because she had previously worked on contracts with Northwestern University. *Id.* ¶ 40. That employee searched her old files and found responsive records. *Id.* USGS concluded that no other locations were reasonably likely to have responsive records, and USGS produced 626 more pages of responsive records to Stevens. *Id.* ¶¶ 40-41.

As for the third portion of the request, USGS did not maintain evaluations of contractor performance for the relevant contracts, *id.* ¶ 42, so no such records are reasonably likely to exist.

### E.  USAID

Stevens's FOIA request to USAID sought records relating to agreements between USAID and Northwestern University. DSOF. ¶ 43. USAID's FOIA team leader emailed Stevens and explained that USAID needed additional search terms because her request covered a 15-year period with broad search criteria. *Id.* ¶ 45. The team leader asked Stevens to provide (1) names, email addresses, and email domains of possible non-USAID senders and recipients and (2) keywords. *Id.* Stevens wrote back to clarify that USAID should search for: (1) emails with "northwestern.edu"; (2) records referring to "northwestern university"; (3) records referring to Northwestern University in missions in Israel, Kuwait, Qatar, Pakistan, and Saudi Arabia. *Id.* ¶ 46.

USAID sent Stevens's request to the Bureau for Management, Office of Acquisition and Assistance, System Support Branch in Washington, D.C., because that bureau provides support to USAID's web-based system that manages awards like contracts and grants. *Id.* ¶ 47. The bureau identified one grant—involving the Northwestern University School of Law—as responsive. *Id.*

The bureau searched for the identified grant but found that the award record appeared to have been destroyed in 2006. *Id*.

USAID sent Stevens's request to a legal officer for the Mission in West Bank and Gaza, because it is the mission responsible for managing records associated with Israel. *Id*. ¶ 48. The Mission located responsive records. *Id*. ¶ 50. In August and September 2018 USAID produced 927 pages of responsive records. *Id*. ¶ 53.

USAID sent Stevens's request to the legal officer for the Mission in Pakistan. All ten employees who were asked reported that they had no memory of working on any agreement with Northwestern University. *Id*. ¶ 51. The Mission also searched its education office's Google Docs folder using the search term "Northwestern" and returned no responsive records. *Id*.

USAID sent Stevens's request to the Bureau for Middle East, in Washington, D.C. *Id*. ¶ 54. The Middle East bureau did not exist before 2014, but the bureau's FOIA liaison officer searched the old Asia/Near East bureau shared network drive for "Northwestern" and found no results. *Id*. He searched the bureau's file drawers and asked at least four people who were there before 2015 (including a specialist who has been with the bureau since 2004), but he found no responsive paper files, and no one was aware of any records. *Id*.

USAID sent Stevens's request to the Bureau for Management, Office of the Chief Information Officer, Information and Assurance Division, in Washington, D.C., because that office is responsible for overall information technology security management, including electronic searches of agency mail systems. *Id*. ¶ 55. The office searched the "Gmail Vault" archiving feature for "All USAID Accounts" for the search term "@northwestern.edu" between January 1, 2000, and October 23, 2015. *Id*. The office found 24,736 records matching the search criteria but determined that none of them were responsive to Stevens's request. *Id*.

USAID sent Stevens's request to the Bureau of Asia, which managed Pakistan operations

before 2014. *Id*. ¶ 56. The office searched its accounting system and shared drives and found no responsive records. *Id*. USAID also sent Stevens's request to the Office of Afghanistan and Pakistan Affairs, in Washington, D.C., which currently provides technical support, analysis, and resource management programs in Pakistan. *Id*. The office searched its electronic files using the keywords Northwestern University and found no responsive records. *Id*.

### F. ICE

Stevens submitted ten FOIA requests to ICE in 2018, but unresolved issues remain for only four (two of which can be analyzed together). DSOF. ¶ 57.

#### 1. March 8 Request

On March 8, 2018, Stevens submitted a FOIA request seeking documents uploaded to the "PLAnet" case management system since January 1, 2016, regarding claims of U.S. citizenship. *Id*. ¶ 58. The ICE division that manages the PLAnet database created a 36-page Excel spreadsheet of individuals with U.S. citizenship claims in the PLAnet database, and ICE produced that spreadsheet, redacting only the names of the individuals and other personally identifiable information. *Id*. ¶¶ 60-61.

#### 2. March 16 Request

On March 16, 2018, Stevens submitted a FOIA request seeking records created relating to the use of detainee labor by private contractors. *Id*. ¶ 65. ICE's custody management division and its division responsible for detention contracts searched for responsive records using different search terms. *Id*. ¶¶ 67-68. ICE also received responsive records that had been referred to it by USCIS. *Id*. ¶ 69. In total, ICE reviewed 2,200 pages of records, determined that 153 pages were non-responsive or duplicative, and produced 2,047 pages. *Id*. ICE also reviewed 4,426 pages of potentially responsive records that it received from a search of the Office of the Principal Legal Advisor. *Id*. ¶ 70. After determining that 411 pages were non-responsive or duplicative, ICE

14

produced 4,015 pages. *Id*.

### 3. Two June 22 Requests

On June 22, 2018, Stevens submitted two FOIA requests. Both requests sought records relating to grievances by people in ICE custody in Polk County; the time frame for the first request was January 1, 2018, to present; and the time frame for the second request was January 1, 2016, to December 31, 2017. *Id*. ¶¶ 72, 76. ICE's custody management division and Houston field office searched their electronic and paper files using a variety of search terms and returned Excel spreadsheets responsive to the request. *Id*. ¶¶ 73-74, 77-79. ICE produced them. *Id*. ¶¶ 75, 79.

## G. Withholdings

With the above issues resolved, nothing stands in the way of granting summary judgment for the agencies. At the most recent hearing on January 30, 2020, the court instructed Stevens that any challenges to the agencies' FOIA responses must be contained in Stevens's (at the time) forthcoming motion to compel. Although the motion she filed hints that she thinks some of the agencies' withholdings were improper, Stevens has clarified through counsel that she is not challenging any withholdings. DSOF ¶ 80.

### Conclusion

For the reasons above, summary judgment should be granted in defendants' favor.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
ALEX HARTZLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
alex.hartzler@usdoj.gov

15