UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 5391 |
| v. | ) | |
| | ) | Judge Rowland |
| BROADCASTING BOARD OF | ) | |
| GOVERNORS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## L.R. 56.1 STATEMENT OF MATERIAL FACTS
## IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, by John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, submit the following statement of material facts as to which there is no genuine issue pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Illinois.

### Jurisdiction and Venue

1.      This is an action brought under the Freedom of Information Act (FOIA), and the court has subject matter jurisdiction under 5 U.S.C. § 552 and 28 U.S.C. § 1331.  Dkt. 13 (Answer) ¶¶ 1, 5.

2.      Venue is proper in this district because plaintiff Jacqueline Stevens resides in this district.  Dkt. 13 (Answer) ¶ 6.

### Parties

3.      Plaintiff Jacqueline Stevens is a professor at Northwestern University.  Dkt. 13 (Answer) ¶ 7.

4.     Broadcasting Board of Governors, or BBG, is a federal agency from which Stevens has sought information via FOIA.  Dkt. 13 (Answer) ¶ 11.  BBG changed its name in 2018 to U.S. Agency for Global Media.  Ex. A (Mayo Decl.) ¶ 1 n1.

5.     The Department of Health and Human Services, or HHS, is a department of the executive branch from which Stevens has sought information via FOIA.  Dkt. 13 (Answer) ¶ 15.

6.     U.S. Citizenship and Immigration Services, or USCIS, is a federal agency from which Stevens has sought information via FOIA.  Dkt. 13 (Answer) ¶ 12.

7.     U.S. Geological Survey, or USGS, is federal agency from which Stevens has sought information via FOIA.  Dkt. 13 (Answer) ¶ 13.

8.     U.S. Agency for International Development, or USAID, is a federal agency from which Stevens has sought information via FOIA.  Dkt. 13 (Answer) ¶ 17.

9.     Immigration and Customs Enforcement, or ICE, is a federal agency from which Stevens has sought information via FOIA.  Dkt. 13 (Answer) ¶ 12.

**FOIA Request to BBG**

10.     Stevens submitted a FOIA request to BBG in June 2016, seeking:

> D3 Systems, Inc. contracts (including addenda) and work products associated with these contracts produced since January 1, 2003. This includes but is not limited to background information and work status updates shared with or received from D3 Systems, Inc. and its employees or subcontractors, email, system records, reports, draft reports, and notes.

Ex. A (Mayo Decl.) ¶ 4.

11.     BBG's FOIA office forwarded the request to its professional research office and its contracts office.  *Id*. ¶ 5.  An initial search by BBG's contracts office for D3 Systems, Inc. contracts since 2003 produced 14 pages, but the FOIA officer involved requested that the search be expanded

to include all D3 Systems contracts including addenda. *Id*. A supplemental search yielded 109 pages. *Id*. BBG sent these pages to Stevens in 2017. *Id*.

12. Stevens appealed, and the BBG's FOIA appeals committee directed BBG's contracts office to perform another supplemental search to include all background information and work status updates shared with or received from D3 Systems, Inc., including email, system records, reports, draft reports, and notes. *Id*. ¶¶ 6-7.

13. After conducting the requested supplemental search, in June 2018 BBG produced 1,487 pages to Stevens and withheld 1,195 pages under FOIA exemptions (b)(4), (b)(5), and (b)(6). *Id*. ¶ 8.

14. BBG's search was reasonably calculated to locate records responsive to Stevens's FOIA request, and BBG has no reason to believe that additional responsive records in its custody and control exist. *Id*. ¶ 10.

## FOIA Request to HHS

15. Stevens submitted two FOIA request to HHS in May 2018. Ex. B (Smith Decl.) ¶ 9. The first request sought: (1) all materials related to work requested of, performed by, or discussed with Professor David R. Senn or his representatives between January 1, 2016 and the date of production; and (2) all correspondence between HHS's refugee resettlement office and employees of ICE and CBP related to age assessments of individuals in the custody of HHS's refugee resettlement office or ICE, including any manuals or handbooks. *Id*. HHS designated this request as Case No. 18-F-0210. *Id*.

16. The second request sought: (1) contracts and related materials produced or received by ORR related to age assessments of unaccompanied alien children by ORR care provider Southwest Key; and (2) all invoices or other records maintained or submitted by Southwest Key

documenting expenditures by HHS for conducting age assessments. *Id.* ¶ 10. HHS designated this request as Case No. 18-F-0211. *Id.*

17. For the first request, HHS determined that it had no contractual relationship with Senn during the time period of Request 18-F-0210. *Id.* ¶ 11. HHS therefore determined that any responsive records would exist as correspondence between its refugee resettlement office and Professor Senn. *Id.*

18. To that end, HHS's FOIA director tasked an employee to send a search request to HHS's information technology group to search for emails: (1) sent to or received by any of its refugee resettlement office's federal field specialists, who serve as liaisons with the refugee resettlement office's care providers, or their supervisors; (2) that include an ICE email address, a CBP email address, or "senn@uthsca.edu" (Professor Senn's email address); and (3) that included terms relating to age assessments. *Id.* ¶ 14. The date range of the search was January 1, 2016 to December 6, 2018. *Id.*

19. HHS's FOIA director received the results of the search on December 13, 2018, and confirmed that any attachments not included in the search results were not available because they had been encrypted and so were not saved with the email to which they were attached. *Id.*

20. For the second request, HHS's FOIA director obtained copies of cooperative agreements between HHS and Southwest Key Programs, Inc., along with financial reports submitted by Southwest Key. *Id.* ¶ 13. HHS also determined that it did not receive or maintain records of invoices or other records documenting expenditures made by Southwest Key. *Id.* ¶ 12. HHS therefore determined that it had no documents responsive to part (2) of the second request. *Id.*

21.     HHS produced to Stevens in November 2018 a letter identifying 78 pages responsive to her two requests.  *Id.* ¶ 15.  The pages included cooperative agreements between HHS and Southwest Key, along with financial reports submitted by Southwest Key, all of which were responsive to part (1) of Stevens's second request.  *Id.*

22.     In January 2019, HHS sent two productions to Stevens.  *Id.* ¶ 16.  The first production was a final response to Stevens's second request, identifying 66 more responsive pages of cooperative agreements between HHS and Southwest Key.  *Id.*  The second production was a partial response to Stevens's first request and identified 88 pages responsive to part (1) of the first request and 471 pages responsive to part (2) of the first request.  *Id.* ¶ 17.  Of the 471 pages responsive to part (2) of the first request, HHS released 29 pages in full and referred 442 pages to DHS for review because the pages originated with that agency.  *Id.*

23.     HHS produced more pages in February 2019, sending Stevens a letter identifying 1,297 pages in partial response to Stevens's first request.  *Id.* ¶ 18.  HHS produced 158 pages without redactions and 150 with redactions under FOIA exemption (b)(6).  *Id.*  ACF referred the remaining 989 pages to DHS because the pages originated within that agency.  *Id.*

24.     HHS produced more pages in March 2019, sending Stevens a letter identifying 2,956 responsive pages as a final response to part (2) of the first request.  *Id.* ¶ 19.  ACF released 82 pages without redactions and 2,146 with redactions under FOIA exemptions (b)(6).  *Id.*  ACF referred the remaining 728 pages to DHS for review.  *Id.*

25.     HHS does not maintain records of text messages.  *Id.* ¶ 14.

**FOIA Request to USCIS**

26.     In May 2018, Stevens submitted two FOIA requests that USCIS consolidated into one case for expediency.  Ex. C (Eggleston Decl.) ¶ 8.  The request sought:

1) All information in any form from Northwestern University, Evanston, IL used for registering, reviewing, and renewing E-Verify for employees at Northwestern University between January 1, 2008 and the present with the exception of individual-level data entered in the system. This includes but is not limited to email, submission forms, data submitted online.

2) All email between Northwestern employees or agents of Northwestern pertaining to E-Verify, including all attachments, linked documents, and referenced documents between January 1, 2008 and the present. This includes email related to specific personnel, with the understanding that names and other identifying information will be redacted.

3) Copies of all contracts (and associated attachments, including for the Scope of Work), and evaluations of work performed for contractors creating, licensing, maintaining, supporting, or assessing software and databases used by USCIS and third parties for verification eligibility of employment though E-Verify between January 1, 2005 to present.

4) Copies of USCIS evaluations on which contracting officers rely for purposes of renewing contracts between January 1, 2005 to present. Plaintiff indicated that she understood that E-Verify may also be associated with other software and databases in USCIS and was requesting the contracts that would be associated with such packages or broader systems of records.

*Id.* ¶ 9.

27. USCIS FOIA staff who are familiar with the operations of program offices across USCIS determined that the program office within USCIS most reasonably likely to have custody and control of responsive records would be the Verification Division, which is responsible for the operation of USCIS's E-Verify program. *Id.* ¶ 12. FOIA staff directed the Verification Division to conduct a thorough search, reasonably calculated to locate responsive records and to send them to the FOIA staff. *Id.*

28. An operations research analyst in the verification division searched for responsive records using search terms and commonly used computerized database search fields in the

6

verification division, derived from the criteria specified in Stevens's request. *Id*. ¶ 13. The terms and database fields included "Northwestern University," "E-verify," "Case FY," "Hire Date," "Initiated Date," "Citizenship," "Document Provided," "Eligibility Determination Summary," "Citizenship Type," "Employer Name," "Type," "Address," "WF Size," "MOU and Termination Date," "Agent Name," "Hiring Sites," and "User Count." *Id*. Relevant names of Northwestern University contacts were located after a search of the University's E-Verify account. *Id*. Verification division staff reviewed the memorandum of understanding between Northwestern University and DHS that allowed the University to participate in the E-Verify program. *Id*. USCIS produced to Stevens that memorandum of understanding. *Id*. Staff used the names and contact information of University officials identified in the memorandum to search for emails and other communications between the University and verification division officials. *Id*. Staff found no responsive emails but did locate three phone call "action logs" pertaining to calls between the verification division and some of the University officials. *Id*. USCIS produced those logs to Stevens. *Id*. Staff searched the verification division's email records and databases called AVANT, CRM, SAS, and WebHQ. *Id*. The records search was reasonably calculated to locate records responsive to Stevens's requests, all files reasonably likely to contain responsive material were searched, and USCIS has no reason to believe that additional responsive records exist that are within USCIS's custody and control. *Id*.

29.    Upon receiving the results of the verification division's search, USCIS's staff at its national records center reviewed the records to determine responsiveness. *Id*. ¶ 14. In October 2018, USCIS produced to Stevens 51 pages of documents and 5 Excel spreadsheets that were responsive to her request. *Id*. All records were released in full; no exemptions were applied, and no information was redacted. *Id*.

30.     USCIS received another FOIA request from Stevens in August 2018, seeking information relating to two particular contracts with General Dynamics. *Id*. ¶ 10. The first contract is a USCIS contract, but the second contract is actually a Customs and Border Protection contract, so the request for information relating to the second contract was forwarded to that agency. *Id*.

31.     For the first contract (the one between USCIS and General Dynamics), Stevens requested the initial scope of work, attachments, renewals, and emails associated with the contract. *Id*. ¶ 10. USCIS staff who are familiar with the operations of program offices across USCIS determined that the USCIS program office most reasonably likely to have custody and control of responsive records was the office of contracting—the sole contracting office to procure goods and services to meet USCIS's mission. *Id*. ¶ 15. USCIS's national records center staff directed the office of contracting to conduct a thorough search reasonably calculated to locate records responsive to the request. *Id*.

32.     A senior procurement analyst in the office of contracting conducted a computerized records search of the office's digitized records stored on the office's computer "J: drive" utilizing the contract number Stevens specified. *Id*. ¶ 16. Based on his experience as a senior analyst in the contracting office, he knew this was the method and source most reasonably likely to locate records pertaining to USCIS contracts administered by the contracting office. *Id*. The analyst located the scope of work, amendments of solicitation, modification of contract, and all supporting documentation that was in the office's files pertaining to the contract. *Id*. No responsive emails were located. *Id*. The office forwarded the result to the national records center. *Id*. The search was reasonably calculated to locate records responsive to Stevens's request, all files reasonably likely to contain responsive material were searched, and USCIS has no reason to believe that additional responsive records exist that are within its custody and control. *Id*.

8

33.     USCIS's national records center staff reviewed the records to determine responsiveness.  *Id*. ¶ 17.  Under DHS FOIA regulation 6 C.F.R. § 5.7(4)(e), USCIS provided General Dynamics—the submitter who provided USCIS confidential commercial information when bidding on and entering into the contract—an opportunity to review and object to the proposed record production.  *Id*.  After reviewing and considering General Dynamics' objections, in October 2018 USCIS produced to Stevens 353 pages of responsive records.  *Id*.  USCIS released 137 pages in full and 216 pages in part, withholding some information under FOIA exemptions (b)(3), (b)(4), and (b)(6).  *Id*.  USCIS segregated and released all reasonably segregable, non-exempt information from the records.  *Id*.

## FOIA Request to USGS

34.     Stevens submitted a FOIA request to USGS on May 22, 2018, seeking: (1) records relating to a particular contract between Northwestern University and USGS; (2) records defining the scope of work and service expected by USGS, including from similar contracts from earlier time frames; (3) records associated with the evaluation and extensions of the contract.  Ex. D (Marinos Decl.) ¶ 3.

35.     USGS's FOIA office tasked USGS's Office of Acquisitions and Grants—the office that approves USGS contracts with external parties—with searching its paper records, local computer drives, network drives, intranet, and emails to determine whether it had responsive records.  *Id*. ¶¶ 5-6.  The grants office stores older records in paper, and more recent records are stored electronically.  *Id*. ¶ 12.

36.     A supervisory contract specialist in the grants office named Karen Phillips determined that a contract specialist named Michael Lepe, who works in the grants office's National Acquisition Branch in Reston, Virginia, was the custodian who would have responsive

records, because Lepe was the specialist who had most recently handled a USGS contract with Northwestern University. *Id*. ¶¶ 7-9.

37.     Lepe determined that any records relating to the contract at issue would be stored in the grants office's electronic filing system, and that no records would exist outside that system. *Id*. ¶¶ 13-14. He searched the electronic filing system for the folder corresponding to the contract and submitted the responsive records to USGS's FOIA office. *Id*. ¶¶ 14-15.

38.      In July 2018, USGS produced 33 pages of non-exempt, responsive records to Stevens. *Id*. ¶ 16.

39.     Stevens responded that the production did not appear to include records "associated" with previous contracts or evaluations of contractor performance. *Id*. ¶ 17. After additional correspondence between USGS and Stevens, USGS identified 21 contracts with Northwestern University, though only 7 were likely to exist due to USGS's record disposition schedule. *Id*. ¶¶ 18-24. Lepe searched the electronic filing system by the contracts' identifying numbers and found potentially responsive records for 6 of the 7 contracts. *Id*. ¶ 28. For only 1 of those 6 contracts did USGS's files contain no emails or other correspondence. *Id*. ¶ 29.

40.     Lepe also identified another grants office employee, Carolyn Hieb, as another potential source of records. *Id*. ¶ 29. Hieb, who had previously worked on contracts with Northwestern University, searched her older files and found responsive records. *Id*. ¶¶ 30-34. USGS concluded that no other locations were reasonably likely to have responsive records. *Id*. ¶ 40.

41.     In September and October 2018, USGS produced 626 pages of responsive records to Stevens. *Id*. ¶¶ 37-39.

42.     USGS did not maintain evaluations of contractor performance for the underlying

responsive contracts.  *Id.* ¶¶ 18, 32.

### FOIA Request to USAID

43.     Stevens submitted a FOIA request to USAID in October 2015, seeking:

> Copies of all contracts, reports, memoranda of understanding,
> grants, and email to, from, or about Northwestern University
> produced, received, or maintained by employees in your office.
> This includes but is not limited to records concerning the
> Northwestern campus on Education City, Doha, Qatar and surveys
> on media use commissioned by the State Department.

Ex. E (Colbow Decl.) ¶ 3.

44.     Shortly after submitting the request, Stevens clarified the scope of her request by

email:

> Please note that in requesting email and other materials about the
> Northwestern campus in Qatar, items that are under the control of
> USAID, and providing the @northwestern.edu address for a search,
> I was not limiting my request *only to correspondence between an
> @usaid.gov email and an @northwestern.edu email*, but just
> offering that as one search term.  I am interested in ALL email about
> the Northwestern campus in Qatar in the control of any USAID
> employee, including correspondence between USAID employees
> and other government or private individuals, regardless of the email
> server used for this.

*Id.* ¶ 4.

45.     USAID's FOIA team leader responded explaining that USAID required additional

search terms because her request covered a 15-year period and the broad search criteria initially

provided could result in a FOIA specialist's needing to review numerous non-responsive records,

delaying a response to the FOIA request.  *Id.* ¶ 5.  USAID asked Stevens to provide: (1) names,

email addresses, and email domains of possible non-USAID senders and recipients; and (2)

keywords.  *Id.*

11

46.     Stevens wrote back to further clarify the scope of her request:

To further clarify, per our conversation now, your office will be searching as follows for materials since January 1, 2000:

1)  all emails on USAID servers with "northwestern.edu" in any field of the address.
2)  all materials using "northwestern university" in usaid.gov servers.
3)  all materials referring to Northwestern University in the control of the missions in Israel, Kuwait, Qatar, Pakistan, and Saudi Arabia.
4)  all contracts and grants, including extensions and the originals to which they refer and to which Northwestern University.

*Id.* ¶ 6.

47.     Three days after receiving Stevens's FOIA request, USAID sent the request to the Bureau for Management, Office of Acquisition and Assistance, System Support Branch in Washington, D.C., because that bureau provides support to USAID's web-based system that manages awards like contracts and grants. *Id.* ¶ 12. The web-based system is not a document repository, but it serves as a starting point for determining a correct point of contact. *Id.* ¶ 13. The bureau identified one grant—involving the Northwestern University School of Law—as responsive to Stevens's request. *Id.* The bureau searched for the identified grant and found that the award appeared to have been destroyed in 2006. *Id.* ¶ 14.

48.     In November 2015, a FOIA specialist in USAID's FOIA office sent Stevens's request to a legal officer for the Mission in West Bank and Gaza, because it is the mission responsible for managing records associated with Israel (the subject of the request). *Id.* ¶ 16. A different legal officer responded expressing concern about the likely high volume of emails containing the word "Northwestern" and asking if the request could be narrowed by working with Stevens. *Id.* ¶ 17.

49.     In December 2015, a FOIA specialist emailed Stevens the mission's concerns and asked for clarification. *Id*. ¶ 18. Stevens responded:

> Thanks for the update. This response is vague and also itself beyond the timeframe contemplated by the FOIA statute. I am concerned that instead of sending me some responsive documents per a rolling release, months after my request I am receiving only a request for an extension.
>
> I am not prepared to further narrow the request without more specificity on exactly what has been found so far with the screen used. I.e., how many documents, apges, emails? Also, if there are repetitions, these could be found only if first reviewed, and then once that's done there is no additional time wasted by their inclusion. "Thousands" is not a big number for the work I do.
>
> If you have more information and prefer to discuss by phone, please feel free to call me at the number below. Thanks so much for your time and thought.

*Id*. ¶ 19.

50.     In January 2016, the resident legal officer for the West Bank and Gaza responded with responsive records located by the Mission. *Id*. ¶ 21.

51.     In November 2015, USAID's FOIA office sent Stevens's request to the legal officer for the Mission in Pakistan, because it is the mission responsible for managing records associated with Pakistan. *Id*. ¶ 22. USAID has been unable to locate a response from 2015, so it conducted a new search in June 2020. *Id*. ¶ 23. Ten individuals were asked about any work with Northwestern and all had no memory of such work. *Id*. The mission also searched its education office's Google Docs folder using the search term "Northwestern." *Id*. The search returned no responsive records. *Id*.

52.     USAID does not operate missions in Kuwait, Qatar, or Saudi Arabia, so no searches were conducted there. *Id*. ¶¶ 24-26.

53.     In August and September 2018, after Stevens filed this lawsuit, USAID produced 927 pages of responsive records and explained to Stevens its search efforts, the records located, and the FOIA exemptions applied.  *Id*. ¶ 8-10.

54.     In February 2019, USAID's FOIA office sent Stevens's request to the Bureau for the Middle East located in Washington, D.C.  *Id*. ¶ 27.  The Bureau for the Middle East did not exist before 2014, *id*., but the bureau's FOIA liaison officer searched the shared network drive of the Bureau for Asia and the Near East—the predecessor bureau to the Bureau for the Middle East— using the search term "Northwestern" but retrieved no results.  *Id*. ¶ 29.  He searched the bureau's file drawers and checked with at least four people who were there before 2015 but located no files with information about Northwestern.  *Id*.  Assistants in the bureau's Office of Assistant Administrator are aware of no paper files there.  *Id*.  File cabinets marked for the Strategy and Program Office, North Africa and Arabian Peninsula Affairs, and Office of Middle East Affairs contain briefing books and budget documents but nothing about Northwestern.  *Id*.  The bureau's FOIA liaison officer also checked with an education specialist who has worked in the bureau since 2004, and she recalled no correspondence or agreements with Northwestern before 2015.  *Id*.  The bureau's Director of Administrative Management Services also conducted a search of paper files and confirmed that the Bureau had no responsive records.  *Id*.

55.     Also in February 2019, USAID's FOIA office sent Stevens's request to the Bureau for Management, Office of the Chief Information Officer, Information and Assurance Division, in Washington, D.C., because that office is responsible for overall information technology security management, including electronic searches of agency email systems.  *Id*. ¶ 30.  The office searched the "Gmail Vault" archiving feature for "All USAID Accounts" for the search term "@northwestern.edu" between January 1, 2000 and October 23, 2015.  *Id*.  The office found 24,736

records matching the search criteria. *Id.* ¶ 31. USAID's FOIA office determined that none of the records were responsive to Stevens's FOIA request. *Id.* ¶ 32.

56. In March 2019, USAID's FOIA office sent Stevens's request to the Bureau of Asia, which managed Pakistan operations prior to 2014. *Id.* ¶ 33. The office searched its accounting system and shared drives and found no responsive records. *Id.* ¶ 34. USAID's FOIA office also sent Stevens's request to the Office of Afghanistan and Pakistan Affairs, because that office currently provides technical support, analysis and resource management implementing programs in Pakistan. *Id.* ¶ 35. That offices searched its electronic records using the keywords Northwestern University, as well as its hard copy documents, and found no responsive records. *Id.*

**FOIA Requests to ICE**

57. Stevens submitted ten FOIA requests to ICE between March 8, 2018, and July 3, 2018. Ex. F (Fuentes Decl.) ¶ 6. Unresolved issues remain for four of the requests. *Id.*

58. **Request #1:** Stevens submitted a FOIA request to ICE in March 2018 seeking:

> all documents uploaded to the PLAnet case management system since January 1, 2016 regarding persons claiming or proving U.S. citizenship. This includes, but is not limited to, memoranda on claims of U.S. citizenship and all related items (including but not limited to notes and screenshots of database interfaces), and any and all information entered in the "USC Claims" section of PLAnet, as well as screenshots of all tabs for PLAnet users who access information on USC claims.

*Id.* ¶ 7(a). ICE assigned the request Case No. 2018-ICFO-25719. *Id.* ¶ 7(b).

59. ICE's FOIA office tasked its enforcement and removal office to search for responsive records. *Id.* ¶ 23(b). The enforcement and removal office concluded that it was unlikely to possess responsive records, since PLAnet is used by the Office of the Principal Legal Advisor. *Id.* ¶ 23(c).

60.     ICE's FOIA office tasked the legal office to search for responsive records.  *Id*.
¶ 23(d).  The legal office assigned the search to its knowledge management division—the division
responsible for its PLAnet database.  *Id*.  The division reviewed the request and provided an Excel
spreadsheet of "USC claims" from the PLAnet database to ICE's FOIA office for processing.  *Id*.
¶ 23(e).

61.     ICE produced that 36-page spreadsheet to Stevens on June 1, 2018, subject to
certain FOIA exemptions.  *Id*. ¶ 23(f).

62.     ICE does not have authority to grant U.S. citizenship; U.S. citizenship can only be
formally recognized by USCIS (through issuance of a Certificate of Citizenship) or the U.S.
Department of State (through issuance of a U.S. passport).  *Id*. ¶ 27(k).  However, ICE does
investigate and analyze the potential U.S. citizenship of individuals encountered by ICE.  *Id*.
¶ 27(b).

63.     A claims of U.S. citizenship will be assessed by an ICE attorney in a "USC
memorandum," which is almost entirely attorney work product and protected from disclosure.  *Id*.
¶ 27(b)-(d).  USC memoranda are created specifically in anticipation of formal, adversarial
immigration proceedings, with the possibility of subsequent litigation in federal district court (such
as a claim of unlawful detention of a U.S. citizen).  *Id*. ¶ 27(g)-(i).  The USC memoranda are
protected by FOIA exemption (b)(5), which protects from disclosure attorney work product and
attorney-client privileged communcations.  *Id*. ¶ 27(l).

64.     Best practices direct that the final version of a USC memorandum should be saved
in a case management database called PLAnet to document case management.  *Id*. ¶ 27(a), (f).
Producing screenshots of the PLAnet database would require ICE to create a new record.  *Id*.
¶ 27(n).  Nevertheless, ICE created a 36-page PDF of individuals with U.S. citizenship claims and

produced it to Stevens, redacting only the names of the individuals and other personally identifiable information. *Id*.

      65.    **Request #2:** Stevens submitted a FOIA request to ICE in March 2018 seeking:

> all material received, produced, referred to, or maintained since January 1, 2016 by Immigration and Customs Enforcement and its components related to the use of detainee labor by private contractors. This includes but is not limited to system records, contracts, including memorandums of understanding and addenda, letters, memoranda, reports, draft reports, policy proposals, notes, text messages, faxes, and e-mail that is intra- and inter-agency as well as all communications with private lobbyists, firms, individuals, journalists, and members of Congress. Please include screen shots of interfaces used by ICE employees accessing responsive materials from databases.

*Id*. ¶ 8(a). ICE assigned the request Case. No. 2018-ICFO-26000. *Id*. ¶ 8(b).

      66.    On March 27, 2018, ICE informed Stevens that the request was too broad. *Id*. ¶ 8(b). Stevens appealed, and ICE's Office of the Principal Legal Advisor remanded to ICE's FOIA office to search for responsive records, if any. *Id*. ¶ 8(c)-(e).

      67.    In October 2018, ICE's FOIA office tasked its enforcement and removal office to search for responsive records. *Id*. ¶ 24(b). Employees in the enforcement and removal office, based on their expertise and knowledge of the activities of program offices within the enforcement and removal office, tasked the custody management division to search its file systems (including paper files and electronic files) that, in its judgment, would be reasonably likely to have records regarding private use of detainee labor. *Id*. The custody management division employed the search term "Voluntary Work Program," which based on its expertise it determined would likely return responsive records. *Id*.

      68.    The same month, ICE's FOIA office tasked ICE's office of acquisition management to search for responsive records. *Id*. ¶ 24(c). Based upon their expertise and

knowledge of the program offices within the office of acquisition and management, an employee in the office of acquisition and management tasked the division responsible for detention contracts to search for records regarding private use of detainee labor. *Id.* The division responsible for detention contracts searched for all records regarding "private use of detainee labor." *Id.*

69.     The searches described in the previous two paragraphs returned 22 pages of potentially responsive records. *Id.* ¶ 24(d). ICE's FOIA office also received responsive records that had been referred to it by USCIS. *Id.* ¶ 24(e). In total, ICE reviewed 2,200 pages of potentially responsive records. *Id.* After determining that 153 pages were non-responsive or duplicates, ICE produced to Stevens 2,047 pages of responsive records on February 29, 2019. *Id.* ¶ 25(e).

70.     ICE's FOIA office also reviewed 4,426 pages of potentially responsive records that came from a search of the Office of the Principal Legal Advisor. *Id.* ¶ 24(f). After determining that 411 pages were non-responsive or duplicates, ICE produced to Stevens 4,015 responsive pages on March 8, 2019. *Id.*

71.     Stevens has complained that ICE did not produce text messages from ICE Acting Director Thomas Homan. *Id.* ¶ 28(b). But ICE does not have the technical capability to search its employees' text messages. *Id.*

72.     **Request #3:** On June 22, 2018, Stevens submitted to ICE a FOIA request seeking:

> 1) grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance; 2) grievance logs; 3) email, text messages, and all other communications, reports, and attachments associated with responding to grievances filed by ICE detainees or those complaining on their behalf. The time frame for this request is January 1, 2018 to the present.

*Id.* ¶ 9(a). ICE assigned the request Case No. 2018-ICFO-47097. *Id.* ¶ 9(b).

73.     ICE's FOIA office tasked its enforcement and removal office to search for responsive records. *Id*. ¶ 25(b). Employees of that office's information disclosure unit reviewed the request and, based on their expertise and knowledge of the program offices within the office, tasked the office's custody management division and the office's Houston field office to search the file systems (including paper files and electronic files) that in their judgment would be reasonably likely to have responsive records. *Id*.

74.     The custody management division and the Houston field office searched their Outlook email systems and their computer hard drives and shared drives for responsive records using the following search terms: "Grievances," "Grievance logs," "responding to grievances," and "Polk County Detention Facility." *Id*. ¶ 25(c). The search returned one Excel spreadsheet responsive to the request. *Id*. ¶ 25(d).

75.     ICE produced the Excel spreadsheet to Stevens on September 18, 2018. *Id*. ¶ 25(e).

76.     **Request #4:** On June 22, 2018, Stevens submitted to ICE a FOIA request seeking:

> 1) grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance; 2) grievance logs; 3) email, text messages, and all other communications, reports, and attachments associated with responding to grievances filed by ICE detainees or those complaining on their behalf. The time frame for this January 1, 2016 to December 31, 2017.

*Id*. ¶ 10(a). ICE assigned the request Case No. 2018-ICFO-47101. *Id*. ¶ 10(b).

77.     ICE's FOIA office tasked its enforcement and removal office to search for responsive records. *Id*. ¶ 26(b). Employees of that office's information disclosure unit reviewed the request and, based on their expertise and knowledge of the activities of the program offices in the enforcement and removal office, tasked the office's custody management division and the

Houston field office to search the file systems (including paper files and electronic files) that, in their judgment, would be reasonably likely to have responsive records. *Id.*

78.     The custody management division and Houston field office searched their Outlook email systems and computer hard drives and shared drives using the search terms "Grievances," "Grievance logs," "responding to grievances," and "Polk County Detention Facility." *Id.* ¶ 26(c). The search returned no responsive records. *Id.* ¶ 26(d).

79.     In August 2018, ICE informed Stevens that no responsive records were located. *Id.* ¶ 26(e). ICE's enforcement and removal office subsequently conducted a supplemental search and found a responsive Excel spreadsheet, which it produced to Stevens in October 2019. *Id.* ¶ 26(e).

**Withholdings**

80.     Stevens has clarified through counsel that she is not challenging the agencies' withholdings. Ex. G (April 23, 2020 email).

<div style="margin-left:40%">

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
        ALEX HARTZLER
        Assistant United States Attorney
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 886-1390
        alex.hartzler@usdoj.gov

</div>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,                )
                                   )
                    Plaintiff,     )
                                   )
          v.                       )    No. 18 C 5391
                                   )
                                   )    Judge Rowland
BROADCASTING BOARD OF              )
GOVERNORS, *et al.*,               )
                                   )
                    Defendants.    )

**INDEX OF EXHIBITS TO DEFENDANTS'
RULE 56.1 STATEMENT OF MATERIAL FACTS**

| Exhibit A | Declaration of Karen L. Mayo |
|-----------|------------------------------|
| Exhibit B | Declaration of Celeste Smith |
| Exhibit C | Declaration of Jill A. Eggleston |
| Exhibit D | Declaration of S. Litsa Marinos |
| Exhibit E | Declaration of Christopher A. Colbow |
| Exhibit F | Declaration of Toni Fuentes |
| Exhibit G | April 23, 2020 email |

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov

# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| | ) |
| Plaintiff, | ) Docket No. 18 C 5391 |
| | ) |
| BROADCASTING BOARD OF | ) |
| GOVERNORS, *et al.,* | ) |
| | ) |
| Defendants. | ) |


**<u>DECLARATION OF KAREN L. MAYO</u>**

I, Karen L. Mayo, Esquire, do hereby swear or affirm, under penalty of perjury, that the following statements are true to the best of my knowledge and belief.

1. Currently, I work for the U.S. Agency for Global Media[1] ("USAGM") as an Assistant General Counsel within the Office of the General Counsel ("OGC"). I have been employed with USAGM since June, 2019; however, I have been employed in the Federal government as an attorney since August, 1990. I have worked in FOIA litigation for over ten (10) years.

2. As a part of my duties as an Assistant General Counsel, I assist with Freedom of Information Act ("FOIA") appeals and FOIA litigation.

3. The above-captioned case was reassigned to me on or about November, 2019. I reviewed USAGM FOIA records in preparation of drafting this affidavit and have based my statements on said review of the records.

---

[1] As of August, 2018, the Broadcasting Board of Governors ("BBG") changed its name to the U.S. Agency for Global Media.

4. On June 20, 2016, the USAGM FOIA Office received a request from Jacqueline Stevens dated June 14, 2016. This FOIA request was docketed as 16-046 by the USAGM FOIA Office upon receipt. FOIA Request 16-046 specifically requested:

   *"D3 Systems, Inc. contracts (including addenda) and work products associated with these contracts produced since January 1, 2003. This includes but is not limited to background information and work status updates shared with or received from D3 Systems, Inc. and its employees or subcontractors, email, system records, reports, draft reports, and notes.*

5. FOIA Office forwarded FOIA Request 16-046 to USAGM's Office of Professional Research ("OPR") - Carol Prahl; Voice of America's ("VOA's") - Bill Bell; and Contracts Office – Cherlynn Peters on June 21, 2016. Cherlynn Peters, of USAGM's Contracts Office, was then asked to conduct an indepth search all D3 Systems, Inc. contracts since 2003. The D3 Systems contract was processed by USAGM's contracting office. An initial search conducted by Ms. Peters produced 14 pages, but the FOIA Officer at that time, Andrew Krog, requested that the search be expanded to include, not just a single 2010 contract, but all D3 Systems, Inc. contracts (including addenda)" associated with those contracts from January 1, 2003. A supplemental search was thus conducted by Herman Shaw which yielded 109 pages on May 30, 2017 in response to this request which was forwarded to the requester.

6. Professor Stevens timely appealed this 109-page production, and the USAGM FOIA Appeals docketed her appeal as 16-046-1. At no time did the requester contest the adequacy of any of the original searches conducted by USAGM, *i.e.,* either upon the initial intake and/or the appeal.

7. USAGM's FOIA Access Appeal Committee reviewed Professor Steven's FOIA request and the documents produced in response. On October 16, 2017, the Agency's FOIA Access Appeal Committee granted Professor Stevens' FOIA appeal and directed USAGM's Contracts Office to perform another supplemental search to include all background information and work status updates shared with and/or received from D3 Systems, including email, system records, reports, draft reports, and notes.

8. The Contracts Office completed this supplemental search on June 17, 2018. Via a CD-ROM, 1,487 pages were provided to Professor Stevens on that date. Additionally, Professor Stevens was advised that 1,195 pages would be withheld:

(a) 1,062² pages (14 records) would be withheld under FOIA exemptions (b)4 and (b)6 and

(b) 133 pages (three records) would be withheld under FOIA exemption (b)5.

9. Professor Stevens timely appealed USAGM's determination to the Federal District Court. In her complaint, Professor Stevens challenged the 14 records withheld, specifically those withheld under FOIA exemption (b)(4) but not the adequacy of any of the searches conducted.

10. To date, all other relevant documents have been provided to Professor Stevens. USAGM's search was reasonably calculated to locate records responsive to Professor Stevens's FOIA request, and to date, USAGM has no reason to believe that additional responsive records exist that are within its custody and control.

11. This declaration consists of 11 numbered paragraphs and three pages, inclusive of the signature page.

*Karen L. Mayo*                                    *July 20, 2020*

_____                    _____

Karen L. Mayo, Esquire                             Date

Agency Counsel

---

² It should be noted that the Agency actually withheld 1,080 pages, not 1,062 pages, but that count was provided in all correspondence.

# Exhibit B

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **Jacqueline Stevens**, | |
| Plaintiff, | |
| vs. | Case No. 18 C 5391 |
| **Broadcasting Board of Governors**, | |
| Defendant. | |

## DECLARATION OF CELESTE SMITH

I, Celeste Smith, declare as follows:

1.       My name is Celeste Smith and I am the Director, Freedom of Information Act ("FOIA"), Office of Communications, Administration for Children and Families ("ACF"), U.S. Department of Health and Human Services ("HHS" or "the Department").

2.       My duties include responding to requests under FOIA, 5 U.S.C. § 522, for ACF records. My duties also include managing searches for ACF records in response to requests under the FOIA, determining whether to release or withhold records or portions of records in accordance with the FOIA and with HHS regulations implementing the FOIA, and overseeing all FOIA activities within ACF.

3.       I started with ACF as Acting FOIA in August 2018, and transitioned to permanent FOIA Director in January 2019. I have worked in the FOIA arena for 19 years.

4.       I make this declaration based on my personal knowledge and information available to me in my official capacity.

5.       The purpose of this declaration is to explain the Department's processing and release determinations for records responsive to ACF FOIA requests 18-F-0210 and 18-F-0211. Both FOIA requests were directed to ACF's Office of Refugee Resettlement. Additional information was also obtained from ACF's Office of Grants Management.

<u>Background on ACF</u>

6.       ACF's Office of Refugee Resettlement ("ORR") proposes and implements national policy for the refugee resettlement program. Unaccompanied alien children in the United States who are under 18 years of age are transferred to the care and custody of ORR. ORR places an unaccompanied child with an ORR care provider in the least restrictive setting that is in the best interests of the child, taking into consideration danger to self, danger to the community, and risk of flight. ORR also takes into consideration the unique nature of each child's situation and

incorporates child welfare principles to make placement, clinical, case management, and release decisions that are in the best interest of the child. The majority of unaccompanied alien children come into ORR custody after having been apprehended by officials with the Department of Homeland Security ("DHS"), Customs and Border Protection ("CBP"), while trying to enter the United States without legal authorization. *See* ACF Office of Refugee Resettlement: Unaccompanied Alien Children, *The UAC Policy Guide*, https://www.acf.hhs.gov/orr/programs/ucs, at Section 1.1 (last reviewed Sept. 18, 2019) (hereinafter "UAC Policy Guide").

7.      HHS makes age determinations when an unaccompanied alien child is in ORR custody and there is a reasonable suspicion that the child is 18 years of age or older. ORR uses numerous forms of evidence to determine a child's age, including government documents, individual statements, and medical exams. A dental maturity assessment is one form of evidence that may be used, but it is only used in conjunction with other evidence. If an individual in ORR custody is determined to be an adult, ORR works with DHS Immigration and Customs Enforcement ("ICE") to transfer custody of that individual to ICE. *See* UAC Policy Guide, Section 1.6.

8.      The ACF Office of Grants Management ("OGM") provides technical assistance, guidance, and overall supervision to grantees responsible for direct delivery of services. Grants are awarded to state and local governments, non-profit groups, faith and community-based organizations, American Indian tribes, and Native American communities to implement programs that promote economic and social well-being for vulnerable children, families and communities. ORR care providers receive grants from OGM.

FOIA Requests

9.      In or around May 7, 2018, Plaintiff Jacqueline Stevens submitted two FOIA requests to ACF. A true and correct copy of these requests received by ACF is attached as Attachment A. The first request, HHS FOIA Case No. 18-F-0210 ("HHS FOIA-0210"), requested (1) all materials related to work requested of, performed by, or discussed with Professor David R. Senn or his representatives between January 1, 2016 and the date of production, and (2) all correspondence, including but limited to email and text messages, between ORR and employees of ICE and CBP related to age assessments of individuals in ORR or ICE custody, including any manuals or handbooks.

10.     Plaintiff's second FOIA request, HHS FOIA Case No. 18-F-0211 ("HHS FOIA-0211"), requested (1) contracts and related materials produced or received by ORR related to age assessments of unaccompanied alien children by ORR care provider Southwest Key, and (2) all invoices or other records maintained or submitted by Southwest Key documenting expenditures by HHS for conducting age assessments.

Searches Conducted in Response to HHS FOIA-0210 and -0211

11.     In November 2018, I referred HHS FOIA-0210 part (1) to the office of the Assistant Secretary for Public Affairs ("ASPA"). ASPA concluded that there were no documents indicating that a contractual relationship existed between HHS and Professor David R. Senn during the time

period included in the FOIA request. I therefore determined that any documents responsive to HHS FOIA-0210 would exist as correspondence between ORR and Professor Senn.

12.     In March 2019, OGM confirmed that HHS did not receive or maintain records of invoices or other records documenting expenditures made by Southwest Key. I therefore determined there were no documents responsive to HHS FOIA-0211 part (2).

13.     In November 2018 and January 2019, I obtained copies of cooperative agreements between HHS and Southwest Key Programs, Inc., as well as Federal Financial Reports submitted by Southwest Key.

14.     In December 2018, I directed a member of the ACF FOIA office to send a search request to the Department of Health and Human Services (HHS) Information Technology (IT) group to conduct a search for emails responsive to HHS FOIA-0210. The search request included emails: (1) sent to or received by any of ORR's Federal Field Specialists, who serve as the liaisons with the ORR care providers, or their supervisors, (2) that included an ICE email address, a CBP email address, or "senn@uthscsa.edu" (Professor Senn's email address), and (3) that included terms relating to age assessments. The search request included emails between January 1, 2016 and December 6, 2018. I received the results of the search on December 13, 2018. In March 2019 I confirmed with the HHS IT group that any attachments that were not included in the search results were not available because they had been encrypted and so were not saved with the email to which they were attached. Based on information I received from the HHS Office of Operations, HHS does not maintain records of text messages.

Productions to Plaintiff in Response to HHS FOIA-0210 and -0211

15.     On November 19, 2018, ACF produced to Plaintiff a letter identifying 78 responsive pages as a partial response to HHS FOIA-0210 and -0211. Attachment B. The 78 pages included cooperative agreements between HHS and Southwest Key and Federal Financial Reports submitted by Southwest Key, all responsive to HHS FOIA-0211 part (1). Of the 78 pages, ACF released 34 without redactions, and the remaining 44 pages with redactions under Exemption (b)(6) of the FOIA, 5 U.S.C. § 552(b)(6) ("FOIA Exemption (b)(6)"). These included redaction of the signatures on the agreements and of the identities and email addresses of lower level employees at Southwest Key. The November 19 response also directed Plaintiff to Section 1.6.2 of the UAC Policy Guide for additional information on ORR's age determination procedures, in response to HHS FOIA-0210 part (2). I later determined that one of the cooperative agreements included in this production was missing pages 5-9; OGM confirmed that those pages were also missing from the grant award submitted for that year.

16.     On January 25, 2019, ACF sent two productions to Plaintiff. The first production was a final response to HHS FOIA-0211, identifying 66 additional responsive pages of cooperative agreements between HHS and Southwest Key. Attachment C. Of the total pages, ACF released 63 without redactions, and the remaining three pages with signatures redacted under FOIA Exemption (b)(6).

17.     The second production on January 25, 2019, was a partial response to HHS FOIA-0210 and identified 88 pages responsive to part (1) and 471 pages responsive to part (2).

Attachment D. Of the 88 pages responsive to part (1), ACF released 15 without redactions and 73 with redactions under FOIA Exemption (b)(6). Of the 471 pages responsive to part (2), ACF released 29 without redactions, and referred 442 pages to DHS for its review and release determination because the pages originated with that agency. The pages referred to DHS also included redactions under FOIA Exemption (b)(6).

18.     On February 22, 2019, ACF produced to Plaintiff a letter identifying 1,297 pages in partial response to HHS FOIA-0210 part (2). Attachment E. Of the total responsive pages, ACF released 158 without redactions, and 150 with redactions under FOIA Exemption (b)(6). ACF referred the remaining 989 pages to DHS for its review and release determination because the pages originated with that agency. The pages referred to DHS also included redactions under FOIA Exemption (b)(6). ACF's letter to Plaintiff also reiterated that additional information responsive to HHS FOIA-0210 part (2) could be found in the UAC Policy Guide at Section 1.6.2.

19.     On March 8, 2019, ACF produced to Plaintiff a letter identifying 2,956 responsive pages as a final response to HHS FOIA-0210. Attachment F. All of the pages produced with the March 8 letter were in response to part (2) of the request. The March 8 response again directed Plaintiff to Section 1.6.2 of the UAC Policy Guide. Of the total responsive pages produced with the March 8 letter, ACF released 82 without redactions, and 2,146 with redactions under FOIA Exemption (b)(6). ACF referred the remaining 728 pages to DHS for its review and released determination because the pages originated with that agency. The pages referred to DHS also included redactions under FOIA Exemption (b)(6). ACF's March 8, 2019 letter also included appeal rights for HHS FOIA-0210 and -0211 but noted that Plaintiff had already filed an appeal in the United States District Court for the Northern District of Illinois.

20.     For all of the pages referenced in paragraphs 17, 18 and 19 that ACF produced in response to HHS FOIA-0210 part (2) or referred to DHS for production and which included redactions under 5 U.S.C. § 552(b)(6), the redactions included the identities and personal information of unaccompanied minors and staff at ORR care providers, as well as cell phone numbers of federal employees.

21.     For all redactions made under 5 U.S.C. § 552(b)(6), I analyzed the records and found they met the threshold requirement of this exemption. Additionally, I reviewed and weighed the public interest in disclosure of this information against the privacy interest in nondisclosure, and found that the privacy interest outweighed the public's interest in disclosure.

I declare that the foregoing is true and correct to the best of my knowledge and belief and is given under penalty of injury.

Executed on this 23rd day of July, 2020.

Carla C. Smith -S

Digitally signed by
Carla C. Smith -S
Date: 2020.07.23
23:15:15 -04'00'

Celeste Smith
Director, Freedom of Information Office
Office of Communications
Administration for Children and Families
Department of Health and Human Services

**Smith, Celeste (ACF)**

| | |
|---|---|
| **From:** | ACF FOIA (ACF) |
| **Sent:** | Monday, May 7, 2018 8:49 PM |
| **To:** | Cole, Jessie (ACF) |
| **Cc:** | Wallace, Jeffery (ACF) |
| **Subject:** | FW: AGE ASSESSMENT contracts , protocols, and related correspondence for those in ORR custody seeking immigration to the United States |

Jessie,

Please enter this into FOIAXpress and assign to Jeff Wallace and Mata Sebgoya.

Thanks,

Kim

*ACF #18-F-0210*

**Kimberly N. Epstein**
**Freedom of Information Act Officer**
**Administration for Children and Families**
**202-401-4759**

**From:** Jacqueline Stevens [mailto:jacqueline-stevens@northwestern.edu]
**Sent:** Monday, May 07, 2018 7:50 PM
**To:** ACF FOIA (ACF) <FOIA@ACF.hhs.gov>
**Subject:** AGE ASSESSMENT contracts , protocols, and related correspondence for those in ORR custody seeking immigration to the United States

To Whom It May Concern,

I tried to file a request through the interface.  I registered and filled out the required fields but received the page would not load after I submitted it with the proper code.
The url stated this:
https://pal.acf.hhs.gov/App/Unauthorized.aspx

I am therefore submitting my request to your agency through this email address, per the FOIA statute and regulations.

I am requesting the following:

1. All contracts, invoices, email,  work products,  draft and final reports, system records, and screen shots of tabs for system records containing materials received, produced, or maintained by HHS and its components, including but not limited to the Office of Refugee Resettlement and its contractors and subcontractors for work requested, performed, OR discussed in any medium with Dr. David R. Senn or his representatives between January 1, 2016 and the date your office produces the responsive records.

Attachment A

2. All correspondence, including but not limited to email and text messages, with employees of Immigration and Customs Enforcement or Customs and Border Protection or its components related to policies , protocols, and practices for assessing the age of those in the custody of HHS or ICE in the United States between January 1, 2016 and the date your offices produces responsive records. E.g., if ORR use a manual or handbook for this, I would like a copy of that document. If they reach out to ICE or CBP employees for implementing protocols for assessing age, I would like a copy of this correspondence.

I understand that some of these items may include information protected by the Privacy Act and expect that you will produce responsive records with identifying information redacted.

I am a professor and director of the Deportation Research Clinic at Northwestern University and I intend to use the responsive documents for my research and journalism. http://buffett.northwestern.edu/programs/deportationresearch/clinic-in-the-news.html For evidence in support of this request, please see the previous link to my own publications and those by news media relying on my research. I am therefore requesting a waiver of all fees. I do not intend to use responsive documents for commercial gain.

If you have any questions, please feel free to contact me at this email address or the contact information below.

Thank you,
Jackie (Stevens)

PS I am happy to resubmit the request above if your interface works but request this date begin the tolling of the statutory limit for my request. I reset my password but am sending you this information to assist in technical troubleshooting.

Professor
Political Science and Legal Studies
Northwestern University
Director
Deportation Research Clinic
Buffett Institute
http://buffett.northwestern.edu/programs/deportationresearch
Citizenship In Question (Duke U.P. 2017), Open Source PDF http://www.oapen.org/search?identifier=625272

office phone: 847-467-2093
mail
601 University Place
Political Science Department
Evanston, IL 60208
http://jacquelinestevens.org
http://stateswithoutnations.blogspot.com

**From:** foia@acf.hhs.gov <foia@acf.hhs.gov>
**Sent:** Monday, May 7, 2018 5:35 PM
**To:** Jacqueline Stevens
**Subject:** Your Login Information - HHS-ACF

Attachment A

Dear Jacqueline Stevens,

A temporary password has been issued and sent to the email address provided. Please check your email for this temporary password and return
 to https://pal.acf.hhs.gov to login. If you have any previously submitted requests to HHS-ACF you will be able to view them by logging into your user account.


Kindly change the password provided by us.

Regards,
HHS-ACF

3

Attachment A

ACF #18-F-0211

## Smith, Celeste (ACF)

| | |
|---|---|
| **From:** | Jacqueline Stevens <jacqueline-stevens@northwestern.edu> |
| **Sent:** | Monday, May 7, 2018 9:12 PM |
| **To:** | ACF FOIA (ACF) |
| **Subject:** | Southwest Key contract requirements and invoices for performing age assessments |

To Whom It May Concern,

I write under the Freedom of Information Act to request:

1) All contracts, addenda, attachments and other materials produced or received by HHS Office of Refugee Resettlement to which Southwest Key has committed for the performance of age assessments, as indicated in the protocols indicated here: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.6

2) All invoices or other records maintained or submitted by Southwest Key for documenting expenditures for providing age assessments to HHS or its components, including but not limited to the Office of Refugee Resettlement.

I am requesting these for work performed between January 1, 2016 and the present.

I understand that some of these items may include information protected by the Privacy Act and expect that you will produce responsive records with identifying information redacted.

I am a professor and director of the Deportation Research Clinic at Northwestern University and I intend to use the responsive documents for my research and journalism. http://buffett.northwestern.edu/programs/deportationresearch/clinic-in-the-news.html For evidence in support of this request, please see the previous link to my own publications and those by news media relying on my research. I am therefore requesting a waiver of all fees. I do not intend to use responsive documents for commercial gain.

If you have any questions, please feel free to contact me at this email address or the contact information below.

Thank you,
Jackie (Stevens)


Professor
Political Science and Legal Studies
Northwestern University
Director
Deportation Research Clinic
Buffett Institute
http://buffett.northwestern.edu/programs/deportationresearch
Citizenship In Question (Duke U.P. 2017), Open Source PDF http://www.oapen.org/search?identifier=625272

office phone: 847-467-2093

1

Attachment A

mail
601 University Place
Political Science Department
Evanston, IL  60208
http://jacquelinestevens.org
http://stateswithoutnations.blogspot.com

___

**From:** foia@acf.hhs.gov <foia@acf.hhs.gov>
**Sent:** Monday, May 7, 2018 5:35 PM
**To:** Jacqueline Stevens
**Subject:** Your Login Information - HHS-ACF

Dear Jacqueline Stevens,

A temporary password has been issued and sent to the email address provided. Please check your email for this temporary password and return
 to https://pal.acf.hhs.gov to login. If you have any previously submitted requests to HHS-ACF you will be able to view them by logging into your user account.


Kindly change the password provided by us.

Regards,
HHS-ACF

Attachment A



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
330 C Street, S.W.
Washington, D.C. 20201

Case No. 18-F-0210/0211 (James Madison Project v HHS 18 C 5391)

November 19, 2018

Jackie Stevens
Northwestern University
601 University Place
Political Science Department
Evanston, IL 60208

Dear Ms. Stevens:

This is a partial response to your enclosed Freedom of Information Act (FOIA) requests to the Administration for Children and Families (ACF). You requested:

FOIA 18-F-0210
1. All contracts, invoices, email, work products, draft and final reports, system records, and screen shots of tabs for system records containing materials received, produced, or maintained by HHS and its components, including but not limited to the Office of Refugee Resettlement and its contractors and subcontractors for work requested, performed, or discussed in any medium with Dr. David R. Senn or his representatives between January 1, 2016 and the date the records are produced.
2. All correspondence, including but not limited to email and text messages, with employees of Immigration and Customs Enforcement or Customs and Border Protection or its components related to policies, protocols, and practices for assessing the age of those in custody of HHS or ICE in the United States between January 1, 2016 and the date records are produced. E.g., if ORR uses a manual or handbook for this, you would like a copy of this too. If ORR reaches out to ICE or CBP employees for implementing protocols for assessing age, you would like a copy of the correspondence.

FOIA 18-F-0211
1. All contracts, addenda, attachments and other materials produced or received by HHS Office of Refugee Resettlement to which Southwest Key has committed for the performance of age assessments, as indicated in the protocols indicated here: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.6
2. All invoices or other records maintained or submitted by Southwest Key for documenting expenditures for providing age assessments to HHS or its components, including but not limited to the Office of Refugee Resettlement.

Regarding 18-F-0210, item #2, ORR has advised that Section 1.6.2 of the policy guide addresses age determination (https://www.acf.hhs.gov/orr/programs/ucs).

Attachment B

Ms. Jackie Stevens                                                                 Page 2
FOIA 18-F-0210/0211 (18 C 5391)

Enclosed are 78 pages of cooperative agreements responsive to 18-F-0211, item #1. I have
determined 34 pages are releasable in full, without redactions, and 44 pages are being released in
part pursuant to FOIA Exemption (b)(6) of the FOIA 5 U.S.C. § 552(b)(6).

Exemption 6, permits the withholding of information and records about individuals in "personnel
and medical files and similar files, the disclosure of which would constitute a clearly unwanted
invasion of personal privacy." The definition of "similar files" has historically been broadly
interpreted to include a wide variety of files, and the United States Supreme Court has held that
Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. From
the attached cooperative agreements, all signatures have been redacted, as well as the identities
and email addresses of lower level employees of the facilities. I have analyzed these records
and find they meet the threshold requirement of this exemption. Additionally, I have reviewed
and weighed the public interest in disclosure of this information against the privacy interest in
nondisclosure, and found that the privacy interest outweighs the public's interest in disclosure.

We will continue to process your request and make rolling releases until all of the responsive
records have been located and reviewed.

Sincerely yours,

Celeste Smith
Acting FOIA Officer
Administration for Children and Families

Attachment B

 **DEPARTMENT OF HEALTH & HUMAN SERVICES**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
330 C Street, S.W.
Washington, D.C. 20201

Case No. 18-F-0211 (James Madison Project v HHS 18 C 5391)

January 25, 2019

Jackie Stevens
Northwestern University
601 University Place
Political Science Department
Evanston, IL 60208

Dear Ms. Stevens:

This is a final response to your enclosed Freedom of Information Act (FOIA) request 18-F-0211 to the Administration for Children and Families (ACF). You requested:

1. All contracts, addenda, attachments and other materials produced or received by HHS Office of Refugee Resettlement to which Southwest Key has committed for the performance of age assessments, as indicated in the protocols indicated here: https://www.acf.hhs.gov/orr/resource/children-entering-the-united-states-unaccompanied-section-1#1.6
2. All invoices or other records maintained or submitted by Southwest Key for documenting expenditures for providing age assessments to HHS or its components, including but not limited to the Office of Refugee Resettlement.

Enclosed are 66 pages of cooperative agreements responsive to item #1. I have determined 63 pages are releasable in full, without redactions, and 3 pages are being released in part pursuant to FOIA Exemption (b)(6) of the FOIA 5 U.S.C. § 552(b)(6).

Exemption 6, permits the withholding of information and records about individuals in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwanted invasion of personal privacy." The definition of "similar files" has historically been broadly interpreted to include a wide variety of files, and the United States Supreme Court has held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. From the attached cooperative agreements, all signatures have been redacted. I have analyzed these records and find they meet the threshold requirement of this exemption. Additionally, I have reviewed and weighed the public interest in disclosure of this information against the privacy interest in nondisclosure, and found that the privacy interest outweighs the public's interest in disclosure.

Attachment C

Ms. Jackie Stevens                                                            Page 2
FOIA 18-F-0210/0211 (18 C 5391)


If you are not satisfied with any aspect of the processing and handling of this request, please
contact Sarah Wahl at sarah.wahl@acf.hhs.gov.   You may also contact the HHS/ACF FOIA
Public Liaison for assistance at:

> Kenneth Wolfe, FOIA Public Liaison
> HHS FOIA Public Liaison
> U.S. Department of Health and Human Services
> ACF, Office of Communications, 4002A
> 330 C. Street S. W.
> Washington, DC 20201


Sincerely yours,

Carla C.
Smith -S

Digitally signed by Carla C. Smith -S
DN: c=US, o=U.S. Government,
ou=HHS, ou=ACF, ou=People,
cn=Carla C. Smith -S,
0.9.2342.19200300.100.1.1=20013802
47
Date: 2019.01.25 14:43:08 -05'00'

Celeste Smith
Director, Freedom of Information Office
Office of Communications
Administration for Children and Families
Department of Health and Human Services
Washington, D.C.

Attachment C



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
330 C Street, S.W.
Washington, D.C. 20201

Case No. 18-F-0210 (James Madison Project v HHS 18 C 5391)

January 25, 2019

Jackie Stevens
Northwestern University
601 University Place
Political Science Department
Evanston, IL 60208

Dear Ms. Stevens:

This is an interim response to your enclosed Freedom of Information Act (FOIA) request 18-F-0210 to the Administration for Children and Families (ACF). You requested:

1.  All contracts, invoices, email, work products, draft and final reports, system records, and screen shots of tabs for system records containing materials received, produced, or maintained by HHS and its components, including but not limited to the Office of Refugee Resettlement and its contractors and subcontractors for work requested, performed, or discussed in any medium with Dr. David R. Senn or his representatives between January 1, 2016 and the date the records are produced.
2.  All correspondence, including but not limited to email and text messages, with employees of Immigration and Customs Enforcement or Customs and Border Protection or its components related to policies, protocols, and practices for assessing the age of those in custody of HHS or ICE in the United States between January 1, 2016 and the date records are produced. E.g., if ORR uses a manual or handbook for this, you would like a copy of this too. If ORR reaches out to ICE or CBP employees for implementing protocols for assessing age, you would like a copy of the correspondence.

Regarding 18-F-0210, item #2, ORR has advised that Section 1.6.2 of the policy guide addresses age determination. That information can be accessed by visiting (https://www.acf.hhs.gov/orr/programs/ucs).

Enclosed are 88 pages fully responsive to item #1. I have determined 15 pages are releasable in full, without redactions, and 73 pages are being released in part pursuant to FOIA Exemption (b)(6) of the FOIA 5 U.S.C. § 552(b)(6).

Enclosed are 471 pages responsive to item #2. I have determined 29 pages are releasable in full, without redactions, and 442 pages are being released in part pursuant to FOIA Exemption (b)(6) of the FOIA 5 U.S.C. § 552(b)(6). Of these 442 pages, 305 pages originated with the Department of Homeland Security and are being referred to them.

Attachment D

Ms. Jackie Stevens                                                                  Page 2
FOIA 18-F-0210/0211 (18 C 5391)

Exemption 6, permits the withholding of information and records about individuals in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwanted invasion of personal privacy."  The definition of "similar files" has historically been broadly interpreted to include a wide variety of files, and the United States Supreme Court has held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. On the attached records, identities and personal information of unaccompanied minors and shelter staff was redacted as well as cell phone numbers of federal employees. I have analyzed these records and find they meet the threshold requirement of this exemption. Additionally, I have reviewed and weighed the public interest in disclosure of this information against the privacy interest in nondisclosure, and found that the privacy interest outweighs the public's interest in disclosure.

We will continue to process your request and make rolling releases until all of the responsive records have been located and reviewed.


Sincerely yours,

Carla C.
Smith -S

Digitally signed by Carla C. Smith -S
DN: c=US, o=U.S. Government, ou=HHS,
ou=ACF, ou=People, cn=Carla C. Smith -
S,
0.9.2342.19200300.100.1.1=2001380247
Date: 2019.01.25 16:37:07 -05'00'

Celeste Smith
Director, Freedom of Information Office
Office of Communications
Administration for Children and Families
Department of Health and Human Services
Washington, D.C.

Attachment D



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
330 C Street, S.W.
Washington, D.C. 20201

Case No. 18-F-0210 (James Madison Project v HHS 18 C 5391)

February 22, 2019

Jackie Stevens
Northwestern University
601 University Place
Political Science Department
Evanston, IL 60208

Dear Ms. Stevens:

This is a second interim response to your enclosed Freedom of Information Act (FOIA) request
18-F-0210 to the Administration for Children and Families (ACF). You requested:

1. All contracts, invoices, email, work products, draft and final reports, system records, and
   screen shots of tabs for system records containing materials received, produced, or
   maintained by HHS and its components, including but not limited to the Office of
   Refugee Resettlement and its contractors and subcontractors for work requested,
   performed, or discussed in any medium with Dr. David R. Senn or his representatives
   between January 1, 2016 and the date the records are produced.
2. All correspondence, including but not limited to email and text messages, with employees
   of Immigration and Customs Enforcement or Customs and Border Protection or its
   components related to policies, protocols, and practices for assessing the age of those in
   custody of HHS or ICE in the United States between January 1, 2016 and the date records
   are produced. E.g., if ORR uses a manual or handbook for this, you would like a copy of
   this too. If ORR reaches out to ICE or CBP employees for implementing protocols for
   assessing age, you would like a copy of the correspondence.

Regarding 18-F-0210, item #2, ORR has advised that Section 1.6.2 of the policy guide addresses
age determination. That information can be accessed by visiting
(https://www.acf.hhs.gov/orr/programs/ucs).

Enclosed are 1,297 pages responsive to item #2. I have determined 158 pages are releasable in
full, without redactions, and 150 pages are being released in part pursuant to FOIA Exemption
(b)(6) of the FOIA 5 U.S.C. § 552(b)(6). The remaining 989 pages originated with the
Department of Homeland Security and are being referred to them for their review and release
determination.

Attachment E

Ms. Jackie Stevens                                                                                Page 2
FOIA 18-F-0210/0211 (18 C 5391)

Exemption 6, permits the withholding of information and records about individuals in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwanted invasion of personal privacy." The definition of "similar files" has historically been broadly interpreted to include a wide variety of files, and the United States Supreme Court has held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. On the attached records, identities and personal information of unaccompanied minors and shelter staff was redacted as well as cell phone numbers of federal employees. I have analyzed these records and find they meet the threshold requirement of this exemption. Additionally, I have reviewed and weighed the public interest in disclosure of this information against the privacy interest in nondisclosure, and found that the privacy interest outweighs the public's interest in disclosure.

We will continue to process your request and make rolling releases until all of the responsive records have been located and reviewed.

Sincerely yours,

Carla C. Smith -S

Digitally signed by Carla C. Smith -S
DN: c=US, o=U.S. Government, ou=HHS,
ou=ACF, ou=People, cn=Carla C. Smith -
S,
0.9.2342.19200300.100.1.1=2001380247
Date: 2019.02.22 15:41:48 -05'00'

Celeste Smith
Director, Freedom of Information Office
Office of Communications
Administration for Children and Families
Department of Health and Human Services
Washington, D.C.

Attachment E



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

**ADMINISTRATION FOR CHILDREN AND FAMILIES**
330 C Street, S.W.
Washington, D.C. 20201

Case No. 18-F-0210/0211
(Jacqueline Stevens v. Broadcasting Board of Governors, *et. al.,* 18 C 5391)

March 8, 2019

Jackie Stevens
Northwestern University
601 University Place
Political Science Department
Evanston, IL 60208

Dear Ms. Stevens:

This is a final response to your enclosed Freedom of Information Act (FOIA) request 18-F-0210
to the Administration for Children and Families (ACF). You requested:

1.  All contracts, invoices, email, work products, draft and final reports, system records, and
    screen shots of tabs for system records containing materials received, produced, or
    maintained by HHS and its components, including but not limited to the Office of
    Refugee Resettlement and its contractors and subcontractors for work requested,
    performed, or discussed in any medium with Dr. David R. Senn or his representatives
    between January 1, 2016 and the date the records are produced.
2.  All correspondence, including but not limited to email and text messages, with employees
    of Immigration and Customs Enforcement or Customs and Border Protection or its
    components related to policies, protocols, and practices for assessing the age of those in
    custody of HHS or ICE in the United States between January 1, 2016 and the date records
    are produced. E.g., if ORR uses a manual or handbook for this, you would like a copy of
    this too. If ORR reaches out to ICE or CBP employees for implementing protocols for
    assessing age, you would like a copy of the correspondence.

Regarding 18-F-0210, item #2, ORR has advised that Section 1.6.2 of the policy guide addresses
age determination. That information can be accessed by visiting
(https://www.acf.hhs.gov/orr/programs/ucs).

Enclosed are 2,956 pages responsive to item #2. I have determined 82 pages are releasable in full
without redactions, and 2,146 pages are being released in part pursuant to FOIA Exemption
(b)(6). The remaining 728 pages originated with the Department of Homeland Security and are
being referred to them.

Attachment F

Ms. Jackie Stevens                                                                                    Page 2
FOIA 18-F-0210/0211 (18 C 5391)

Exemption 6 permits the withholding of information and records about individuals in "personnel
and medical files and similar files, the disclosure of which would constitute a clearly unwanted
invasion of personal privacy." The definition of "similar files" has historically been broadly
interpreted to include a wide variety of files, and the United States Supreme Court has held that
Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. On the
attached records, identities and personal information of unaccompanied minors and shelter staff
was redacted as well as cell phone numbers of federal employees. I have analyzed these records
and find they meet the threshold requirement of this exemption. Additionally, I have reviewed
and weighed the public interest in disclosure of this information against the privacy interest in
nondisclosure, and found that the privacy interest outweighs the public's interest in disclosure.

You have the right to appeal this determination. By filing an appeal, you preserve your rights
under FOIA and give the agency a chance to review and reconsider your request and the
agency's decision.

Your appeal must be mailed within 90 days from the date of receipt of this letter, to:

> Kim Hutchinson, Deputy Agency Chief FOIA Officer
> U.S. Department of Health and Human Services
> Office of the Assistant Secretary for Public Affairs
> 200 Independence Avenue, S.W., Room 729H
> Washington, DC 20201

Please clearly mark both the envelope and your letter "Freedom of Information Act Appeal."

You have already filed an appeal related to these FOIA requests, captioned *Jacqueline Stevens v.
Broadcasting Board of Governors,* et. al., 18 C 5391, and pending in the United States District
Court for the Northern District of Illinois. If you are not satisfied with any aspect of the
processing and handling of FOIA 18-F-0210 or 18-F-0211, you may contact the Assistant United
States Attorney Prashant Kolluri at prashant.kolluri@usdoj.gov.

Sincerely yours,

Carla C.
Smith -S

Digitally signed by Carla C. Smith -S
DN: c=US, o=U.S. Government,
ou=HHS, ou=ACF, ou=People,
cn=Carla C. Smith -S,
0.9.2342.19200300.100.1.1=2001380
247
Date: 2019.03.08 11:02:57 -05'00'

Celeste Smith
Director, Freedom of Information Office
Office of Communications
Administration for Children and Families
Department of Health and Human Services
Washington, D.C.

Attachment F

Exhibit C

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLNOIS
EASTERN DIVISION

JACQUELINE STEVENS,                              Case No. 1:18-cv-05391

               Plaintiff,                   Hon. Judge Rowland

v.

BROADCASTING BOARD OF
GOVERNORS et al.

               Defendants.
_____/


## DECLARATION OF JILL A. EGGLESTON

I, JILL A. EGGLESTON, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1.    I am the Associate Center Director in the Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and Immigration Services (USCIS), within the United States Department of Homeland Security (DHS), in Lees Summit, Missouri. I have held the position of Associate Center Director since February 4, 2008. I am also an attorney, licensed to practice law by the State of Kansas in 1983. Prior to joining DHS, I served for 19 ½ years as Associate General Counsel for the Defense Finance and Accounting Service (DFAS) of the U.S. Department of Defense (DoD). As part of my duties with the DFAS, among other things, I provided legal advice to the agency on the release of information sought under the FOIA and PA.

2.    As FOIA Officer for the USCIS, I supervise over 200 information access professionals who are responsible for the orderly processing of all public, congressional, judicial, and inter-/intra-agency requests or demands for access to USCIS records and information pursuant to the FOIA, Privacy Act, Executive Orders, departmental directives, regulations and compulsory legal process.

3.    Through the exercise of my official duties as Associate Center Director, I am personally familiar with USCIS's standard process for responding to FOIA requests, including search procedures for locating agency records. More specifically, I am personally familiar with USCIS's procedures and actions taken in response to the FOIA requests at issue in this litigation. I was responsible for overseeing and coordinating the searches conducted by

1

USCIS in response to these requests, and I am personally familiar with the search conducted by USCIS in response to these requests

4.  This declaration is submitted in support of Defendants' Motion for Summary Judgement in this matter. This declaration describes, generally, agency procedures for processing FOIA requests for access to agency records and, more specifically, agency action taken in response to the Plaintiff's FOIA request.  The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

## USCIS'S STANDARD FOIA OPERATING PROCEDURES

5.  USCIS routinely and consistently processes FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and DHS Management Directive No. 262-11.  Specifically, when the agency receives a FOIA request for USCIS information or documents, the agency's standard procedure includes the following: [1]

> a) after determining the nature, scope, and contours of a valid FOIA request, a preliminary search is conducted to locate potentially responsive records;

> b) because FOIA requests are generally processed by the NRC on a first-in/first-out basis, the request is logged in the approximate order of its receipt into a computerized case tracking and retrieval system which automatically assigns a control number and tracks the file created;

> c) an acknowledgement letter is contemporaneously mailed to the requester, advising of the control number, processing fee arrangement, processing options, and contact information, and addressing any collateral requests made by requester;

---

[1]  DHS requirements for submitting a FOIA request for an individual's records include the following:

1.  All FOIA requests must be submitted in writing and signed by the requester. 6 C.F.R. § 5.3(a).

2.  If the requester seeks records about him/herself the requester must verify identity by submitting, in writing, a statement containing his/her full name, current address, date of birth and place of birth.  This statement must be signed and the signature must either be notarized or submitted under 28 U.S.C. § 1746 (penalty of perjury in lieu of notarized signature).  This signature must be submitted along with the FOIA request.  6 C.F.R. §§ 5.3(a), 5.21(d).

3.  The FOIA request must describe the records that are being sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort. 6 C.F.R. § 5.3(b).

2

d) during any abeyance in processing, periodic system inquiries are conducted to maintain updated information concerning the disposition of agency records that are subject to the pending FOIA request;

e) if relevant records are in the possession of an office or agency other than the responding office, a request for the production of the records is sent to the records' custodian(s) for that office or agency;

f) during the course of processing, the FOIA request and any responsive records are subjected to rigorous analyses to arrive at the proper final agency determination; and finally;

g) the NRC sends its response to the requester, granting or denying, in whole or in part, access to requested records, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.

6.  In recent years, USCIS has experienced a significant increase in the amount of FOIA requests received and processed by the agency. USCIS is only one of ninety-nine federal agencies subject to the FOIA, but it receives more than one-fifth of the total requests received. For example, during FY 2018, USCIS received 191,804 total requests, which represents nearly half of the total requests received by DHS and over 21 percent of the total requests received government-wide in FY 2018. See http://www.foia.gov.

7.  Given the significant number of FOIA requests received by USCIS and in an effort to process FOIA requests in a manner designed to be fair and expeditious, USCIS has adopted a policy of processing such requests on a first-in/first-out basis. This process is further enhanced by the implementation of a regulation providing for expedited processing of requests under given circumstances, and the adoption of a multi-track system of processing which not only allows the agency to process requests on a first-in/first-out basis within each track, but also permits the USCIS to respond to relatively simple requests more quickly than requests involving complex and/or voluminous records. USCIS's first-in/first-out and multi-track processing is consistent with the requirements set forth in Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976) and Exner v. FBI, 612 F.2d 1202, 1980 U.S. App. LEXIS 20856, February 4, 1980.

**PLAINTIFF JACQUELINE STEVENS USCIS FOIA REQUESTS**

8.  USCIS received two separate FOIA requests from Jacqueline Stevens (Plaintiff), one dated May 18, 2018, the second dated May 22, 2018. For expediency, the NRC combined the two requests into one case and assigned one control number to the combined requests – COW2018000623. USCIS mailed an acknowledgment letter to Plaintiff on May 29, 2018, acknowledging receipt of the requests. See COW2018000623 Acknowledgment Letter, attached hereto as Attachment A.

9. Plaintiff's request number COW2018000623 sought the following records:

> (1) All information in any form from Northwestern University, Evanston, IL used for registering, reviewing, and renewing E-Verify for employees at Northwestern University between January 1, 2008 and the present with the exception of individual-level data entered in the system. This includes but is not limited to email, submission forms, and data submitted online.

> (2) All email between Northwestern employees or agents of Northwestern pertaining to E-Verify, including all attachments, linked documents, and referenced documents between January 1, 2008 and the present. This includes email related to specific personnel, with the understanding that names and other identifying information will be redacted.

> (3) Copies of all contracts (and associated attachments, including for the Scope of Work), and evaluations of work performed for contractors creating, licensing, maintaining, supporting, or assessing software and databases used by USCIS and third parties for verification eligibility of employment though E-Verify between January 1, 2005 to present.

> (4) Copies of USCIS evaluations on which contracting officers rely for purposes of renewing contracts between January 1, 2005 to present. Plaintiff indicated that she understood that E-Verify may also be associated with other software and databases in USCIS and was requesting the contracts that would be associated with such packages or broader systems of records.

> See COW2018000623 Acknowledgment Letter, Attachment A.

10. On August 9, 2018, USCIS received another FOIA request from Plaintiff, this one seeking information relating to General Dynamics contract number HSSCCG07J00120 and General Dynamics contract number HSHQDC06D00024. The request for records pertaining to contract number HSHQDC06D00024 was forwarded to Customs and Border Protection (CBP), as it is a CBP contract. Contract number HSSCCG07J00120 is a USCIS contract. Plaintiff specifically requested initial scope of work, attachments, renewals, and email associated with the USCIS contract to General Dynamics with award identification number HSSCCG07J00120. USCIS mailed an acknowledgment letter to Plaintiff on August 16, 2018, acknowledging receipt of her request. See CNT2018000017 Acknowledgment Letter, attached hereto as Attachment B.

11. USCIS/NRC FOIA staff were immediately assigned to process Plaintiff's FOIA requests. Due to the complex nature of Plaintiff's requests, it was determined that no one central agency file contained all potentially responsive records and NRC FOIA staff would need to enlist the assistance of various program offices and agency personnel across USCIS in order to conduct a reasonable and appropriate search for responsive records. NRC FOIA staff do not have direct access to all USCIS agency databases and other records systems, so complex and multi-faceted requests like Plaintiff's require NRC FOIA staff to rely on

4

other agency program offices and personnel to conduct a search of their records systems for potentially responsive records and to forward the results to NRC FOIA staff who then reviewed the records to determine responsiveness, processed the records pursuant to FOIA, its implementing regulation and established agency FOIA procedures, and finally, produced the processed records to Plaintiff.

   A.  COW2018000623 Records Search

12. After reviewing Plaintiff's request number COW2018000623, which sought a variety of E-Verify program related records (see Attachment A), NRC FOIA staff, who are familiar with the operations of program offices across USCIS, determined that the program office within USCIS most reasonably likely to have custody and control of responsive records would be the USCIS Verification Division, which is responsible for the operation of USCIS's E-Verify program.[2] NRC FOIA staff then forwarded a copy of Plaintiff's FOIA request to staff at the USCIS Verification Division who are designated to receive and respond to FOIA requests forwarded to the division by the NRC. NRC staff directed that Verification Division staff should conduct a thorough search that is reasonably calculated to locate responsive records physically in, and within the functional purview of their office and to forward a copy of all responsive records to NRC FOIA staff in their entirety.

13. A senior level Operations Research Analyst (GS-14) staff member with the USCIS Verification Division was assigned to conduct a search for responsive records, utilizing search terms and commonly used Verification Division computerized database search fields that were derived from the criteria specified in Plaintiff's request. Such terms and database fields searched included "Northwestern University," "E-verify," "Case FY," "Hire Date," "Initiated Date," "Citizenship," "Document Provided," "Eligibility Determination Summary," "Citizenship Type," "Employer Name," "Type," "Address," "WF Size," "MOU and Termination Date," "Agent Name," "Hiring Sites," and "User Count." Relevant contact names of Northwestern University officials were located during a search of the University's E-Verify employer account maintained by the Verification Division. Verification Division staff located and reviewed Northwestern University's Memorandum of Understanding (MOU), which was entered into between Northwestern University and DHS which allowed the University to participate in the E-Verify program. The MOU was released as part of the records production in this case. Names and contact information of Northwestern University officials identified in the MOU and in the University's E-Verify employer's account were used as search terms in order to search for emails and other communications from the University to officials in the Verification Division. No email records between Northwestern University staff and the Verification

---

[2] E-Verify is a web-based system operated by USCIS that allows enrolled employers to confirm the eligibility of their employees to work in the United States. E-Verify employers verify the identity and employment eligibility of newly hired employees by electronically matching information provided by employees on the Form I-9, Employment Eligibility Verification, against records available to the Social Security Administration (SSA) and DHS. See https://www.e-verify.gov/, accessed July 15, 2020.

Division were located but three in-bound phone call "Action logs" (summarized phone logs) were found that pertained to calls between staff at the Verification Division and some of the identified University Officials. Those phone logs had been summarized and, in some cases, transcribed; those records were released as well. Databases searched included Verification Division Outlook email records and Verification databases known as AVANT, CRM, SAS, and WebHQ. The senior level Verification staff that conducted the records search forwarded the records he located to the NRC for review and processing. The records search was reasonably calculated to locate records responsive to Plaintiff's FOIA requests, all files likely to contain responsive material were searched, and USCIS has no reason to believe that additional responsive records exist that are within USCIS custody and control.

14. Upon receipt of the results of the Verification Division's records search, NRC staff uploaded the records to its FOIA Information Processing System (FIPS) and commenced to review the records to determine responsiveness and process the responsive records. Based on its review of the located records, NRC personnel determined that the search was reasonably calculated to locate any responsive documents subject to the FOIA that are in USCIS's control. On October 5, 2018, USCIS produced to Plaintiff 51 pages of documents and five Excel spreadsheets that were determined to be responsive to Plaintiff's request. All records were released in full; no FOIA exemptions were applied and no information was redacted. See USCIS Final Action Letter, dated October 5, 2018, attached hereto as Attachment C.

      B. <u>CNT2018000017 Records Search</u>

15. After reviewing Plaintiff's request number CNT2018000017, which sought initial scope of work, attachments, renewals, and email associated with the USCIS contract to General Dynamics with award identification number HSSCCG07J00120 (<u>see</u> Attachment B), NRC FOIA staff, who are familiar with the operations of program offices across USCIS, determined that the program office within USCIS most reasonably likely to have custody and control of responsive records would be the USCIS Office of Contracting.[3] NRC FOIA staff then forwarded a copy of Plaintiff's FOIA request to staff at the USCIS Office of Contracting who are designated to receive and respond to FOIA requests forwarded to their office by the NRC. NRC staff directed that Office of Contracting staff should conduct a thorough search that is reasonably calculated to locate responsive records physically in, and within the functional purview of their office and to forward a copy of all responsive records to NRC FOIA staff in their entirety.

---

[3] The USCIS Office of Contracting is the sole contracting office to procure goods and services to meet the mission of USCIS. USCIS buys these goods and services across the broad spectrum of industry (large and small) in accordance with the Federal Acquisition Regulations (FAR) and DHS regulations. The USCIS Office of Contracting fulfills these needs by using a variety of acquisition sources such as DHS department-wide strategic sourcing contract vehicles, General Services Administration (GSA) Federal Supply Schedules (FSS), Government-wide Acquisition Contracts (GWACs), and other sources, including open market. See https://www.uscis.gov/about-us/uscis-contracting, accessed July 16, 2020.

16. A Senior Procurement Analyst (GS-14) with the USCIS Office of Contracting was assigned to conduct a search for records responsive to Plaintiff's FOIA request seeking access to records about USCIS contract number HSSCCG07J00120. The Procurement Analyst conducted a computerized records search of internal Office of Contracting digitized records stored on the office's computer "J: drive," utilizing the contract number specified by Plaintiff -- HSSCCG07J00120 -- which, based on his experience as a Senior Analyst with the Office of Contracting, he knew would be the search method and records source most reasonably likely to locate records pertaining to USCIS contracts administered by the Office of Contracting. As a result of this search, the Senior Analyst located electronic records pertaining to contract number HSSCCG07J00120. The Senior Analyst then located the scope of work, amendments of solicitation, modification of contract and all supporting documentation that was in the USCIS Office of Contracting's computerized files that pertained to contract number HSSCCG07J00120. No responsive email records were located. The Office of Contracting then forwarded the records to FOIA personnel at the USCIS/NRC for review. The records search was reasonably calculated to locate records responsive to Plaintiff's FOIA requests, all files likely to contain responsive material were searched, and USCIS has no reason to believe that additional responsive records exist that are within USCIS custody and control.

17. Upon receipt of the results of the Office of Contracting's records search, NRC staff uploaded the records to its FOIA Information Processing System (FIPS) and commenced to review the records to determine responsiveness and process the responsive records. Based on its review of the located records, NRC personnel determined that the search was reasonably calculated to locate any responsive documents subject to the FOIA that are in USCIS's control. Pursuant to the DHS FOIA regulation, 6 C.F.R. § 5.7(4)(e), USCIS provided General Dynamics, the submitter who provided USCIS confidential commercial information when bidding on and entering contract HSSCCG07J00120, an opportunity to review and object to the proposed records production. Upon receipt of General Dynamic's review and objections, and after consideration of same, then on October 18, 2018, USCIS produced to Plaintiff 353 pages of responsive records. 137 pages were released in full; 216 pages were released in part. No records were withheld in their entirety. NRC FOIA personnel segregated and released all reasonably segregable, non-exempt information from the records. USCIS informed Plaintiff that "[w]e have reviewed and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(3), (b)(4) and (b)(6) of the FOIA."  See USCIS Final Action Letter, dated October 18, 2018, attached hereto as Attachment D.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Overland Park, Kansas, on this 22nd day of July 2020.

_Jill A. Eggleston_
_____
JILL A. EGGLESTON
Associate Center Director
Freedom of Information Act & Privacy Act Unit
USCIS National Records Center

8



U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010

**U.S. Citizenship
and Immigration
Services**

May 29, 2018

**COW2018000623**

Jacqueline Stevens
601 University Pl
Northwestern University
Political Science Department
Evanston, IL  60611

Dear Jacqueline Stevens:

We received your request for information on May 23, 2018.  We have combined two separate requests, one dated May 18, 2018 and another dated May 22, 2018, from you into one request.  You specifically requested the following:

1) All information in any form from Northwestern University, Evanston, IL used for registering, reviewing, and renewing E-Verify for employees at Northwestern University between January 1, 2008 and the present with the exception of individual-level data entered in the system.  This includes but is not limited to email, submission forms, and data submitted online.

2) All email between Northwestern employees or agents of Northwestern pertaining to E-Verify, including all attachments, linked documents, and referenced documents between January 1, 2008 and the present. This includes email related to specific personnel, with the understanding that names and other identifying information will be redacted.

3) Copies of all contracts (and associated attachments, including for the Scope of Work), and evaluations of work performed for contractors creating, licensing, maintaining, supporting, or assessing software and databases used by USCIS and third parties for verification eligibility of employment though E-Verify between January 1, 2005 to present.

4) Copies of USCIS evaluations on which contracting officers rely for purposes of renewing contracts between January 1, 2005 to present.  You understand that E-Verify may also be associated with other software and databases in USCIS and are requesting the contracts that would be associated with such packages or broader Systems of records.

Your request is being handled under the provisions of the Freedom of Information Act (5 U.S.C. § 552). It has been assigned the following control number: COW2018000623.  Please cite this number in all future correspondence about your request.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.4(a)), USCIS uses a "cut-off" date to delineate the scope of a FOIA request by treating records created after that date as not responsive to that request. Therefore, in determining which records are responsive to your request, we will only include records in the possession of this agency as of May 23, 2018, the date we began the search for records.

Attachment A

COW2018000623
Page 2

We respond to requests on a first-in, first-out basis and on a multi-track system. Your request has been placed in the complex track (Track 2).

Consistent with 6 C.F.R. § 5.5(a) of the Department of Homeland Security (DHS) FOIA regulations, USCIS processes FOIA requests according to their order of receipt. Although USCIS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances. Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request. Additionally, due to the scope and nature of your request, USCIS will need to locate, compile, and review responsive records from multiple offices, both at headquarters and in the field. USCIS may also need to consult with another agency or other component of the Department of Homeland Security that have a substantial interest in the responsive information. Due to these unusual circumstances, USCIS will invoke a 10-day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B). Please contact our office if you would like to limit the scope of your request or to agree on a different timetable for the processing of your request. We will make every effort to comply with your request in a timely manner.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.3(c)), your request is deemed to constitute an agreement to pay any fees that may be chargeable up to $25.00. Fees may be charged for searching for records sought at the respective clerical, professional, and/or managerial rates of $4.00/$7.00/$10.25 per quarter hour, and for duplication of copies at the rate of $.10 per copy. The first 100 copies and two hours of search time are not charged, and the remaining combined charges for search and duplication must exceed $14.00 before we will charge you any fees. Most requests do not require any fees; however, if fees in excess of $25.00 are required, we will notify you beforehand.

This office will be providing your records on a Compact Disc (CD) for use on your personal computer. The CD is readable on all computers through the use of Adobe Acrobat software. A version of Adobe Acrobat will be included on the CD. Your records can be viewed on your computer screen and can be printed onto paper. Only records 15 pages or more are eligible for CD printing. To request your responsive records on paper, please include your control number and write to the above address Attention: FOIA/PA Officer, or fax them to (816) 350-5785.

The National Records Center (NRC) has the responsibility to ensure that personally identifiable information (PII) pertaining to U.S. Citizenship and Immigration Services (USCIS) clients is protected. In our efforts to safeguard this information, we may request that additional information be provided to facilitate and correctly identify records responsive to your request. Though submission of this information is voluntary, without this information, your request may be delayed while additional steps are taken to ensure the correct responsive records are located and processed. Further, if we are unable to positively identify the subject of the record we may be unable to provide records responsive to your FOIA request.

You may check the status of your FOIA request online, at www.uscis.gov/FOIA. Click the "Check Status of Request" button in the middle of the web page or "FOIA Request Status Check & Average Processing Times" on the left side under "Freedom of Information and Privacy Act (FOIA)." Then click "FOIA Check Status of Request" at the bottom of the page and follow the instructions given. We will make every effort to comply with your request in a timely manner. In the interim if you have questions about the status of your request, you may contact Karl Bloom by e-mail at Karl.D.Bloom@uscis.dhs.gov.

Attachment A

COW2018000623
Page 3

All FOIA/PA related requests, including address changes, must be submitted in writing and be signed by the requester.  Please include the Control Number listed above on all correspondence with this office.  Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, emailed to USCIS.FOIA@uscis.dhs.gov, or sent by fax to (816) 350-5785.  You may also submit FOIA/PA related questions to our email address at FOIAPAQuestions@uscis.dhs.gov.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

Attachment A

U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010



**U.S. Citizenship
and Immigration
Services**

August 16, 2018                                    **CNT2018000017**

Jacqueline Stevens
601 University Place
Political Science Department
Evanston, IL  60208

Dear Jacqueline Stevens:

Don't waste time waiting for the US Postal Service to deliver the information you requested. Go online, create an account, and receive the information electronically! Read the attached yellow flyer for more details.

We received your request for information relating to General Dynamics contract number HSSCCG07J00120 on August 09, 2018.  Your request also included a request for HSHQDC06D00024, which is a CBP contract.  We will forward that request to CBP and write you a separate letter explaining.

Your request is being handled under the provisions of the Freedom of Information Act (5 U.S.C. § 552). It has been assigned the following control number: CNT2018000017.  Please cite this number in all future correspondence about your request.

We respond to requests on a first-in, first-out basis and on a multi-track system.  Your request has been placed in the simple track (Track 1).  You specifically requested initial Scope of Work, attachments, renewals, and email associated with the contract to General Dynamics with Award ID HSSCCG07J00120.

Because of the nature of the request and because of your demonstrated ability to disseminate information to the public, USCIS will waive fees.

Consistent with 6 C.F.R. § 5.5(a) of the Department of Homeland Security (DHS) FOIA regulations, USCIS processes FOIA requests according to their order of receipt.  Although USCIS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances.  Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Additionally, due to the scope and nature of your request, USCIS will need to locate, compile, and review responsive records from multiple offices, both at headquarters and in the field.  USCIS may also need to consult with another agency or other component of the Department of Homeland Security that have a substantial interest in the responsive information.  Due to these unusual circumstances, USCIS will invoke a 10-day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B). Please contact our office if you would like to limit the scope of your request or to agree on a different timetable for the processing of your request.  We will make every effort to comply with your request in a timely manner.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.4(a)), USCIS uses a "cut-off" date to delineate the scope of a FOIA request by treating records created after that date as not responsive to that request. Therefore, in determining which records are responsive to your request, we

CNT2018000017
Page 2

will only include records in the possession of this agency as of August 16, 2018, the date we began the search for records.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.3(c)), your request is deemed to constitute an agreement to pay any fees that may be chargeable up to $25.00. Fees may be charged for searching for records sought at the respective clerical, professional, and/or managerial rates of $4.00/$7.00/$10.25 per quarter hour, and for duplication of copies at the rate of $.10 per copy. The first 100 copies and two hours of search time are not charged, and the remaining combined charges for search and duplication must exceed $14.00 before we will charge you any fees. Most requests do not require any fees; however, if fees in excess of $25.00 are required, we will notify you beforehand.

This office now offers an online delivery option. If you would like to receive the requested records online, you will need to register this request at https://first.uscis.gov. If you do not already have a MyUSCIS account you will be prompted to create one. Once logged on, click the "Register Request" link where you will be asked to enter your control number CNT2018000017 and the following six digit PIN: 259429. If you do not wish to take advantage of this option, we will be providing your records on a Compact Disc (CD) for use on your personal computer. To request your responsive records on paper, please include your control number and write to the above address Attention: FOIA/PA Officer, or fax them to (816) 350-5785.

You may check the status of your FOIA request online, at www.uscis.gov/FOIA. Click the "Check Status of Request" button in the middle of the web page or "FOIA Request Status Check & Average Processing Times" on the left side under "Freedom of Information and Privacy Act (FOIA)." Then click "FOIA Check Status of Request" at the bottom of the page and follow the instructions given. If you have any questions concerning your pending FOIA/PA request, or to check the status of a pending application or petition, please call The National Customer Service Center at 1-800-375-5283. Please be aware that the National Records Center no longer accepts FOIA/PA related questions directly by phone.

All FOIA/PA related requests, including address changes, must be submitted in writing and be signed by the requester. Please include the Control Number listed above on all correspondence with this office. Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, emailed to USCIS.FOIA@uscis.dhs.gov, or sent by fax to (816) 350-5785. You may also submit FOIA/PA related questions to our email address at FOIAPAQuestions@uscis.dhs.gov.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

Attachment B

U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010



**U.S. Citizenship
and Immigration
Services**

October 5, 2018

**COW2018000623**

Jacqueline Stevens
601 University Pl
Northwestern University
Political Science Department
Evanston, IL  60611

Dear Jacqueline Stevens:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office May 18, 2018 regarding Northwestern University's use of the E-Verify program.  You specifically requested the following:

    1)  All information in any form from Northwestern University, Evanston, IL used for registering, reviewing, and renewing E-Verify for employees at Northwestern University between January 1, 2008 and the present with the exception of individual-level data entered in the system.  This includes but is not limited to email, submission forms, and data submitted online.

    2)  All email between Northwestern employees or agents of Northwestern pertaining to E-Verify, including all attachments, linked documents, and referenced documents.  This includes email related to specific personnel, with the understanding that names and other identifying information will be redacted.

On May 22, 2018 you requested the following additional information:

1.  Copies of all contracts (and associated attachments, including for the Scope of Work), and evaluations of work performed for contractors creating, licensing, maintaining, supporting, or assessing software and databases used by USCIS and third parties for verification eligibility of employment though E-Verify.

2.  Copies of USCIS evaluations on which contracting officers rely for purposes of renewing contracts.  You understand that E-Verify may also be associated with other software and databases in USCIS and are requesting the contracts that would be associated with such packages or broader Systems of records.

We have completed our search for records that are responsive to your request.  The record consists of 51 pages of material and Five Excel spreadsheets, and we have determined to release them in full.  The enclosed record consists of the best reproducible copies available.

Attachment C

COW2018000623
Page 2

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.4(a)), USCIS uses a "cut-off" date to delineate the scope of a FOIA request by treating records created after that date as not responsive to that request. Therefore, in determining which records are responsive to your request, we included only records in the possession of this agency as of May 23, 2018, the date we began the search for records.

Documents responsive to your request may contain discretionary releases of exempt information. If made, these releases are specifically identified in the responsive record. These discretionary releases do not waive our ability to invoke applicable FOIA exemptions for similar or related information in the future.

The National Records Center does not process petitions, applications or any other type of benefit under the Immigration and Nationality Act. If you have questions or wish to submit documentation relating to a matter pending with the bureau, you must address these issues with your nearest District Office.

All FOIA/PA related requests, including address changes, must be submitted in writing and be signed by the requester. Please include the Control Number listed above on all correspondence with this office. Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, emailed to USCIS.FOIA@uscis.dhs.gov, or sent by fax to (816) 350-5785. You may also submit FOIA/PA related questions to our email address at FOIAPAQuestions@uscis.dhs.gov.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

Enclosure(s)

Attachment C

U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010



**U.S. Citizenship
and Immigration
Services**

October 18, 2018

**CNT2018000017**

Jacqueline Stevens
601 University Place
Political Science Department
Evanston, IL  60208

Dear Jacqueline Stevens:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request received in this office August 09, 2018 regarding General Dynamics contract number HSSCCG07J00120.

We have completed the review of all documents and have identified 353 pages that are responsive to your request.  Enclosed are 137 pages released in their entirety and 216 pages released in part.   We have reviewed and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(3), (b)(4) and (b)(6) of the FOIA.

Exemption (b)(3) provides protection for information specifically exempted from disclosure by statute, provided that such statute establishes particular criteria for withholding or refers to particular types of matter to be withheld.  The statute allows us to withhold this information pursuant to 26 U.S.C. 6103 of the Internal Revenue Code.

Exemption (b)(4) protects trade secrets and commercial or financial information that is privileged or confidential.  The types of documents and/or information we have withheld may consist of unit pricing, business sales statistics; research data; technical designs; customer and supplier lists; profit and loss data; overhead and operating costs; and information on financial condition.

Exemption (b)(6) permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.  The types of documents and/or information we have withheld may consist of birth certificates, naturalization certificates, drivers' licenses, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.

As a result of discussion between agency personnel and a member of our staff, as a matter of administrative discretion, we are releasing computer codes found on system screen prints previously withheld under exemption b(2). There may be additional documents that contain discretionary releases of exempt information.  We will identify discretionary releases within the record.  These discretionary releases do not waive our ability to invoke applicable FOIA exemptions for similar or related information in the future.

Attachment D

CNT2018000017
Page 2

The enclosed record consists of the best reproducible copies available. Certain pages may contain marks that appear to be blacked-out information. Such black marks would have been present prior to our receipt of the file and are not information we have withheld under the provisions of the FOIA or PA.

You have the right to file an administrative appeal within 90 days of the date of this letter. By filing an appeal, you preserve your rights under FOIA and give the agency a chance to review and reconsider your request and the agency's decision. You may file an administrative FOIA appeal to USCIS at: USCIS FOIA/PA Appeals Office, 150 Space Center Loop, Suite 500, Lee's Summit, MO 64064-2139. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

If you would like to discuss our response before filing an appeal to attempt to resolve your dispute without going through the appeals process, you may contact our FOIA Public Liaison, Jill Eggleston, for assistance at:

U.S. Citizenship and Immigration Services
National Records Center, FOIA/PA Office
P. O. Box 648010
Lee's Summit, MO 64064-8010

Telephone:  1-800-375-5283
E-Mail:  FOIAPAQuestions@uscis.dhs.gov

If you are unable to resolve your FOIA dispute through our FOIA Public Liaison, the Office of Government Information Services (OGIS), the Federal FOIA Ombudsman's office, offers mediation services to help resolve disputes between FOIA requesters and Federal Agencies. The OGIS does not have the authority to handle requests made under the Privacy Act of 1974. The contact information for OGIS is:

Office of Government Information Services
National Archives and Records Administration
8601 Adelphi Road – OGIS
College Park, MD  20740-6001

Telephone:  202-741-5770
877-684-6448
Email:  OGIS@NARA.GOV
Website:  OGIS.ARCHIVES.GOV

The National Records Center does not process petitions, applications or any other type of benefit under the Immigration and Nationality Act. If you have questions or wish to submit documentation relating to a matter pending with the bureau, you must address these issues with your nearest District Office.

Attachment D

CNT2018000017
Page 3

All FOIA/PA related requests, including address changes, must be submitted in writing and be signed by the requester. Please include the control number listed above on all correspondence with this office. Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, emailed to USCIS.FOIA@uscis.dhs.gov, or sent by fax to (816) 350-5785. You may also submit FOIA/PA related questions to our email address at FOIAPAQuestions@uscis.dhs.gov.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

Enclosure(s)

Attachment D

# Exhibit D

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

———————————————————— )
                                                    )
JAQUELINE STEVENS                                   )
                                                    )
                                                    )
                        Plaintiff,                  )
                                                    )
            v.                                      )        No. 18 C 5391
                                                    )        Judge Rowland
BROADCASTING BOARD OF                               )
GOVERNORS, et al.,                                  )
                                                    )
                        Defendants.                 )
———————————————————— )

## DECLARATION OF S. LITSA MARINOS

I, S. Litsa (Litsa) Marinos, declare as follows:

        1.      I am Government Information Specialist in the United States Geological Survey

(USGS) at the United States Department of the Interior (Department). I have held this position

since 2015. In my capacity as a Government Information Specialist, I am familiar with USGS

and the Department's obligations under FOIA, including application of the various exemptions

thereunder. All information herein is based upon my personal knowledge, and/or experience

and/or my personal review of Plaintiff's FOIA request and relevant documents, and/or upon

information furnished to me in my official capacity. I participated in processing the FOIA

request that is at issue in this lawsuit, labeled as USGS-2018-00160.

        2.      I submit this declaration in support of USGS' representation that it conducted an

adequate search for potentially responsive records.

        3.      Plaintiff Jaqueline Stevens submitted a FOIA request to USGS on May 22, 2018

seeking (1) all contracts, MOUs, email, and attachments to email or contracts, and all other

materials related to the contract between Northwestern University and the USGS associated with the Award ID: 140G0118P0244; (2) the Scope of Work and similar documents defining the service expected by the USGS, and all attachments, including from similar contracts from earlier time frames; and (3) all USGS materials associated with the evaluation and extensions of the contract. The request included a web link to the Federal Procurement Data System (FPDS). The FPDS is a government database that contains public contract award data.

4.     An acknowledgment was sent to the requester on May 24, 2018, which provided the tracking number USGS-2018-00160. The acknowledgement advised that the request required USGS to search for or collect records from a field facility or establishment separate from the office processing the request. The acknowledgement further advised the requester that her request had been placed in the complex processing track and provided an estimated response date.

5.     The USGS FOIA Office determined the USGS Office of Acquisitions and Grants (OAG) was the appropriate office to send a search request for records potentially responsive to the FOIA request. Contracting Officers within OAG approve contracts between USGS and any external party. It is standard operating procedure for the USGS FOIA Office to send to OAG any FOIA requests for USGS contract information.

6.     On May 24, 2018, the initial search request was sent to Amit Rupani, an Administration Operation Support Specialist within the USGS OAG.  The search request included a copy of the original FOIA request, and instructed staff to search their paper records, local computer drives, network drives, intranet, and emails to determine whether they had records responsive to the request.

7.     Mr. Rupani forwarded the initial search request to Karen Phillips, a Supervisory

Contract Specialist within OAG.

8.     Ms. Phillips determined that Michael Lepe was the custodian who would have responsive records. Ms. Phillips is Mr. Lepe's supervisor.

9.     Mr. Lepe is a Contract Specialist within the OAG National Acquisition Branch, located in Reston, VA. At the time USGS received Ms. Stevens' FOIA request, Mr. Lepe was the Contract Specialist who had most recently handled a contract between USGS and Northwestern University and would have records potentially responsive to Ms. Stevens' request.

10.     Mr. Rupani forwarded the FOIA request and search request to Mr. Lepe. This was the first FOIA search request he had ever received or been asked to process during his employment with USGS.

11.     Mr. Lepe initially understood Ms. Stevens' request to concern only records related to the most recent contract for Award ID: 140G0118P0244.

12.     OAG maintains two filing systems for storing documentation for contracts awarded by USGS. Older records are maintained in paper format, and more recent records are maintained in an electronic filing system. The electronic filing system is a shared computer network drive with folders labeled and organized by contract number. Electronic folders for each contract contain the contract, as well as all documentation and correspondence related to that specific contract.

13.     Mr. Lepe determined the date of the most recent contract for Award ID: 140G0118P0244 indicated that any records would be stored in OAG's electronic filing system.

14.     Mr. Lepe searched the electronic filing system for the folder corresponding to Award ID: 140G0118P0244. He determined that there would not be any records outside of the

3

electronic filing system.

15.     Mr. Lepe submitted the responsive records to the USGS FOIA Office along with his responses to the FOIA Program Checklist. Mr. Lepe's responses indicated to the USGS FOIA Office that OAG likely had records responsive to this request, and that Mr. Lepe was not aware of any other USGS office, DOI bureau, or outside agency that may have responsive records.

16.     On July 17, 2018, USGS sent a final response of non-exempt, responsive material was produced to the requester via email. The final response consisted of 33 pages of non-exempt responsive records.

17.     The requester confirmed receipt of the production by email on July 17, 2018. Plaintiff sent an additional response on July 17, 2018, stating that the response did not appear to include USGS documents "associated with" previous contracts and evaluations of contractor performance.

18.     On July 17, 2018, I forwarded the requester's email to Michael Lepe to confirm whether there might be additional potentially responsive records. Mr. Lepe responded to me on July 18, 2018 stating he would search old files to see if there were additional records potentially responsive to Plaintiff's request, and as described in her July 17, 2018 email. Mr. Lepe later advised that he located a contract from 2017 but required specific contract numbers in order to search for other similar records. He advised also that an evaluation of contractor performance did not exist.

19.     After discovering that Mr. Lepe mistakenly misunderstood the scope of Ms. Stevens' request and that additional potentially responsive records existed, Brian May, the USGS FOIA Officer determined that the "final" response sent to the requester on July 17, 2018 was an

interim, rather than final, response.

20.     On July 20, 2018, I spoke to the requester and informed her that OAG needed to

her to identify specific contract numbers in order for OAG to search its files. Ms. Stevens

contested this assertion and told me that OAG could identify the relevant contracts by

referencing the FPDS database website. I sent the FPDS website link to Mr. Lepe and asked him

to identify the specific contracts that needed to be searched.

21.     Later that day, Mr. Lepe reiterated to me that he needed to know which specific

contracts he should search for. The FPDS website contains data for *all* USGS contracts, and he

could not reasonably examine each individual entry to determine whether the contract might be

responsive to the FOIA request.

22.     Mr. May determined there was ongoing confusion and potential

miscommunication between the requester, the USGS FOIA Office, and OAG about how to

locate additional responsive records.

23.     Mr. May personally conducted a search within FPDS to generate a list of all

previous contracts between USGS and Northwestern University.

24.     On July 24, 2018, Mr. May e-mailed the requester to apologize for the way the

USGS FOIA Office processed the request by not verifying that it received records that responded

to each part of the request. His e-mail confirmed that the USGS FOIA Office was "working with

the Office of Acquisition and Grants (OAG) to search for and locate any additional records that

respond to the second part of [Plaintiff's] request." Mr. May provided the list of twenty-one

contracts (generated from FPDS) between USGS and Northwestern University, and asked the

requester to identify the specific contracts she was interested in. He stated that identifying the

specific contracts of interest would "speed up the remaining processing" of the request. Mr. May

also advised Ms. Stevens that, due to the records retention and disposition timeline, it was unlikely that the USGS OAG would have records dated prior to 2011. He advised, "If OAG closely followed their Records Disposition Schedule for their contracts, we may only have [seven listed] contracts in our possession.…I understand that we should have requested this clarification sooner and provided you with a comprehensive communication about the scope of your request sooner….We will do our best to answer this request as quickly as we can and to provide you with quality customer service." Mr. May forwarded this communication to Mr. Lepe and asked him to search for and provide copies of the seven[1] listed contracts to determine whether or not the contract responds to Ms. Stevens' request. Mr. May's e-mail to Mr. Lepe also inquired whether OAG had "any of the old (1976-2011) contracts listed below," and if so, to provide them to the USGS FOIA Office.

25.     Ms. Stevens responded to Mr. May on July 24, 2018 inquiring whether any additional responsive records would include the email and evaluations by USGS of the work associated with these contracts. Mr. May responded to Ms. Stevens and ensured that the final response would include USGS review of any evaluation in its possession. He stated further, "I'll personally ensure that our final response will be comprehensive and cover every item of your request."

26.     On the same day, July 24, 2018, Mr. Lepe informed the USGS FOIA Office that he would search for the contracts that Ms. Stevens identified. Mr. May contacted Mr. Lepe

[1] The seven contracts likely to still be in existence were:
ING07PX95046, May 13, 2011
ING11PX00760, April 29, 2011
ING11PX00760, May 29, 2012
ING13PX00887, June 11, 2013
ING13PX00887, April 28, 2014
ING15PX00725, May 5, 2015
ING17PX00698, May 22, 2017

6

asking him to ensure that he provides all of the outstanding records that respond to the original request, including "1. Scope of Work and similar documents defining the service expected by the USGS, and all attachments, including from similar contracts from earlier time frames 2. all USGS materials associated with the evaluation and extensions of the contract(s)."

27.     Ms. Stevens contacted Mr. May on July 25, 2018, this time inquiring whether USGS was searching for additional correspondence between Northwestern University and USGS "associated with" implementation of the contracts. Mr. May immediately forwarded Ms. Stevens' inquiry to Mr. Lepe, explaining:

> I spoke with Ms. Stevens and she explained that in addition to copies of the contract documents, she requests **all** of the internal correspondence, emails, letters, memos, etc... This includes correspondence To and From the Contracting Officer's Representative(s) and To and From any member of the Office of Acquisition and Grants (OAG) about 140G0118P0244 and any of the other contracts that we may possess that are on the FPDS list that I provided to you yesterday.

28.     Mr. Lepe searched his electronic filing system by contract number for the seven contracts listed in Mr. May's July 24 e-mail. On July 30, 2018, Mr. Lepe informed the FOIA Office that he was able to locate additional potentially responsive records for six out of the seven contracts. The contract[2] he was unable to locate was actually a 2007 contract. Mr. Lepe provided the USGS FOIA office with .zip files containing records for each of the six contracts he was able to locate.

29.     On August 14, 2018, I emailed Mr. Lepe once again asking him to verify that he gave the FOIA Office all responsive records. One of the six contract[3] files Mr. Lepe provided to the USGS FOIA Office did not contain any internal correspondence. I asked Mr. Lepe to confirm whether he had any e-mails or internal correspondence for that contract. He stated that he did not

---

[2] ING07PX95046, May 13, 2011
[3] ING17PX00698, May 22, 2017

have any e-mail correspondence for the contract, and that he gave the USGS FOIA Office "everything [he] could find under that file…." Mr. Lepe indicated that another USGS OAG employee Carolyn Hieb might have additional records.

30.     In August of 2018 Carolyn Hieb was a Purchasing Agent[4] with OAG. Earlier in her employment she had worked on previous contracts between USGS and Northwestern University.  She was located in South Dakota and had access to OAG's older filing system located in her office.

31.     On August 14, 2018, I spoke to Carolyn Hieb about the FOIA request at issue and followed up with her by e-mail on the same day. I sent her the list of six contracts for which Mr. Lepe located responsive records and asked her to search for any additional responsive records that she may have. I reiterated to her that the FOIA office needed "...all of the internal correspondence, emails, letters, memos, etc... This includes correspondence To and From the Contracting Officer's Representative(s) and To and From any member of the Office of Acquisition and Grants (OAG) about 140G0118P0244 and any of the other contracts that we may possess…" for the six contracts. I also asked whether OAG had any technical evaluations for the six contracts.

32.     Ms. Hieb responded the same day providing additional potentially responsive records and stating she provided all records she could find. She explained there were no USGS technical evaluations or end-user technical reviews because, at the time the contracts were created, OAG did not find evaluations or reviews necessary based on the underlying contract terms. She also explained that she could not locate any additional correspondence for the six

---

[4] Carolyn Hieb retired between the date of my communications with her and the date of this declaration.

contracts.

33.     On August 24, 2018, I e-mailed Mr. Lepe to confirm whether he had conducted a searched for the older contracts (1976-2011) from the original FPDS list of 21 contracts. I sent an additional email on August 27, 2018 asking Mr. Lepe to speak with Ms. Hieb about the fourteen older contracts, and "find out affirmatively if those older contracts are still in existence and, if so, what format they are in. If found please review each Statement of Work to determine whether [the contracts are responsive]."

34.     Ms. Hieb conducted a search of her local filing system. On August 27, 2018, she informed Mr. Lepe that she did not locate any of the fourteen older contracts or related records because they were "all gone." Seven years had passed so any records that existed previously were disposed of under the records retention schedule.

35.     On August 28, 2018, I sent an e-mail to Ms. Stevens explaining that the USGS FOIA Office had additional responsive records for six of the twenty-one USGS-Northwestern University contracts listed in FPDS. I later provided her with OAG's explanation for why there were no technical evaluations for any of the contracts.

36.     On September 4, 2018, Carolyn Hieb confirmed that she had provided me with all potentially responsive records.

37.     On September 7, 2018, I sent Ms. Stevens the second interim response via e-mail, consisting of 266 pages records.

38.     On October 16, 2018, I sent Ms. Stevens the third interim response via e-mail. I sent Ms. Stevens a compact disc via U.S. Postal Service containing 353 pages of records.

39.     On October 19, 2018, I sent Ms. Stevens the fourth and final response via e-mail, consisting of seven pages of records.

40.     I concluded that there were no other locations reasonably likely to have responsive records.

41.     Nothing in the records suggested that there were any additional locations that were likely to have responsive records or any additional search terms that would be likely to locate additional responsive records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 22, 2020

STAVROULA
MARINOS

Digitally signed by
STAVROULA MARINOS
Date: 2020.07.22 14:55:15
-04'00'

S. Litsa Marinos
Government Information Specialist
United States Geological Survey

11

# Exhibit E

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | No. 1:18cv05391 |
| v. | ) | |
| | ) | Hon. Judge Rowland |
| BROADCASTING BOARD OF | ) | |
| GOVERNORS *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF CHRISTOPHER A. COLBOW

     I, Christopher A. Colbow, hereby declare pursuant to 28 U.S.C. § 1746 the following as my testimony in the above captioned case:

1. I am the Freedom of Information Act (FOIA) Officer, the FOIA Public Liaison, and the Division Chief of the Bureau for Management, Office of Management Services, Information and Records Division for the United States Agency for International Development ("USAID"). I am a second-line supervisor managing a staff of 5 direct-hires and 8 institutional contractors. I am also the Agency Records Officer, with overall responsibility for implementing and carrying out the agency's records management program. I assumed these official capacities in April 2019. I work with my staff on the adequacy of searches for information requested through FOIA and on the applicability of FOIA exemptions. I am familiar with the FOIA, its requirements for disclosure and its exemptions from disclosure, and am experienced in judging whether documents are responsive and should be produced in full, redacted or withheld in their entirety. I am also familiar with the Federal Records Act and its dispositioning of agency records authorities for USAID.

2. The purpose of this declaration is to establish certain facts underlying USAID's response to the Plaintiff's FOIA request.

**The Freedom of Information Act Request**

3. On October 18, 2015, Ms. Jacqueline Stevens, made the following request of USAID:

Copies of all contracts, reports, memoranda of understanding, grants, and email to, from, or about Northwestern University produced, received, or maintained by employees in your office. This includes but is not limited to records concerning the Northwestern campus in Education City, Doha, Qatar and surveys on media use commissioned by the State Department.

4. On October 21, 2015, the FOIA Team Lead for the Bureau for Management, Office of Management Services, Information and Records Division (also known as the USAID "FOIA Office") contacted the requester by phone to discuss the scope of the FOIA request. On October 21, 2015, Ms. Stevens, clarified the scope of her request by email, stating:

Please note that in requesting email and other materials about the Northwestern campus in Qatar, items that are under the control of USAID, and providing the @northwestern.edu address for a search, I was not limiting my request *only to correspondence between an @usaid.gov email and an @northwestern.edu email*, but just offering that as one search term. I am interested in ALL email about the Northwestern campus in Qatar in the control of any USAID employee, including correspondence between USAID employees and other government or private individuals, regardless of the email server used for this.

5. On October 23, 2015, the FOIA Team Lead emailed Ms. Stevens to further clarify the scope of the request:

Thank you for the prompt reply. In order to reasonably facilitate your search for specific email communications, we do require additional search terms. The terms provided by phone on October 21, 2015--specifically, email between "@usaid.gov" and "@northwestern.edu"--will most definitely provide communications concerning Northwestern University. However, you've indicated that you do not wish to limit the criteria to the one specified on October 21st.  Instead, you've indicated that you're interested in: "ALL email about the Northwestern campus in Qatar in the control of any USAID employee, including correspondence between USAID employees and other government or private individuals, regardless of the email server used for this".

Currently, your request covers a 15 year period and the search criteria initially provided is relatively broad; thus, this could potentially result in numerous non-responsive records that a FOIA Specialist will have to review and ultimately delay a final response to your FOIA request.

Therefore, at this time, to further assist with our search, please provide the following:

1- name(s), email address(es), email domain(s) of possible non-USAID senders and/or recipients. Please note that an email address is preferable and would produce more accurate results than the name alone would.

2

2- keywords (search terms and/or criteria)

6. On October 23, 2015, Ms. Stevens provided search parameters for USAID:

> To further clarify, per our conversation now, your office will be searching as follows for materials since January 1, 2000:
>
> 1) all email on USAID servers with "northwestern.edu" in any field of the address.
> 2) all materials using "northwestern university" in usaid.gov servers.
> 3) all materials referring to Northwestern University in the control of the missions in Israel, Kuwait, Qatar, Pakistan, and Saudi Arabia.
> 4) all contracts and grants, including extensions and the originals to which they refer and to which Northwestern University.

The FOIA Office initiated a search for records using these search parameters provided by Ms. Stevens while ultimately evaluating the responsiveness of the records based on the original FOIA request.

**<u>Litigation</u>**

7. On August 8, 2018, Ms. Stevens filed a FOIA lawsuit against USAID and 19 other federal agencies in the United States District Court Northern District of Illinois.

8. On August 30, 2018, USAID provided Ms. Stevens a final response to her FOIA request containing a signed final response letter outlining the Agency's search efforts, records located, and FOIA exemptions applied. The final response included 847 responsive pages, of which 693 were released in their entirety and 154 pages were partially released. An additional 80 pages were withheld in their entirety.

9. On September 13, 2018, Ms. Stevens responded with assertions that the search was insufficient, and records were withheld from public disclosure without justification.

10. On September 20, 2018, the USAID FOIA Office provided a supplemental response to Ms. Stevens releasing the 80 pages previously withheld in full, without any redactions. The supplemental response also responded to her other points of contention.

11. On October 1, 2018, Ms. Stevens sent the following e-mail to the AUSA:

> Dear Prashant,
>
> Thank you for this update. Please note that there are several additional components that would appear to have responsive documents. Based on the list you have provided today, USAID has failed to task these with my request. I am therefore calling into question the adequacy of the search.

3

Please note that one component clearly involved with the mini-MBA program is USAID's managing the mini-MBA program with Northwestern is the West Bank/Gaza office, which is omitted among those USAID lists. https://www.usaid.gov/sites/default/files/documents/1883/11052013-fact-sheet-minimba.pdf

The West Bank/Gaza Office is part of the Office of Middle East Affairs, which is within the Bureau for the Middle East. Not only are these offices omitted from the list of components tasked for a records search, but the Bureau for the Middle East contains several other offices likely to have responsive records.

I would appreciate it if USAID would contact them to obtain information responsive to my request. The components that should have been searched but USAID admits were not include at the very least:

Office of the Assistant Administrator
Office of Middle East Affairs
Office of Strategic Planning Operations
Office of Technical Support
Administrative Management Services

USAID's FOIA Office subsequently conducted follow-up searches of certain Bureaus and Offices. The details of all of the Agency's FOIA searches are contained below.

**USAID's Searches**

Bureau for Management, Office of Acquisition and Assistance, System Support Branch (M/OAA/SSB)

12. On October 21, 2015, the USAID FOIA Office sent Ms. Stevens' request for records to the Bureau for Management, Office of Acquisition and Assistance, System Support Branch (M/OAA/SSB) located in Washington, DC. The request was sent to M/OAA/SSB because it provides support to GLAAS, USAID's world-wide web-based acquisition and assistance system that manages awards (contracts, grants, cooperative agreements, etc.) throughout the acquisition and assistance life cycle. In addition, M/OAA/SSB provides acquisition and assistance data for both standard and ad-hoc reports for both internal and external sources.

13. According to the FOIA Liaison Officer for M/OAA/SSB, the acquisition and assistance system is not a document repository, but serves as a starting point for determining a correct point of contact. On October 23, 2015, one grant was identified as responsive to Ms. Stevens' request. Grant LAG-G-00-00-00017 (Northwestern University School of Law), obligated performance start date - September 18, 2001.

4

14. The USAID FOIA Office sent Ms. Stevens' request for records and the identified grant number to the Bureau for Management, Office of Acquisition and Assistance to conduct a search for the identified grant. M/OAA responded with the following search results:

    LAG-G-00-00-00017 (Northwestern University School of Law): This award appears to be destroyed back in 2006, according to the database it was closed on 01/11/2006.

15. Accordingly, M/OAA provided a no records response.

<u>USAID Mission in West Bank and Gaza</u>

16. On November 19, 2015, a FOIA Specialist for the USAID FOIA Office sent Ms. Stevens' request for records to one of the Resident Legal Officers for the Mission in West Bank and Gaza. The FOIA Office sent the request to the Mission in West Bank and Gaza because it is the mission responsible for managing records associated with Israel, which is the subject of the request. The Resident Legal Officer for the West Bank and Gaza is responsible for initiating and coordinating searches for responsive records to FOIA requests.

17. On December 4, 2015, a different Resident Legal Officer for West Bank and Gaza responded to the FOIA Office highlighting potential search issues, and asked if the request could be clarified further:

    Turns out that we will likely have thousands of emails or documents with the word "Northwestern" in it. It will take us several weeks to collect them all, go through them to make sure they are responsive and not duplicative, and then go through them again to see if anything should be redacted. So, first things first, we would like to request an extension.

    Second, is there any way to narrow the request? Either by shortening the time period (since January 2000 seems a pretty long period) or some other way? For example, some of our staff are alumni of Northwestern. Do we need to include all of the emails they have received from NWU? Also, from time to time faculty from NWU have passed through and visited some of our programs and there are many emails about the logistics of their trips. Can we exclude such emails?

    Finally, could we ask the requestor to give us a sense of what exactly they are looking for so we know how to search?

18. On December 4, 2015, a FOIA Specialist emailed Ms. Stevens the mission's concerns regarding the broad scope of the request, and asked Ms. Stevens to provide clarification to assist the search effort.

19. On December 4, 2015, Ms. Stevens responded to the FOIA Specialist with the following:

5

Thanks for the update. This response is vague and also itself beyond the timeframe contemplated by the FOIA statute. I am concerned that instead of sending me some responsive documents per a rolling release, months after my request I am receiving only a request for an extension.

I am not prepared to further narrow the request without more specificity on exactly what has been found so far with the screen used. I.e., how many documents, pages, emails? Also, if there are repetitions, these could be found only if first reviewed, and then once that's done there is no additional time wasted by their inclusion. "Thousands" is not a big number for the work I do.

If you have more information and prefer to discuss this by phone, please feel free to call me at the number below. Thanks so much for your time and thought.

20. On Dec 7, 2015, a FOIA Specialist provided the Mission search guidance in an attempt to narrow the search and avoid the processing of documents non-responsive to the FOIA request, while seeking to provide a complete response to the FOIA request:

> Do not include emails from your staff that are alumni of NWU nor the emails they have received from NWU. Likewise, you may exclude logistics about trips for faculty passing through.

> Please narrow your scope to all contracts and grants (including extensions) which refer to NWU and all materials referring to NWU in control missions: Israel, Kuwait, Qatar, Pakistan, and Saudi Arabia since January 1, 2000 until October 2015. Please include the emails from 'northwestern.edu' that relate to the aforementioned contracts, grants and control missions.

This guidance was in line with the original FOIA request and the October 23, 2015 search parameters of Ms. Stevens. The guidance on email was reasonably based on the fact that those emails would be expected to be captured in the electronic search run by the Bureau for Management, Office of the Chief Information Officer, Information and Assurance Division (M/CIO/IA).

21. On January 15, 2016, the Resident Legal Officer for West Bank and Gaza responded to the FOIA Office with responsive records located by the Mission which constituted the entire production to Ms. Stevens.

### The USAID Mission in Pakistan

22. The USAID FOIA Office records indicate that on or about November 19, 2015, Ms. Stevens' request for records was sent to an individual believed to be the Resident Legal Officer for the Mission in Pakistan. The FOIA Office sent the request to the Mission in Pakistan because it is the mission responsible for managing records associated with Pakistan, which is the subject of the request. The Resident Legal Officer for Pakistan is

responsible for initiating and coordinating searches for responsive records to FOIA requests.

23. Unable to locate a response from the Mission, on or about May 5, 2020, an inquiry was made to the current Resident Legal Officers in the Pakistan Mission for the results of the November 2015 records search. Unable to find definitive proof that a search was conducted, the Mission conducted a new search which was completed on or about June 15, 2020. As part of the search for records ten different individuals were asked about any engagements or work with Northwestern University – all of which stated they had no memory of such work or engagements. The Mission also conducted a search of the Office of Education (OED) Google Docs folder using the search term "Northwestern." No responsive records were located. The USAID FOIA Office understood the June 2020 search result information to be a no records response.

<u>No Missions in Kuwait, Qatar, and Saudi Arabia</u>

24. On November 19, 2015, the USAID FOIA Office contacted the Bureau for the Middle East (ME) seeking clarification on USAID mission offices in the Middle East, specifically asking if USAID has mission offices in Kuwait, Qatar, and Saudi Arabia. The FOIA Office contacted the Bureau for the Middle East for clarification because Ms. Stevens requested all materials referring to Northwestern University in the control of the missions in Israel, Kuwait, Qatar, Pakistan, and Saudi Arabia.

25. On November 19, 2015, the Director for Office of Technical Support (ME/TS) in the Bureau for the Middle East responded to the FOIA Office's inquiry: "We do not have missions (or activities) in those countries."

26. The USAID FOIA Office ultimately confirmed USAID does not operate missions in Kuwait, Qatar, or Saudi Arabia.

<u>Bureau for the Middle East (ME)</u>

27. On February 15, 2019, the USAID FOIA Office sent Ms. Stevens' request for records to the Bureau for the Middle East (ME) located in Washington, D.C. On the same day, the FOIA Liaison Officer for the Bureau for the Middle East emailed the FOIA Office stating, the Bureau for the Middle East did not exist as a separate entity before 2016.

28. On March 12, 2019, the FOIA Liaison Officer provided a no records response.

29. On March 13, 2019, the FOIA Liaison Officer stated that his search involved a review of the shared network drive of the predecessor bureau to the Bureau for the Middle East—the Bureau for Asia and the Near East—with the word "Northwestern" and it returned no results. He searched the bureau, including file drawers and checked with at least four people who were with USAID prior to 2015, and located no paper files indicating information about 'Northwestern.' Assistants in ME's Office of the Assistant Administrator are aware of no paper files there. File cabinets marked for the Strategy and

Program Office (SPO), NAA (ME's North Africa and Arabian Peninsula Affairs) and MEA (ME's Office of Middle East Affairs) contain old briefing books and budget documents, but nothing indicating Northwestern. In addition to these locations, he checked with an education specialist, who has been working in the bureau since about 2004, and she recalled no correspondence or agreements with Northwestern prior to 2015. On July 20, 2020, the Director of Administrative Management Services in the Bureau for the Middle East conducted a search of paper files and confirmed the bureau had no responsive documents nor a shelf list of records that were sent to offsite storage.

## Bureau for Management, Office of the Chief Information Officer, Information and Assurance Division (M/CIO/IA)

30. On February 15, 2019, the FOIA Office sent a request for electronic records to the Bureau for Management, Office of the Chief Information Officer, Information and Assurance Division (M/CIO/IA) located in Washington, D.C. The USAID FOIA Office sent the request for electronic records to this office because it is responsible for overall information technology security management, to include the electronic search of Agency email systems. A search was initiated of the Gmail Vault archiving feature for "All USAID Accounts" for search terms: @northwestern.edu; Date of search: January 1, 2000 to October 23, 2015.

31. On March 8, 2019, M/CIO/IA responded with an executive summary of the search results:

Findings: 24,736 email artifacts, that matched the parsing criteria have been submitted to M/MS/IRD [Bureau for Management, Office of Management Services, Information and Records Division—the FOIA Office]. The requested emails were identified and retrieved from the Gmail archiving feature for the requested users. They were then deduplicated. These emails can be reviewed on USAID's instance of FOIAXpress.

32. On or about April 1, 2019, the FOIA Office determined that none of the emails were within the scope of the FOIA request.

## Bureau for Asia

33. On March 4, 2019, the USAID FOIA Office sent Ms. Stevens' request for records to the Bureau for Asia located in Washington, D.C. The FOIA Office sent the request to the Bureau for Asia because Ms. Stevens' request references Pakistan. USAID Pakistan operations currently fall under the Office of Afghanistan and Pakistan Affairs (OAPA), but prior to the year 2014, Pakistan operations were managed by the Bureau for Asia.

34. On March 13, 2019, the FOIA Liaison Officer for the Bureau for Asia, confirmed a search of the Bureau's accounting system and shared drives resulted in a no records response.

## Office of Afghanistan and Pakistan Affairs (OAPA)

35. On March 4, 2019, the USAID FOIA Office sent Ms. Stevens' request for records to the Office of Afghanistan and Pakistan Affairs (OAPA) located in Washington, D.C. The FOIA Office sent the request to OAPA because OAPA provides technical support, analysis and resource management implementing programs in Pakistan. The search was conducted of electronic files using the keywords Northwestern University. A search for hard copy documents was conducted and none were located.

36. On March 12, 2019, OAPA provided a no records response.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 24, 2020.

Christopher A
Colbow (affiliate)

Digitally signed by Christopher A
Colbow (affiliate)
Date: 2020.07.24 10:52:16 -04'00'

_____

Christopher A. Colbow, Division Chief
Bureau for Management, Office of Management
Services, Information and Records Division,
USAID

# Exhibit F

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
CHICAGO DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | Civil Action No. 18-5391 CAS (AGRx) |
| Plaintiff, | |
| vs. | **DECLARATION OF TONI FUENTES IN SUPPORT OF THE UNITED STATES' SEARCHES IN RESPONSE TO PLAINTIFF'S FOIA REQUEST** |
| BROADCASTING BOARD OF GOVERNORS, ET AL., | |
| Defendants. | |

DECLARATION OF TONI FUENTES
IN SUPPORT OF THE UNITED STATES' SEARCHES IN RESPONSE TO
PLAINTIFFS' FOIA REQUEST

## I.  INTRODUCTION

I, Toni Fuentes, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.        I am the Deputy Officer of the U.S. Immigration and Customs Enforcement ("ICE")
Freedom of Information Act ("FOIA") Office.  I have held this position since September 30, 2018
and am the ICE official immediately responsible for supervising ICE responses to requests for
records under the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a
("Privacy Act"), and other applicable records access statutes and regulations.  Prior to this position,
I have held numerous FOIA positions over the past 20 years to include: FOIA Director for the
National Protection and Programs Directorate ("NPPD") at the U.S. Department of Homeland
Security ("DHS"); Government Information Specialist for the Department of Justice, U.S.
Marshals Service, Office of General Counsel; Government Information Specialist for the
Department of Defense, Office of the Inspector General's FOIA Office; FOIA Officer, Paralegal
Specialist for the Department of the Navy, NAVAIR/NAWCAD's Office of Counsel; Management
and Program Analyst for the Department of Homeland Security, Customs and Border Protection's

FOIA Office; and FOIA Paralegal Specialist for the National Aeronautics and Space Administration's Office of Chief Counsel.

2.      The ICE FOIA Office is responsible for processing and responding to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received by ICE. The ICE FOIA Office's mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

3.      My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office. The ICE FOIA Office is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE. Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act. In that respect, I am familiar with ICE's processing of the FOIA request dated September 7, 2018, that was filed by Jacqueline Stevens ("Plaintiff"), which is the subject of this litigation.

4.      I make this declaration in my official capacity in support of Defendant's motion for summary judgment in the above-captioned action. The statements contained in this declaration are based upon my personal knowledge, my review of records kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties. The documents attached hereto are kept by ICE in the ordinary course of its business activities.

5.      This declaration provides a description of the ICE FOIA Office's searches in response to Plaintiff's FOIA requests and specifically addresses the outstanding concerns raised by the Plaintiff.

## II.    PROCEDURAL HISTORY OF THE PLAINTIFF'S FOIA REQUEST AND THE INSTANT LITIGATION

6.     This lawsuit arises from ten FOIA requests that Plaintiff submitted to ICE between March 8, 2018, and July 3, 2018.    Through counsel, all substantive issues have been resolved in this litigation, except with regard to four FOIA requests.

7.     **FOIA Request No. 2018-ICFO-25719.**

    a.     On March 8, 2018, Plaintiff submitted a FOIA request seeking "all documents uploaded to the PLAnet case management system since January 1, 2016 regarding persons claiming or proving U.S. citizenship.  This includes, but is not limited to, memoranda on claims of U.S. citizenship and all related items (including but not limited to notes and screenshots of database interfaces), and any and all information entered in the "USC Claims" section of PLAnet, as well as screenshots of all tabs for PLAnet users who access information on USC claims."

    b.     On March 23, 2018, the ICE FOIA Office acknowledged Plaintiff's FOIA request and assigned it Case Number 2018-ICFO-25719.  The ICE FOIA Office's response notified Plaintiff that "[P]lease be advised that DHS regulations require, in the case of third party information requests, a statement from the individual verifying his or her identity and certifying that individual's agreement that records concerning him or her may be accessed, analyzed and released to a third party.  See 6 C.F.R. § 5.21(f)."

    c.     On March 23, 2018, Plaintiff e-mailed the ICE FOIA Office stating "Please note I am not requesting names, but rather narratives and other information in these records.  I therefore do not need to submit privacy waivers."

d.      On June 1, 2018, the ICE FOIA Office responded to Plaintiff's FOIA request stating that "[a] search of the ICE Office of the Principal Legal Advisor (OPLA) for records responsive to your request produced 36 pages that are responsive to your request. After review of that document, [I] have determined that portions of the 36 pages will be withheld pursuant to Exemptions of the FOIA."

e.      On August 3, 2018, Plaintiff appealed the ICE FOIA Office's response, specifically "that the response only includes case locations for hearings and does not include the memoranda and other system records responsive to my request."

f.      On August 3, 2018, OPLA acknowledged Plaintiff's appeal of 2018-ICFO-25719 and assigned it Appeal Number 2018-ICAP-00397 for tracking purposes.

g.      On August 8, 2018, five days after submitting her appeal, Plaintiff filed the subject litigation.

h.      On August 31, 2018, OPLA responded to Plaintiff's appeal noting that "this request is now the subject of litigation in U.S. District Court. *See Jacqueline Stevens v. Broadcasting Board of Governors et al., No. 18-5391 (N.D. Ill. filed Aug. 8, 2018)*. Therefore, ICE is administratively closing this appeal."

8.      **FOIA Request No. 2018-ICFO-26000.**

a.      On March 16, 2018, Plaintiff submitted a "Freedom of Information Act [to request] all material received, produced, referred to, or maintained since January 1, 2016 by Immigration and Customs Enforcement and its components related to the use of detainee labor by private contractors. This includes but is not

limited to system records, contracts, including memorandums of understanding and addenda, letters, memoranda, reports, draft reports, policy proposals, notes, text messages, faxes, and e-mail that is intra- and inter-agency as well as all communications with private lobbyists, firms, individuals, journalists, and members of Congress. Please include screen shots of interfaces used by ICE employees accessing responsive materials from databases."

      b.      On March 27, 2018, the ICE FOIA Office acknowledged Plaintiff's FOIA request and assigned it Case Number 2018-ICFO-26000. The ICE FOIA Office further advised "[A]fter careful review of your FOIA request, we determined that your request is **too broad in scope**, did not specifically identify the records which you are seeking, or only posed questions to the agency. Records must be described in reasonably sufficient detail to enable government employees who are familiar with the subject area to locate records without placing an unreasonable burden upon the agency. For this reason, §5.3(b) of the DHS regulations, 6 C.F.R. Part 5, require that you describe the records you are seeking with as much information as possible to ensure that our search can locate them with a reasonable amount of effort. Whenever possible, a request should include specific information about each record sought, such as the date, title or name, author, recipients, and subject matter of the records, if known, or the ICE program office you believe created and/or controls the record. The FOIA does not require an agency to create new records, answer questions posed by requesters, or attempt to interpret a request that does not identify specific records."

c.     On March 27, 2018, Plaintiff responded to the ICE FOIA Office's acknowledgment letter by e-mail stating "I write to appeal the rejection of my request based on scope and other assertions about my original request that are false."

d.     On April 9, 2018, OPLA acknowledged Plaintiff's appeal of 2018-ICFO-26000 and assigned it Appeal Number 2018-ICAP-00236 for tracking purposes.

e.     On May 7, 2018, OPLA determined that, after reviewing the administrative record, a new search(s), or modifications to the existing search(s), could be made. Plaintiff's FOIA request was remanded to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain responsive documents, if any.

f.     On August 8, 2018, prior to ICE's response, Plaintiff filed the subject litigation.

9.     **FOIA Request No. 2018-ICFO-47097.**

a.     On June 22, 2018, Plaintiff submitted a FOIA request seeking "1) grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance; 2) grievance logs; 3) email, text messages, and all other communications, reports, and attachments associated with responding to grievances filed by ICE detainees or those complaining on their behalf. The time frame for this request is January 1, 2018 to the present."

b. On July 2, 2018, the ICE FOIA Office acknowledged Plaintiff's FOIA request and assigned it Case No. 2018-ICFO-47097.

c. On July 3, 2018, the ICE FOIA Office sought clarification from the Plaintiff on her FOIA request. Specifically, "[T]his e-mail is in regards to your June 22, 2018 ICE FOIA request for all records pertaining to grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance from January 1, 2018 to present (see request for further details). In conducting a search for responsive records, the ICE FOIA office has determined that further clarification is needed regarding your request. Since there are several Polk County Jails throughout the country, please provide the address to the Polk County Jail you are referencing. Please provide the ICE FOIA office with a response as soon as possible to avoid any further delay in the processing of your request. If a response is not received within 30 days, your request will be administratively closed."

d. On July 3, 2018, Plaintiff responded to the clarification request that she was seeking the "Polk County Jail in Conroe, Texas."

e. On September 18, 2018, the ICE FOIA Office responded to Plaintiff's FOIA request and produced one Excel spreadsheet.

f. Plaintiff did not appeal the ICE FOIA Office's response and on August 8, 2018, Plaintiff filed the subject litigation.

10. **FOIA Request No. 2018-ICFO-47101.**

a.    On June 22, 2018, Plaintiff submitted a FOIA request seeking "1) grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance; 2) grievance logs; 3)  email, text messages, and all other communications, reports, and attachments associated with responding to grievances filed by ICE detainees or those complaining on their behalf.  The time frame for this January 1, 2016 to December 31, 2017."

b.    On July 2, 2018, the ICE FOIA Office acknowledged Plaintiff's FOIA request and assigned it Case No. 2018-ICFO-47101.

c.    On July 3, 2018, the ICE FOIA Office sought clarification from the Plaintiff on her FOIA request.  Specifically, "[T]his e-mail is in regards to your June 22, 2018 ICE FOIA request for all records pertaining to grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance from January 1, 2016 to December 31, 2017 (see request for further details).  In conducting a search for responsive records, the ICE FOIA office has determined that further clarification is needed regarding your request. There are multiple Polk County Jails in the country. Please provide the address to the specific facility that is referred to in your request.  Please provide the ICE FOIA office with a response as soon as possible to avoid any further delay in the processing of your request. If a response is not received within 30 days, your request will be administratively closed."

          d.      On July 3, 2018, Plaintiff responded to the clarification request that she was seeking the "Polk County Jail in Conroe, Texas."

          e.      August 29, 2018, the ICE FOIA Office responded to Plaintiff's FOIA request and noted no records were located for that time period.

          f.      Plaintiff did not appeal the ICE FOIA Office's response and on August 8, 2018, Plaintiff filed the subject litigation.

## III. ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

11.      When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

12.      If a FOIA request does not reasonably describe the records sought, the ICE FOIA Office will seek clarification from the requestor. If the requested information is under the purview of a DHS component other than ICE, the ICE FOIA Office will refer the request to the appropriate DHS component for processing and direct response to the requester. If the FOIA request seeks records under the purview of a government agency other than DHS, ICE FOIA informs the requestor to contact the other government agency directly and ICE FOIA administratively closes the FOIA request.

13.      As noted above, proper FOIA requests are entered into a database known as FOIAXPress and assigned a case tracking number. Based upon the requestor's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

14. ICE records are maintained by leadership offices and/or within ICE directorates, including but not limited to, the Office of Enforcement and Removal Operations, the Office of Acquisition Management, and the Office of the Principal Legal Advisor. The program offices are typically staffed with a designated point of contact (POC) who is the primary person responsible for communications between that program office and the ICE FOIA Office. Each POC is a person with detailed knowledge about the operations of his/her particular program office.

15. Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based upon their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and initiates searches within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the POCs within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE

FOIA Office then reviews the collected records for responsiveness and application of appropriate FOIA Exemptions.

16. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

17. Additionally, all ICE employees have access to e-mail. ICE uses the Microsoft Outlook e-mail system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook e-mail files - some archive their files monthly, without separating by subject; others archive their e-mail by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

18. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who makes a determination whether or not the records are responsive to the FOIA request. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

19. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly

segregated.  Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requestor.

## IV.    GENERAL DESCRIPTION OF PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFF'S FOIA REQUEST

20.    **Enforcement and Removal Operations' (ERO) searches.**  ERO oversees programs and conducts operations to identify and apprehend removable aliens, to detain these individuals when necessary, and to remove illegal aliens from the United States.  ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release.  ERO comprises seven headquarters divisions and 24 Field Offices, and more than of 7,600 employees and would be the program office most likely to have responsive records regarding Plaintiff's FOIA requests pertaining to detainees and grievance logs.  When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU").  The primary POC is the ERO IDU's Unit Chief who will assign the search tasking to POCs within IDU to review the substance of the request and, based upon on their subject matter expertise and knowledge of the program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices, and directs specific employees or offices to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, based upon their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any.  The employees exercise discretion, based on their operational knowledge and subject matter expertise, in choosing the specific search terms utilized to ascertain whether or not potentially responsive documentation exists.  Once searches are completed, the individuals and component offices provide any potentially responsive records

to the IDU Unit Chief, who in turn provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness.

21. **The Office of the Principal Legal Advisor's searches and response to the FOIA request.** OPLA provides a full range of legal counsel and services to all ICE offices and programs. OPLA's primary responsibilities include, among other things, representing the Department in all exclusion, deportation, and removal proceedings; arguing administrative appeals before the Board of Immigration Appeals; providing direction and support to U.S. Attorney's Offices nationwide; counseling ICE clients on removal order reinstatements, administrative removal orders, and expedited removals; reviewing legislative and regulatory proposals; and providing legal training and ethics guidance to all ICE personnel. OPLA is the largest legal program in the Department of Homeland Security, providing legal advice, training, and services in cases related to the ICE mission. OPLA is the program office most likely to have responsive records pertaining to PLAnet.

22. **Office of Acquisition Management (OAQ) searches.** OAQ is ICE's contracting and procurement program office, and would be the program office most likely to have responsive records pertaining to contracts and memoranda of understanding.

## III. DESCRIPTION OF SPECIFIC SEARCHES AND RESPONSES TO PLAINTIFF'S FOUR FOIA REQUESTS

23. **FOIA Request No. 2018-ICFO-25719.**

a. Plaintiff's FOIA request sought "[A]ll documents uploaded to the PLAnet case management system since January 1, 2016 regarding persons claiming or proving U.S. citizenship. This includes, but is not limited to, memoranda on claims of U.S. citizenship and all related items (including but not limited to notes and screenshots of database interfaces), and any and all information entered in the "USC Claims" section of PLAnet,

as well as screenshots of all tabs for PLAnet users who access information on USC claims. (ECF #1)."

      b.     On April 5, 2018, in response to Plaintiff's FOIA request, the ICE FOIA Office tasked the Office of Enforcement and Removal Operations to search for responsive records.

      c.     On April 5, 2018, ERO IDU reviewed the FOIA request and noted that ERO was unlikely to possess responsive records as PLAnet is an OPLA database. As a result, ERO provided a "no records" response.

      d.     On April 6, 2018, the ICE FOIA Office tasked OPLA with a search for responsive documents. When OPLA receives a FOIA tasking from the ICE FOIA Office, the request is handled by a Management and Program Analyst within the Government Information Law Division. The Management and Program Analyst will review the FOIA request and assign the tasking to the OPLA division most likely to possess responsive records. Here, Plaintiff's FOIA request was assigned to OPLA's Knowledge Management Division, the OPLA division responsible for OPLA's PLAnet database.

      e.     The OPLA Knowledge Management Division reviewed the FOIA request and on May 5, 2018, provided an Excel spreadsheet of USC claims from the PLAnet database to the ICE FOIA Office for processing.

      f.     The Excel spreadsheet, totaling 36 pages, was produced to Plaintiff on June 1, 2018, subject to appropriate Exemptions under the FOIA.

24.     **FOIA Request No. 2018-ICFO-26000.**

      a.     Plaintiff's FOIA request sought "All material received, produced, referred to, or maintained since January 1, 2016 by Immigration and Customs Enforcement and its

components related to the use of detainee labor by private contractors. This includes but is not limited to system records, contracts, including memorandums of understanding and addenda, letters, memoranda, reports, draft reports, policy proposals, notes, text messages, faxes, and email that is intra- and inter-agency as well as all communications with private lobbyists, firms, individuals, journalists, and members of Congress. Please include screenshots of interfaces used by ICE employees accessing responsive materials from databases. (ECF #1 at ¶75)."

b. On October 2, 2018, following the filing of this litigation, the ICE FOIA Office re-tasked ERO to search for responsive records based upon Plaintiff's FOIA request. The search tasking was received by ERO's Information Disclosure Unit ("IDU"). The ERO IDU Chief reviewed the substance of the request and based upon on her subject matter expertise and knowledge of the program offices' activities within ERO, tasked ERO's Custody Management Division to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, would be reasonably likely to have responsive records, if any. In response to Plaintiff's FOIA request, ERO's Custody Management Division searched for all records regarding "private use of detainee labor." The Custody Management Division utilized the following search terms: "Voluntary Work Program." The Custody Management Division, based on their expertise, determined that the search term "Voluntary Work Program" would likely return records responsive to Plaintiff's request.

c. On October 2, 2018, ICE FOIA Office tasked OAQ to search for responsive records based upon Plaintiff's FOIA request. The search tasking was received by OAQ's FOIA POC. The OAQ POC reviewed the substance of the request and based upon on their

subject matter expertise and knowledge of the program offices' activities within OAQ, tasked the OAQ division responsible for detention contracts. In response to Plaintiff's FOIA request, OAQ searched for all records regarding "private use of detainee labor."

    d.    On October 30, 2018, ERO and OAQ completed their searches and located 22 pages of potentially responsive records.

    e.    On February 28, 2019, the ICE FOIA Office responded to the Plaintiff that "[A] search of the Office of Enforcement and Removal Operations (ERO), and Office of Acquisition Management (OAQ) located records that were potentially responsive to your request. ICE also received records from the Office of United States Citizenship and Immigration Services (USCIS) for our direct response to you. For this production ICE reviewed 2,200 pages of potentially responsive records. ICE has determined that 153 pages of records were non-responsive or duplicates and the attached 2,047 responsive pages of records have been Bates numbered 2018-ICLI-00052 1 through 2018-ICLI-00052 2047."

    f.    On March 8, 2019, the ICE FOIA Office made a final production of responsive records to the Plaintiff stating "[A] search of the ICE Office of the Principal Legal Advisor (OPLA) located records that were potentially responsive to your request. For this production ICE reviewed 4,426 pages of potentially responsive records. ICE has determined that 411 pages of records were non-responsive or duplicates and the attached 4,015 responsive pages of records have been Bates numbered 2018-ICLI-00052 2048 through 2018-ICLI-00052 6062."

25.    **FOIA Request No. 2018-ICFO-47097.**

    a.    Plaintiff submitted a FOIA request seeking "1) grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf,

including but not limited to Contract Inspectors evaluating Polk County performance; 2) grievance logs; 3) email, text messages, and all other communications, reports, and attachments associated with responding to grievances filed by ICE detainees or those complaining on their behalf. The time frame for this request is January 1, 2018 to the present."

b.    On July 2, 2018, the ICE FOIA Office tasked ERO to search for responsive records based upon Plaintiff's FOIA request. The search tasking was received by ERO's Information Disclosure Unit ("IDU"). The ERO IDU Chief reviewed the substance of the request and based upon on her subject matter expertise and knowledge of the program offices' activities within ERO, tasked ERO's Custody Management Division and the Houston Field Office to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, would be reasonably likely to have responsive records, if any. The Houston Field Office was identified as the relevant office for this search because it is the ERO office responsible for the Conroe County, Texas, area of responsibility.

c.    In response to Plaintiff's FOIA request, the Custody Management Division and Houston Field Office searched for all responsive records utilizing the following search terms: "Grievances," "Grievance logs," "responding to grievances," and "Polk County Detention Facility." The ERO POCs searched extensively in their Outlook e-mails system and their government-issued computers, including hard drives and shared drives.

d.    On September 18, 2018, ERO completed its search for responsive records and located one Excel spreadsheet responsive to the request.

e.      On September 18, 2018, the ICE FOIA Office responded to the Plaintiff that "[A] search of the ICE Office of Enforcement and Removal Operations (ERO) for records responsive to your request produced 1 spreadsheet that are responsive to your request. Portions of 1 spreadsheet will be withheld pursuant to Exemptions of the FOIA."

f.      As noted in Paragraph 9, Plaintiff did not appeal the response.

26.     **FOIA Request No. 2018-ICFO-47101.**

a.      Plaintiff submitted a FOIA request seeking "1) grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance; 2) grievance logs; 3) email, text messages, and all other communications, reports, and attachments associated with responding to grievances filed by ICE detainees or those complaining on their behalf. The time frame for this January 1, 2016 to December 31, 2017."

b.      On July 2, 2018, the ICE FOIA Office tasked ERO to search for responsive records based upon Plaintiff's FOIA request. The search tasking was received by ERO's Information Disclosure Unit ("IDU"). The ERO IDU Chief reviewed the substance of the request and based upon on her subject matter expertise and knowledge of the program offices' activities within ERO, tasked ERO's Custody Management Division and the Houston Field Office to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, would be reasonably likely to have responsive records, if any. The Houston Field Office was identified as the relevant office for this search because it is the ERO office responsible for the Conroe County, Texas, area of responsibility.

c. In response to Plaintiff's FOIA request, the Custody Management Division and Houston Field Office searched for all responsive records utilizing the following search terms: "Grievances," "Grievance logs," "responding to grievances," and "Polk County Detention Facility." The ERO POCs searched extensively in their Outlook e-mails system and their government-issued computers, including hard drives and shared drives.

d. On July 17, 2018, ERO completed its initial search and no responsive records were located.

e. On August 29, 2018, the ICE FOIA Office responded to the Plaintiff that "ICE has conducted a search of the ICE Office of Enforcement and Removal Operations (ERO) for records responsive to your request and no records were found." Subsequently, ERO completed a supplemental search and located one Excel spreadsheet. The Excel spreadsheet was processed and produced to the Plaintiff on October 31, 2019.

## IV. ICE'S RESPONSE TO THE ISSUES RAISED IN PLAINTIFF'S MOTION TO COMPEL

Plaintiff's Motion to Compel identifies alleged deficiencies in ICE's responses to Plaintiff's FOIA requests. Plaintiff has not challenged any Exemptions or searches outside the Motion to Compel; therefore, ICE's response is limited to only the searches and concerns identified in Plaintiff's Motion to Compel. As more fully explained below, ICE made a good faith effort to search for, locate, and produce all non-exempt records to the Plaintiff.

27. **Plaintiff's challenge to 2018-ICFO-25719.** Plaintiff's FOIA request sought "[A]ll documents uploaded to the PLAnet case management system since January 1, 2016, regarding persons claiming or proving U.S. citizenship. This includes, but is not limited to, memoranda on claims of U.S. citizenship and all related items (including but not limited to notes and screenshots of database interfaces), and any and all information entered in the "USC Claims" section of

PLAnet, as well as screenshots of all tabs for PLAnet users who access information on USC claims."

        a.      United States Citizenship ("USC") Memoranda. Plaintiff has specifically requested all documents uploaded to PLAnet for persons claiming U.S. citizenship. PLAnet is an ICE database used by ICE attorneys to document case management protected by attorney-work product and deliberative process privileges. The ICE procedure for addressing USC claims is set out in ICE Policy Directive 16001.2 "Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE," issued November 10, 2015. The Directive is summarized in the following paragraphs; however, a version of this Directive is available to the public that version has been attached to this declaration. Attachment 1.

        b.      "It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE." Attachment 1 at 1. Sections 5.1(2) and (4) of the ICE Policy Directive 16001.2 state that, if "the evidence in the case strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face [or] [s]some probative evidence indicates that the individual may be a U.S. citizen but the evidence is inconclusive," ICE will not pursue or continue detention of the individual, but may on a case-by-case basis in consultation with counsel proceed with removal proceedings against the individual "to more conclusively resolve his or her immigration and citizenship status if reasons remain to believe that he or she is an alien present in the United States in violation of law."

c.      Each USC memorandum is created by an OPLA attorney based in the field working in conjunction with ICE officers and agents,[1] and uses a standardized template approved by ICE Headquarters.   The memorandum assesses the USC claim and recommends a course of action. Attachment 1 at 5. Its purpose is to prevent ICE personnel from inadvertently detaining a person who is a U.S. citizen and/or initiating or continuing removal proceedings against a person who is a U.S. citizen.  As a result, included in each memorandum is a legal analysis of the USC claim based on facts available to the agency at the time of drafting, as well as a recommendation on a course of action regarding removal proceedings, in particular whether the agency should initiate, continue, or move to terminate the actual or contemplated removal proceedings based on the facts available to the agency at the time.

d.      The USC memorandum is almost entirely attorney work product and contains recommendations for courses of action between attorneys and clients, it is marked draft, pre-decisional and deliberative, privileged attorney-client communication, attorney work product, and as containing sensitive personally identifiable information ("PII").

e.      USC memoranda are submitted by the local OPLA field office to ICE Headquarters ERO and OPLA for review, which either concur with the conclusion(s) and recommendation(s) in the memorandum or decline to concur and request alternate courses of action.  If more information or further analysis is required, the local field attorney and

---

[1] As noted in Directive 16001.2, ERO or the other major ICE component, Homeland Security Investigations ("HSI"), can also be involved in USC claims.  However, due to the non-immigration nature of HSI's work, it is extremely rare for USC claims to arise from and involve HSI.  For the purposes of this declaration, only ERO will be referenced in this process, as they were the only other ICE component involved in these claims.

an attorney from OPLA Immigration Law Practice Division (ILPD) will work together to address all concerns.

      f.      Once ERO Headquarters and OPLA have reached a decision, a copy of the memorandum is finalized. The final copy is sent via e-mail to the shared email inboxes maintained by ERO and OPLA. As a best practice, this version of the memorandum should be saved to OPLA's case management database (PLAnet) along with the e-mail signaling OPLA and ERO Headquarters concurrence or non-concurrence with the field's recommendation, marked in that database as pre-decisional, attorney work product, privileged attorney-client communication, and containing sensitive PII. Because ICE Policy requires that each USC claims memorandum be submitted within one business day from the time ICE first becomes aware of a claim to citizenship, *see* section 5.1(2)(a), and such memoranda are always subject to updates as new facts are gathered or the law evolves, they are never considered final even after being sent to the shared email inboxes and saved to PLAnet. Specifically, each memorandum will be revised and re-elevated for review if new information is developed, either through subsequent ICE investigation or based on information or documents received from the individual claiming to be a U.S. citizen or from that individual's attorney. *See* Section 5.1(2)(e). As a best practice, ICE officers and agents are expected to make a notation in the appropriate case management system and/or database of the findings on USC and recommendation and to update the notation(s) if findings or recommendations change.

      g.      USC memoranda are created in anticipation of foreseeable immigration and/or federal court proceedings. Specifically, each memorandum is prepared by an OPLA field attorney and reviewed by attorneys at OPLA Headquarters in order to advise their

clients (ERO personnel) about the best course of action based on the information available to the agency at the time, both with respect to that particular respondent's immigration proceedings and with an eye to minimizing potential future litigation by the respondent against the agency.

h.      Section 3.2 of ICE Policy Directive 16001.2 lays out the three categories of individuals encountered by ICE for whom USC memoranda apply:   (1) individuals currently in removal proceedings (either before ICE or the Department of Justice Executive Office for Immigration Review); (2) individuals arrested and taken into ICE custody pursuant to the agency's civil immigration authorities; and (3) individuals subject to ICE immigration detainers.

i.       In all three situations, the individuals for which USC memoranda are created will currently be, or are reasonably anticipated to be, respondents in removal proceedings at the time the memoranda are prepared.  Therefore, every USC memorandum is prepared specifically in anticipation of formal, adversarial immigration proceedings conducted under 8 U.S.C. § 1229a.  Beyond such immigration court proceedings, there are also federal litigation issues that ICE reasonably tries to anticipate in its USC memoranda, including claims alleging the unlawful detention of a U.S. citizen.

j.       USC memoranda are strictly for internal use and solely created for OPLA and ERO personnel.  As these USC memoranda are documents only used internally, they are not filed in immigration court, nor shared with any other agency or federal, state, or local court.  The analysis reflected in the memorandum may be discussed with U.S. Citizenship and Immigration Services ('USCIS") or Department of Justice attorneys in

federal immigration litigation related to that particular individual during deliberations regarding litigation strategy.[2] However, the document itself is not generally released.

k.      Notably, ICE does not have the authority to grant U.S. citizenship. U.S. citizenship can only be formally recognized by USCIS (e.g., through issuance of a Certificate of Citizenship) or indicia of citizenship by the U.S. Department of State (e.g., through issuance of a U.S. passport). The USC memoranda play no role in those citizenship decisions; they simply are internal documents that reflect an agency attorney's analysis of the best course of action with respect to a particular respondent's USC claim at a particular point in time, as is the concurrence or non-concurrence by OPLA and ERO Headquarters with that analysis and the recommended course of action in each memoranda.

l.      As explained above, USC memoranda are protected by FOIA Exemption (b)(5).[3] FOIA Exemption (b)(5) protects from disclosure attorney-work product, attorney-client privileged communications, and recommended courses of action in one or more memoranda that were produced in response to a specific FOIA request. Further, Exemption (b)(5) protects the integrity of the deliberative or decision-making processes within the agency and by exempting from mandatory disclosure opinions, conclusions, and recommendations included in these legal memos. By their very nature, draft documents are pre-decisional, preliminary versions of what may later become a final document in

---

[2] Sharing between different DHS components constitutes internal agency use, as the legal authorities delegated to these components originate from the creation of the position of the DHS General Counsel. *See* 6 U.S.C. § 113(a)(1)(j). Pursuant to a delegation from the Secretary of Homeland Security, all DHS attorneys are subject to the supervision and oversight of the General Counsel.
[3] ICE notes that Plaintiff has not challenged any Exemptions to ICE's productions. However, for purposes of explaining the sensitivities associated with USC memoranda, ICE is including a brief description of the applicable FOIA Exemption here.

whole or in part, or they remain drafts that never mature into final form as the material may be withdrawn or discarded during the decision-making process. In fact, the process by which a draft evolves into a final document is itself a deliberative process. If draft responses to inquiries and agency policies in actions were released, the public could potentially become confused with updates to ICE's mission and activities. Disclosure of such material would cause a chilling effect on open and frank internal agency discussions.

m.      Notwithstanding the above responses on USC memoranda specifically, Plaintiff has also requested "all documents" uploaded to PLAnet and "screenshots" entered into the USC section of PLAnet for persons claiming U.S. citizenship. This request is problematic for several reasons. Generally, ICE is prohibited from disclosing information protected by the Privacy Act of 1974 (5 U.S.C. § 552a), DHS Privacy Act Regulations (6 C.F.R. § 5.21(d)), and ICE policy, absent consent. Plaintiff has not provided any evidence that any individual has consented to release their information to Plaintiff; therefore, ICE cannot release specific records pertaining to these individuals to Plaintiff. However, as noted below, ICE produced anonymized and responsive records to Plaintiff such that individual privacy interests were safeguarded.

n.      Plaintiff requested "screenshots of all tabs for PLAnet users who access information on USC claims." On its face, this request asks the agency to create a federal record, which is not required by the FOIA. However, in order to provide Plaintiff with anonymized and responsive records, ICE created a 36-page PDF of individuals who had USC claims and produced the record to the Plaintiff subject to Exemptions (b)(6), (6)(7)(C). When asserting Exemptions 6 and 7(C), ICE balances an individual's personal privacy interest against the public's interest in shedding light on ICE's performance of its

statutory duties. Third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. Plaintiff has not articulated a sufficient public interest or public need to justify release of this information. The disclosure of this Personally Identifiable Information ("PII") serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. Finally, ICE determined that the disclosure of the information contained in the records would constitute a clearly unwarranted invasion of personal privacy and thus Exemption 6 was applied. In addition, ICE determined that disclosure of the information was compiled for law enforcement purposes, could reasonably be expected to constitute an unwarranted invasion of personal privacy, and thus Exemption 7(C) applied. Having determined that the individuals identified in the responsive records have a cognizable privacy interest in not having their information released, ICE FOIA then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in shedding light on the operations and activities of ICE in the performance of its statutory duties. In each instance where Exemptions 6 and 7(C) were applied, the redaction was limited to the name of the individual or other personally identifiable information, which if released, would not shed any further light as to the operations or activities of ICE. After a thorough review, ICE segregated and released all non-exempt records.

28. **Plaintiff's challenge to 2018-ICFO-26000.** Plaintiff's FOIA request sought "[A]ll material received, produced, referred to, or maintained since January 1, 2016 by Immigration and Customs Enforcement and its components related to the use of detainee labor by private contractors. This includes but is not limited to system records, contracts, including

memorandums of understanding and addenda, letters, memoranda, reports, draft reports, policy proposals, notes, text messages, faxes, and email that is intra- and inter-agency as well as all communications with private lobbyists, firms, individuals, journalists, and members of Congress. Please include screenshots of interfaces used by ICE employees accessing responsive materials from databases."

a.     In response to the Plaintiff's FOIA request, ICE produced 2,200 pages of responsive records. *See* ¶ 24. Through counsel, Plaintiff previously raised concerns with the adequacy of ICE's responses with respect to this specific FOIA request. In response, ICE went line-by-line through the entire production and responded to each specific concern raised by the Plaintiff including references to Bates numbers where Plaintiff could find the requested record. *See* Attachment 2.

b.     Notwithstanding the above, Plaintiff further identified four sub-issues that remained a concern:

1.     "No Text messages from Thomas Homan, then ICE Acting Director has been produced." In response to this request, the ICE FOIA Office confirmed with the Office of the Chief Information Officer (OCIO) that the agency does not currently have the technical capability to pull text messages, as requested. ICE further confirms that the OCIO does not have the technical capability to search for individual employees' text messages.

2.     The Documents referenced in attachments and e-mails referenced Plaintiff's Motion to Compel. As stated in Paragraph 29(a) above, ICE provided a point-by-point response to each concerned raised by the Plaintiff.

3.     Plaintiff requested that domain names (after the "@" in e-mail addresses) be unredacted.   ICE previously left signature blocks completely unredacted to allow Plaintiff an understanding of who and to whom communications were being sent and received.   Notwithstanding, ICE has agreed to reprocess over 6,000 pages of responsive records to unredact e-mail domain identifiers and produce those records to Plaintiff.

4.     Plaintiff contends that actual detainee grievances were not produced.   When ICE searched for potentially responsive records, ICE located four Excel spreadsheet reports that were produced to Plaintiff in October 31, 2019.   The associated Bates numbers for that production are 2018-ICLI-00052 8628 through 2018-ICLI-00052 8714.   These records include the date/time of allegation, the summary of the issue/complaint, location, and recommendation/explanation for how the complaint was resolved.

29.     **Plaintiff's challenge to 2018-ICFO-47097 (Grievance Logs at Polk from January 1, 2018, to present).**   Plaintiff's FOIA request sought "[A]ll records pertaining to grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance from January 1, 2018 to present."

a.     As noted in the paragraph above, in response to the Plaintiff's FOIA request, ICE produced four Excel spreadsheet reports to Plaintiff in October 31, 2019.   The associated Bates numbers for that production are 2018-ICLI-00052 8628 through 2018-ICLI-00052 8714.   These records include the date/time of allegation, the summary of the

issue/complaint, location, and recommendation/explanation for how the complaint was resolved.

      b.      Plaintiff has further requested copies of actual grievances submitted to ICE. ICE notes that there have been no formal grievances submitted to the agency. Polk County is the contract holder and ICE is not involved in the daily operations of the facility nor is it involved in any grievance procedures. Any ICE records pertaining to grievances were captured in ICE's October 31, 2019, production. With regard to Plaintiff's request for "agents acting on their behalf" or "contract inspectors" " those individuals are likely to be representatives Polk County and, as such, ICE would not have responsive records.

30.     **Plaintiff's challenge to 2018-ICFO-47101 (Grievance Logs at Polk from January 1, 2016, to December 31, 2017).** Plaintiff's FOIA request sought "[A]ll records pertaining to grievances submitted by those in ICE custody to ICE or Polk County officials or agents acting on their behalf, including but not limited to Contract Inspectors evaluating Polk County performance from January 1, 2016 to December 31, 2017."

      a.      As noted in the previous paragraphs above, in response to the Plaintiff's FOIA request, ICE produced four Excel spreadsheet reports to Plaintiff in October 31, 2019. The associated Bates numbers for that production are 2018-ICLI-00052 8628 through 2018-ICLI-00052 8714. These records include the date/time of allegation, the summary of the issue/complaint, location, and recommendation/explanation for how the complaint was resolved.

      b.      Plaintiff has further requested copies of actual grievances submitted to ICE. ICE notes that there have been no formal grievances submitted to the agency. Polk County is the contract holder and ICE is not involved in the daily operations nor is it involved in

any grievance procedures. Any ICE records pertaining to grievances were captured in ICE's October 31, 2019, production. With regard to Plaintiff's request for "agents acting on their behalf" or "contract inspectors" " those individuals are likely to be representatives of Polk County and, as such, ICE would not have responsive records.

## V.    SEGREGABILITY

31.    U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

32.    A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

33.    With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA Exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

## VI.    JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this ____ day of July 2020.

Toni Fuentes, Deputy FOIA Officer

Freedom of Information Act Office

U.S. Department of Homeland Security

U.S. Immigration and Customs Enforcement

500 12th Street, S.W.

Washington, D.C. 20536-5009

**U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT**

## 16001.2: Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE

| | |
|---|---|
| **Issue Date:** | November 10, 2015 |
| **Effective Date:** | November 10, 2015 |
| **Superseded:** | ICE Policy No. 16001.1: Superseding Guidance on Reporting and Investigating Claims to United States Citizenship (Nov. 19, 2009). |

**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** This Directive establishes ICE policy and procedures for ensuring that the potential U.S. citizenship of individuals encountered by U.S. Immigration and Customs Enforcement (ICE) officers, agents, and attorneys is immediately and carefully investigated and analyzed. The Immigration and Nationality Act of 1952, as amended (INA), sets forth the parameters for U.S. citizenship by virtue of birth in the United States. Additionally, the INA and various related statutes codify numerous avenues by which an individual may derive, acquire, or otherwise obtain U.S. citizenship other than through birth in the United States. As a matter of law, ICE cannot assert its civil immigration enforcement authority to arrest and/or detain a U.S. citizen. While performing their civil immigration enforcement duties, ICE officers, agents, and attorneys may encounter individuals who are not certain of their citizenship status, who claim to be U.S. citizens, and/or for whom there are indicia warranting further examination to determine whether they may be U.S. citizens.

2. **Policy.** It is ICE policy to carefully and expeditiously investigate and analyze the potential U.S. citizenship of individuals encountered by ICE. ICE officers, agents, and attorneys should handle these matters with the utmost care and highest priority, recognizing that, while some cases may be easily resolved, many may require additional investigation and substantial legal analysis, particularly in light of the complexity of U.S. citizenship and nationality law.

   ICE personnel must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship, as well as when certain indicia of potential U.S. citizenship, as identified in this Directive, are present in a case even if the individual does not affirmatively make a claim to U.S. citizenship. In all situations where an individual's potential U.S. citizenship requires further investigation, Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI) personnel must consult with the Office of the Principal Legal Advisor's (OPLA) local Office of the Chief Counsel (OCC), as prescribed in this Directive.

3. **Definitions.** The following definitions apply for purposes of this Directive only.

3.1. **Indicia of Potential U.S. Citizenship.** Circumstances that tend to indicate that an individual may be a U.S. citizen. Indicia are not conclusive evidence that the individual is a U.S. citizen but factors that trigger the need for further investigation. With respect to individuals encountered by ICE, the existence of any of the following factors should lead to further investigation of the individual's U.S. citizenship:



1)

2)

3)

4)

5)

6)

7)

8)

9)

10)

**3.2    Individual Encountered by ICE.** An individual who is:

    1)  Arrested and taken into ICE custody pursuant to the agency's civil immigration authorities, including those released from such custody pending a decision on removal or execution of a removal order;

    2)  Subject to, or may become subject to, a request made by ICE that another law enforcement agency continue to hold the individual for up to 48 hours following the completion of his or her criminal custody, i.e., an "immigration detainer;"[1] and/or

    3)  In proceedings before the Executive Office for Immigration Review (EOIR) or administrative removal proceedings before ICE, including but not limited to pursuant to sections 217, 235, 238(b), or 241(a)(5) of the INA.

**3.2.    Probative Evidence of U.S. Citizenship.** A unique policy standard adopted by ICE meaning that the evidence before the agency tends to show that the individual may, in fact, be a U.S. citizen. U.S. citizenship need not be shown by a preponderance of the evidence for the agency to find that there is some probative evidence of U.S. citizenship.

**4.    Responsibilities.**

**4.1.    ERO Officers, HSI Agents, and OCC Attorneys** have responsibilities under Section 5.1 of this Directive.

**4.2.    ERO Field Office Directors (FODs), HSI Special Agents in Charge (SACs), and OPLA Chief Counsels** are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) prescribed in this Directive.

**4.3.    FODs** are responsible for ensuring that all state and local officers with delegated immigration authority pursuant to INA § 287(g) within their area of responsibility have the training and oversight necessary to understand and adhere to this Directive, and thoroughly investigate all U.S. citizenship claims made by individuals encountered by 287(g)-designated officers.

**4.4.    Headquarters (HQ) OPLA, ERO, and HSI** have responsibilities under section 5.1(3). (Headquarters Review).

**4.5.    The Executive Associate Directors for ERO and HSI, and the Principal Legal Advisor**, or their designees, are responsible for providing appropriate supervisory oversight to ensure officers, agents and attorneys in their respective offices comply with the policy (see section 2) and procedures (see section 5) of this Directive.

---

[1] This includes individuals subject to the former Form I-247 (Immigration Detainer – Notice of Action), Form I-247D (Immigration Detainer – Request for Voluntary Action), Form I-247X (Request for Voluntary Transfer) when this form requests detention rather than simply notification, and/or any successor form serving the same or substantially similar process.

---

**Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

5.    **Procedures/Requirements.** An ICE officer, agent or attorney must assess the potential U.S. citizenship of an individual encountered by ICE if the individual makes or has made a claim to U.S. citizenship or, even in the absence of such a claim, when indicia of potential U.S. citizenship are present in a case. The ICE Directorate that first encounters the individual is generally responsible for identifying indicia of potential U.S. citizenship.

5.1.   **Procedures for Investigating and Assessing Potential U.S. Citizenship.**

1) **Factual Examination.** The assessment of potential U.S. citizenship under this Directive must include a factual examination and a legal analysis and shall include a check of all available DHS data systems and any other reasonable means available to the officer. In general, the factual examination should be conducted by the ICE operational Directorate (ERO or HSI) that first encountered the individual. In cases where the OCC first encounters the individual, ERO should generally conduct the factual examination in coordination with the OCC.



a)

b)

c)

d)

e)

Attachment 1

f) 

g)

2) **Preparing and Submitting Memorandum.** After the factual examination is completed, ERO or HSI (whichever conducted the factual examination) and the relevant OCC must jointly prepare and submit a memorandum for HQ review, using as a guide the attached HQ-approved template, which assesses the claim and recommends a course of action.

   a) Absent extraordinary circumstances, this memorandum must be submitted no more than one business day from the time ERO, HSI, or OPLA first becomes aware of a claim or indicia of potential U.S. citizenship if the individual is subject to an immigration detainer or is detained in ICE custody. In all other cases, the memorandum must be submitted as promptly as practicable.

   b) For purposes of such memoranda, the legal analysis must indicate whether, in the OCC's view:

      1) The evidence in the case strongly suggests that the individual is a U.S. citizen or his or her claim to U.S. citizenship is credible on its face;

      2) Some probative evidence indicates that the individual may be a U.S. citizen but the evidence is inconclusive; or

      3) No probative evidence indicates that the individual is a U.S. citizen.

   c) The memorandum must be clearly annotated as containing pre-decisional, privileged attorney-client communication, attorney work product, and sensitive personally identifiable information.

   d) Upon completion, the memorandum must be elevated via e-mail to the HQ OPLA Immigration Law and Practice Division at _____ and either the HQ ERO Assistant Director for Field Operations at _____ or to the HQ HSI Domestic Operations Manager assigned responsibility for the relevant SAC office, as appropriate.

   e) Any significant change in circumstances in a case elevated to HQ should be reported in the same manner as outlined in the preceding subparagraph, as well as

to any previously assigned HQ points of contact, as an update to the original memorandum.

3) **Headquarters (HQ) Review.**

   a) HQ OPLA and either HQ ERO or HQ HSI will respond to the field with a decision on the recommendation within one business day of receipt of the memorandum by detained claimants and individuals subject to an immigration detainer. In all other cases a decision will be made as promptly as practicable.

4) **Detainer/Custody Determination.**

   a) In those cases involving individuals who fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive (cases involving strong/facially credible or probative evidence of U.S. citizenship):

      1) ICE should not lodge an immigration detainer against or arrest the individual.

      2) If ICE has already lodged an immigration detainer against the individual, it should be immediately cancelled.

      3) If the individual is already in ICE custody, he or she should be immediately released.

      4) If the individual has been released from ICE custody on conditions, those conditions should be re-evaluated in consultation with OPLA.

   b) Where the field's initial recommendation to HQ is that an individual falls within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive, it is not necessary to await HQ concurrence before cancelling an immigration detainer, releasing the individual from custody, or terminating conditions of release.

   c) On a case-by-case basis and in consultation with OPLA, an individual determined by ICE to fall within section 5.1(2)(b)(1) or 5.1(2)(b)(2) of this Directive may be placed in removal proceedings on EOIR's non-detained docket to more conclusively resolve his or her immigration and citizenship status if reasons remain to believe that he or she is an alien present in the United States in violation of law.

   d) Where no probative evidence of U.S. citizenship exists (section 5.1(2)(b)(3) of this Directive) and probable cause exists that the individual is a removable alien, it is permissible to lodge an immigration detainer in the case, arrest the individual, and/or process the individual for removal.

   e) In any case in which there is uncertainty about whether the evidence is probative of U.S. citizenship, ICE should not detain, arrest, or lodge an immigration

---

**Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

detainer against the individual and should cancel any immigration detainer already lodged by ICE.

f)   Where ICE determines that it will not proceed further with an enforcement action due to the U.S. citizenship claim, the individual should be informed that he or she may attempt to obtain proof of U.S. citizenship by submitting a passport application to the Department of State (http://travel.state.gov/passport) or filing an Application for Certificate of Citizenship, Form N-600, with U.S. Citizenship and Immigration Services (www.uscis.gov/n-600).

5)  **Case Management.**

a)   ICE officers and agents will make a notation in the appropriate database(s) (e.g., ENFORCE Alien Booking Module and/or Alien Removal Module), and place a copy of the memorandum and resulting decision, properly marked as containing attorney work product, attorney-client communication, and sensitive personally identifiable information in the individual's A-file, if one already exists.

b)   ICE attorneys will save the memorandum in the PLAnet case management system and document the resulting HQ decision and other information about the claim by completing the "USC Claims" section in PLAnet.

6.   **Recordkeeping.**  Records generated pursuant to this directive are maintained in the Alien File, Index, and National File Tracking System of Records, 76 Fed. Reg. 34233 (June 13, 2011), the General Counsel Electronic Management System (GEMS), 74 Fed. Reg. 41914 (August 19, 2009), the Immigration and Enforcement Operational Records (ENFORCE), 75 Fed. Reg. 23274 (May 3, 2010), and any other applicable system.  The memorandum and resulting HQ decision will be also be saved in PLAnet.

7.   **Authorities/References.**

**7.1.**   Immigration and Nationality Act (INA) § 101(b) and (c).

**7.2.**   INA §§ 301 - 303.

**7.3.**   INA §§ 306 - 309.

**7.4.**   INA § 316.

**7.5.**   INA §§ 319 - 320.

**7.6.**   INA § 322.

**7.7.**   INA §§ 328 - 329.

**7.8.** Section 303 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Pub. L. No. 94-241, 90 Stat. 263, 266 (set out as a note to 48 U.S.C. § 1801).

**8.**      **Attachments.**

**8.1.** Sample – USC Claims Memorandum Template.[2]

**9.**      **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create or diminish any rights, substantive or procedural, enforceable at law or equity by any party in any criminal, civil, or administrative matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of the Department of Homeland Security.

**Sarah R. Saldaña**
**Director**
**U.S. Immigration and Customs Enforcement**

---

[2] This template may be periodically updated by OPLA, as new legal and policy developments warrant. In such circumstances, OPLA will work with the Office of Policy to have the updated template posted to the ICE Policy Manual online environment.

---

**Investigating the Potential U.S. Citizenship of Individuals Encountered by ICE**

Attachment 1

| PDF # | BATES # | Name of File/Attachment | Date | Included on (PDF) | Response |
|---|---|---|---|---|---|
| | 2393 | Janitor, Food Service manager, food clerk job descriptions | 08/23/18 | 349 | Produced in full; see Bates 2398-2403. |
| | 2408 | 2018-08-13 Novoa-Nakamoto-Rider A to Subpoena FINAL | 08/15/18 | Court case | Produced in full; see Bates numbers 2410-2418. |
| | | Novoa-Request for subpoena | 08/15/18 | Court case | Insufficient description of document sought. |
| | 2425 | Voluntary Work Program Addendum(8.17.18)_EROLD (clean).docx | 08/13/18 | 379 | Produced with redactions; see Bates numbers 2426-2427. |
| | 2428 | GEO declaration NWDC (7.30.18 DCLD CALD)_7.31.18 EROLD.docx | 07/31/18 | Court case | Withheld in full under Exemption 5; see Bates numbers 2435-2442. |
| | | draft for Washington VWP declaration | 07/25/18 | Court case | Insufficient description of document sought. |
| | 2434 | GEO declaration | 07/24/18 | | Withheld in full under Exemption 5; see Bates numbers 2435-2442. |
| | 2443 | 2018.07.11.ICE Declaration with comments.docx | 07/24/18 | Court case | Withheld in full under Exemption 5; see Bates numbers 2435-2442. |
| | 2456 | Complaint—GEO v. Tacoma, Mar. 22 2018.pdf | 03/27/18 | Court case | Produced in full; see Bates numbers 2460-2481. |
| | | Tacoma Ordinance No. 28491, 2-20-18.pdf | | Court case | Produced in full; see Bates numbers 2482-2493. |
| | 2502 | "copy of the IGSA" | 05/18/18 | 457 | Produced with redactions; see Bates numbers 2504-2509. |
| | 2510 | 2016 ICE English Revised from ODO-clean copy.pdf | | 466 | Produced with redactions; see Bates numbers 2513-2727. |
| | | 17.1.2-AUR Attachment A housekeeping new facility.pdf | | 492 | Produced with redactions; see Bates numbers 2513-2727. |
| | | 17.1.2-AUR_Sanitation_&_Housekeeping_07162015.pdf | | 498 | Produced with redactions; see Bates numbers 2513-2727. |
| | | DENICDF16-DenverCDF-G324A PBNDS O72 2011-09-29-16.pdf | | 502 | Produced with redactions; see Bates numbers 2513-2727. |
| | | DENICDF16-DenverCDF CoverLTR 09-29-16.doc | | 681 | Produced with redactions; see Bates numbers 2513-2727. |
| | | DENICDF16-DenverCDF SIS 09-29-16.doc | | 684 | Produced with redactions; see Bates numbers 2513-2727. |
| | | RA_DenICDF16.pdf | | | Produced with redactions; see Bates numbers 2513-2727. |
| | 2736 | Voluntary Work Program DRIL Calls-FY17&FY18.xlsx | 06/13/18 | | Produced as an Excel spreadsheet in Defendant's 2019 Supplemental Production. |
| | 2739 | Factual Background for Statements of Interest.docx | 06/06/18 | | Withheld in full under Exemption 5; see Bates numbers 2742-2747. |
| | 2748 | Letter to ICD Director Homan 02142018.pdf | 02/15/18 | 704 | Produced with redactions; see Bates numbers 2751-2755. |
| | 2756 | CoreCivic.pdf | 06/07/17 | 711 | Plaintiff appears to identify the attachment by name and assumes it was not produced; Defendant does not produce records by name as listed here. However, Defendant believes that this |
| | | TVPA Lawsuit | 06/07/17 | | Insufficient description of document sought. |
| | 2794 | ICE Audit 2014-15 re VWP 041218_Redacted.pdf | 06/27/18 | 749 | Produced with redactions; see Bates numbers 2796-2807. |
| | 2808 | 2018-08-07 Albence Decl..docx | 08/09/18 | Court case | Withheld in full under Exemption 5; see Bates numbers 2809-2815. |
| | | Draft declaration for Menocal case | 08/09/18 | Court case | Insufficient description of document sought. |
| | 2816 | Novoa 2018-07-06 Doc 47 First Amended Complaint for Declaratory and Inju....pdf | 08/23/18 | Court case | Produced in full; see Bates numbers 2818-2863. |
| | | 2018-07-27 Novoa – Plaintiffs First Discovery Requests & Site Inspection....pdf | 08/23/18 | Court case | Produced in full; see Bates numbers 2818-2863. |
| | 2871 | Facility Diagram.pdf | 01/26/18 | | Withheld in full under Exemption 5; see Bates number 2876. |
| | | Housing Unit Floor Plan.pdf | 01/26/18 | | Withheld in full under Exemption 5; see Bates number 2877. |
| | 2878 | 2016-02-08 Stipulated Protective Order.pdf | 01/26/18 | 831 | Produced in full; see Bates numbers 2878-2884. |
| | 2893 | protective order | 07/27/18 | 846 | Produced in full; see Bates numbers 2878-2884. |
| | 2897 | Menocal Hot Lit, 2 Apr 18.docx | 03/28/18 | 850 | Withheld in full under Exemption 5; see Bates numbers 2899-2900. |
| | 2906 | "hot lit doc" | 04/19/17 | 859 | Plaintiff appears to identifying the document withheld in full at Bates numbers 2899-2900. |
| | 2910 | (draft) Menocal Rehearing Outline.docx | 02/20/18 | 863 | Withheld in full under Exemption 5; see Bates number 2912-2919. |
| | 2933 | 2018.06.18; State and Chen v. GEO; FINAL Response Touhy Letter.pdf | 08/23/18 | 888 | Plaintiff appears to be identifying a reference to an attachment and not the attachment itself; however, Defendant believes that this document has been produced to the plaintiff. |
| | 2934 | letter in response to June 15, 2018 email | 06/18/18 | 887 | Produced with redactions; see Bates number 2935-2939. |
| | 3034 | letter requesting that DOJ file a Statement of US interest in Menocal & Owino | 06/20/17 | 987 | Withheld in full under Exemption 5; see Bates number 3042-3051. |
| | 3040 | VWP-Request for Statement of Interest (8.14.18).pdf | 09/12/18 | 993 | Withheld in full under Exemption 5; see Bates number 3042-3051. |
| | | Request for Statements of Interest—Menocal and Owino, 2 Oct 17.pdf | 09/12/18 | 997 | Withheld in full under Exemption 5; see Bates number 3042-3051. |
| | | Statements of Government Interest in Wash. v. GEO et al. (1.24.18).pdf | 09/12/18 | | Withheld in full under Exemption 5; see Bates number 3042-3051. |
| | | VWP Factual Background (July 2018).docx | 09/12/18 | 999 | Withheld in full under Exemption 5; see Bates number 3042-3051. |
| | | 91- Tae Johnson Decl, 3 Aug 18.pdf | 09/12/18 | 1042 | Withheld in full under Exemption 5; see Bates number 3042-3051. |
| | | Nov 2017 bulletin.pdf | 09/12/18 | 1050 | Withheld in full under Exemption 5; see Bates number 3042-3051. |
| 1273 | 3320 | Jena GEO detainee handbook.pdf | 01/19/18 | 1277 | Produced in full subject to one Exemption 6 and 7(C); see Bates numbers 3324-3352. |
| 1306 | 3353 | 68 – P's motion for Extension of Disc, 21 June 28.pdf | 06/22/18 | Court case | Produced in full; see Bates numbers 3357-3366. |
| 1306 | 3353 | 66 – Wash. Motion to Compell, 21 June 18.pdf | 06/22/18 | Court case | Produced in full; see Bates numbers 3367-3377. |

Attachment 2

| | | | | | |
|---|---|---|---|---|---|
| 1306 | 3353 | 65 – GEO (D'Ambra) Decl, 21 June 18.pdf | 06/22/18 | Court case | Produced in full; see Bates numbers 3378-3381. |
| 1306 | 3353 | 63 – GEO Motion for PO, 21 June 18.pdf | 06/22/18 | Court case | Produced in full; see Bates numbers 3382-3396. |
| 1306 | 3353 | 64 – GEO (Meli) Declaration, 21 June 18.pdf | 06/22/18 | Court case | Produced in full; see Bates numbers 3397-3399. |
| 1306 | 3353 | Response to GEO email and Letters—Conf Call Tomorrow at 1000? | 06/22/18 | 1306 | Produced in full; see Bates number 3404. |
| 1309 | 3356 | attached Letter in response to the June 15, 2018 E-mail | 06/18/18 | | Produced with redactions; see Bates number 3404. |
| 1353 | 3400 | The GEO Group Request.pdf | 06/08/18 | 1357 | Produced with redactions; see Bates number 3404. |
| 1357 | 3404 | Request for Equitable Adjustment (sent by GEO on 2/14/18) | 05/30/18 | | This is a reference taken from an e-mail; it does not appear to reference an actual record. |
| 1357 | 3404 | Updated individual Requests for Equitable Adjustments for Aurora, Colorado; Adelanto, California; and Tacoma, Washington ICE facilities (sent by GEO on 4/18/18) | 05/30/18 | | This is a reference taken from an e-mail; it does not appear to reference an actual record. |
| 1375 | 3422 | Touhy Deposition Request | 09/29/18 | 1376 | Produced in full; see Bates numbers 3423-3426. |
| 1377 | 3424 | 30(b)(1) Notice of Deposition | 09/29/18 | 1380 | Produced in full; see Bates numbers 3427-3430. |
| 1377 | 3424 | February 11, 2016 Deposition Approval Letter from (redacted) | 09/29/18 | | Produced in full; see Bates numbers 3427-3430. |
| 1400 | 3447 | Novoa 2018-07-06 Doc 47 First Amended Complaint for Declaratory and Inju...pdf | 08/27/18 | | Produced in full; see Bates numbers 3451-3479. |
| 1400 | 3447 | 2018-07-27 Novoa – Plaintiffs First Discovery Requests and Site Inspection...pdf | 08/27/18 | | Produced in full; see Bates numbers 3480-3496. |
| 1458 | 3505 | HSCEMD-11-D-00003-P00008.pdf | 02/16/18 | 1459 | Produced with redactions; see Bates numbers 3506-3507. |
| 1458 | 3505 | HSCEMD-11-D-00003-P00009.pdf | 02/16/18 | 1461 | Produced with redactions; see Bates numbers 3508-3509. |
| 1458 | 3505 | HSCEMD-11-D-00003-P000010 Attach 1.pdf | 02/16/18 | 1463 | Produced in full; see Bates numbers 3510-3512. |
| 1458 | 3505 | HSCEMD-11-D-00003-P000010 Attach 2.pdf | 02/16/18 | 1466 | Produced in full; see Bates numbers 3513-3522. |
| 1458 | 3505 | HSCEMD-11-D-00003-P000010 CBA WD.txt | 02/16/18 | 1476 | Produced with redactions; see Bates numbers 3523-3571. |
| 1458 | 3505 | HSCEMD-11-D-00003-P000011.pdf | 02/16/18 | 1525 | Produced with redactions; see Bates numbers 3572-3581. |
| 1577 | 3624 | NWDC Response | 03/09/18 | | Produced with redactions under Exemption 5; see Bates numbers 3625-3626. |
| 1589 | 3636 | 110-1.pdf | 10/05/18 | 1590 | Produced with redactions; see Bates numbers 3637-3640. |
| 1589 | 3636 | FINAL Potential Rebuttal Witness Disclosure-(b)(6);(b)(7).pdf | 10/05/18 | Court case | Produced with redactions; see Bates numbers 3641-3642. |
| 1589 | 3636 | FINAL Potential Rebuttal Witness Disclosure-Baniecke.pdf | 10/05/18 | Court case | Produced with redactions; see Bates numbers 3641-3642. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00013.pdf | 02/16/18 | 1601 | Produced with redactions; see Bates numbers 3648-3653. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00014.pdf | 02/16/18 | 1607 | Produced with redactions; see Bates numbers 3654-3655. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00015.pdf | 02/16/18 | 1609 | Produced with redactions; see Bates numbers 3656-3658. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00016.pdf | 02/16/18 | 1612 | Produced with redactions; see Bates numbers 3659-3660. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00017.pdf | 02/16/18 | 1614 | Produced with redactions; see Bates numbers 3661-3662. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00018.pdf | 02/16/18 | 1616 | Produced with redactions; see Bates numbers 3663-3664. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00019.pdf | 02/16/18 | 1618 | Produced with redactions; see Bates numbers 3665-3666. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00020.pdf CBA WD 2014-6952.txt | 02/16/18 | 1620 | Produced in full; see Bates number 3667. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00020.pdf CBA WD 2015-5419.txt | 02/16/18 | 1620 | Produced in full; see Bates number 3668-3688. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00020-signed.pdf | 02/16/18 | 1642 | Produced with redactions; see Bates number 3689-3690. |
| 1600 | 3647 | HSCEDM-11-D-0003-P00021.pdf | 02/16/18 | 1644 | Produced with redactions; see Bates number 3691-3692. |
| 1646 | 3693 | Otay Mesa contract excerpt.pdf | 02/06/18 | | Insufficient description of document sought. |
| 1646 | 3693 | ODT-5-C-0003 P00059cca staffing pattern.pdf | 02/06/18 | | Insufficient description of document sought. |
| 1646 | 3693 | PBNDS 2011 (with 2016 Updates).pdf | 02/06/18 | 1652 | Produced with redactions; see Bates numbers 3699-3868. |
| 2107 | 4154 | GEO declaration NWDC (07.30.18 DCLD CALD)_7.31.18 EROLD.DOCX | 07/31/18 | | Withheld in full under Exemption 5; see Bates numbers 4155-4161. |
| 2115 | 4162 | en banc petition for the 10th circuit in Menocal | 02/16/18 | | Withheld in full under Exemption 5; see Bates numbers 4164-4171. |
| 2128 | 4175 | EROLD Hot Lit Report VWP for 8.20.18 (DCLD).docx | 08/16/18 | | Withheld in full under Exemption 5; see Bates numbers 4176-4180. |
| 2134 | 4181 | 2018.06.14; Chen and State v. GEO; Final Touhy Letter.pdf | 06/21/18 | 2135 | Produced with redactions; see Bates numbers 4182-4185. |
| 2233 | 4280 | RE omnibus list of questions about Menocal, RE Menocal/Owino Statements of Interest | 02/20/18 | | Plaintiff appears to be identifying a reference to an attachment and not identifying the attachment itself by corresponding Bates number; however, Defendant believes that this document h |
| 2493 | 4540 | HotLit Document | 08/17/18 | | This is a reference taken from an e-mail; it does not appear to reference an actual record. |
| 2557 | 4604 | HSCEDM-15-D-00015, THE GEO GROUP, INC.PDF | 01/01/18 | Found | Produced in full; see Bates number 4605-4807. |
| 2764 | 4811 | "Attached orders" | 12/06/17 | | This is a reference taken from an e-mail; it does not appear to reference an actual record. |
| 2869 | 4916 | Detainee VWP report | 06/13/18 | | This is a reference taken from an e-mail; it does not appear to reference an actual record. |
| 2887 | 4934 | Detainee_Grievance_Process_VWP Data Search_06192018_REDACTED.xlsx | 06/19/18 | 2891 (but redacted) | Produced with redactions; see Bates numbers 4938-4942. |
| 2923 | 4970 | 2018_06_05_13_58_13.pdf, 2018_06_05_14_01_17.pdf | 08/08/13 | | There is no reference to this record on Bates number 4970. |

Attachment 2

| | | | | | |
|---|---|---|---|---|---|
| 2962 | 5009 | 13.1.6-AUR ICE Detainee Volunteer Work Program.pdf | 02/21/18 | 2966 | Produced with redactions; see Bates numbers 5013-5017. |
| 3044 | 5091 | The Applicability of Employer Sanctions to Alient Detainees... .rtf | 01/12/18 | | Withheld in full under Exemption 5; see Bates numbers 5106-5107. |
| 3074 | 5121 | VWP Hot Lit (8.17.18)_EROLD.DOCX, Volunteer Work Program Addendum (8.17.18)_EROLD.DOCX | 08/17/18 | | Withheld in full under Exemption 5; see Bates numbers 5126-5129. |
| 3103 | 5150 | Factual Background for Statements of Interest_EROLD_June 2018.docx | 06/08/18 | | Withheld in full under Exemption 5; see Bates numbers 5153-5159. |
| 3159 | 5206 | Confidentiality Statuses, Regulations, Policies Clean.pptx | 09/24/18 | 3167 | Produced with redactions; see Bates numbers 5214-5226. |
| 3214 | 5261 | Menocal Hot Lit for 040218.docx, Excerpt from HSCEDM-11-D-00003_Contract at Aurora.pdf | 03/29/18 | | Withheld in full under Exemption 5; see Bates numbers 5267-5269. |
| 3239 | 5286 | 101350 Combined ERO and OPLA edits.pdf | 07/12/18 | | Withheld in full under Exemption 5; see Bates numbers 5291-5293. |
| 3256 | 5303 | ICE Audit 2014-15 re VWP 041218_redacted | 06/27/18 | 3266 | Released with redactions; see Bates numbers 5313-5324. |
| 3320 | 5367 | 100198 Loudermilk Final Response.docx | 07/10/18 | | Withheld in full under Exemption 5; see Bates number 5369. |
| 3352 | 5399 | 2018.08.14 – Declaration of Tae Johnson – ICE ERO – working draft – Menocal (EROLD CALD DCLD) v.2.docx | 07/14/18 | | Withheld in full under Exemption 5; see Bates numbers 5406-5414. |
| 3442 | 5489 | Confidential Notes_EROLD and CALD Comment_June22_2017.docx; Draft Outline of U.S. Interests_EROLD and CALD comments_June22_2017.docx | 06/22/17 | | Withheld in full under Exemption 5; see Bates numbers 5492-5500. |
| | 2393 | Janitor, Food Service Manager, Food Service Officer, Food Service Clerk, Maintenance Supervisor, Maintenance Technician | 08/23/18 | | Produced in full; see Bates numbers 2398-2401. |
| | 2408 | Novoa-Nakamoto-Rider A to Subpoena, Novoa- request for subpoena | 08/15/18 | | Produced in full; see Bates numbers 2410-2418. |
| | 2425 | Voluntary Work Program Addendum | 09/13/18 | | Duplicative request - Produced with redactions; see Bates numbers 2426-2427. |
| | 2428 | GEO declaration NWDC | 07/31/18 | | Duplicative request - Withheld in full under Exemption 5; see Bates numbers 2435-2442. |
| | 2443 | ICE Declaration with comments | 07/24/18 | | Duplicative request - Withheld in full under Exemption 5; see Bates numbers 2435-2442. |
| | 2456 | Complaint-- GEO v. Tacoma, Tacoma Ordinance | 03/27/18 | | Duplicative request - Produced in full; see Bates numbers 2460-2481. |
| | 2502 | DROIGSA | 05/18/18 | | Duplicative request - Produced with redactions; see Bates numbers 2504-2509. |
| | 5587 | Overview of Voluntary Work Program | 06/12/18 | 3957 | Withheld in full under Exemption 5; see Bates numbers 5593-5595. |
| | 5612 | Novoa 2018-07-06; first amended complaint for declaratory and inj... novoa- Plaintiffs first discovery requests and site inspection | 08/23/18 | Court Case | Released in full; see Bates numbers 5617-5659. |
| | 5680 | Binder 1 Binder 2 | 05/31/18 | Court Case | Defendant notes that it does not track records by title, e.g., "Binder 1." Defendant believes that Plaintiff is referencing records produced with redactions; see Bates numbers 5685-5692. |
| | 5716 | Planet Task Assigned | 06/06/18 | 3671 | Produced with redactions; see Bates number 5718. |
| | 5719 | EROLD Hot Lit Report VWP | 08/16/18 | | Withheld in full under Exemption 5; see Bates numbers 5721-5724. |
| | 5725 | Letter regarding... Declaration | 08/01/18 | 3685 | Withheld in full under Exemption 5; see Bates number 5733. |
| | 5787 | AG Subpoena-Dainton, AG Subpoena-Albence | 06/13/18 | 3745 | Produced with redactions; see Bates numbers 5792-5837. |
| | 5916 | Response to June 15 | 06/20/18 | 3872 | Produced with redactions; see Bates numbers 5919-5920. |
| | 5919 | State and Chen v. GEO; Final response Tougy Letter | 06/19/18 | 3874 | Produced with redactions; see Bates numbers 5921-5925. |
| | 6001 | VWP Get-Back from ERO/OAQ/OPLA Discussion; Contracts with a CLIN for Volunteer Work Program | 07/13/18 | | Released in full; see Bates numbers 6004-6006. |
| | 6002 | ICE VWP Facilities- highlighted more than $1 | 04/12/18 | 3957 | Released in full; see Bates numbers 6004-6006. |
| | 6010 | Letter regarding Valerio Declaration | 08/02/18 | 3964 | Defendant notes that it does not track records by title, i.e., "Letter regarding Valerio Declaration.pdf." |
| | 6023 | Combined ERO and OPLA edits | 07/12/18 | | Withheld in full under Exemption 5; see Bates numbers 6024-6026. |
| | 6027 | Voluntary Work Program at Stewart Detention Center | 05/18/18 | 3981 | Produced with redactions; see Bates number 6027. |
| | 6034 | VWP Factual Background for SOI-update from CAL, Excerpt from ODT, VWP-- info from ERO and OAQ about where VWP is and amount of allowance | 07/16/18 | | Withheld in full; see Bates numbers 6035-6045. |
| | 6047 | Talking Point for GEO VWP cases | 02/21/18 | 4001 | Produced with redactions; see Bates numbers 6048-6052. |
| | 6053 | Aurora_Response to REA; Signed response to GEO from Peter Edge | 07/23/18 | 4015 | Produced with redactions; see Bates numbers 6054-6062. |