UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 18 C 5391 ) ) Judge Rowland |
| BROADCASTING BOARD OF GOVERORS, *et al.*, | ) ) ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF SUMMARY JUDGMENT**

Nothing in plaintiff Jacqueline Stevens's response memorandum presents a reason to deny the agencies' motion for summary judgment. The agencies conducted adequate searches for records in numerous locations, and summary judgment is warranted.

**Argument**

The court should reject the arguments in Stevens' response memorandum. Dkt. 59. The undisputed facts show that the agencies' searches were adequate, and Stevens waived her right to challenge the agencies' withholdings.

**I.      Stevens's Local Rule 56.1 Violations**

As a threshold matter, Stevens's response memorandum repeatedly violates Local Rule 56.1 by citing evidence directly instead of citing a Local Rule 56.1 statement. *Malec v. Sanford*, 191 F.R.D. 581, 586 (N.D. Ill. 2000) (citations should be to Rule 56.1 statement, not "directly to pieces of the record"); *Madaffari v. Metrocall Companies Group Policy GL*, 2005 WL 1458071, *1 (N.D. Ill. June 15, 2005) ("parties are required to cite to the numbered paragraphs of their Local Rule 56.1 statements and not to the underlying parts of the record"). Indeed, she cites the record directly at least *37 times* (Dkt. 59 at 4, 6-13), and she *never* cites the agencies' Local Rule 56.1

1

statement (or her own statement, since she did not file one). Local Rule 56.1 provides "the only acceptable means of disputing the other party's facts and of presenting additional facts." *Midwest Imports v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995). The usual consequence of failure to comply is summary judgment for the movant. *Malec*, 191 F.R.D. at 584 ("This rule may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire."). And the Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Unif. Servs*, 368 F.3d 809, 817 (7th Cir. 2004); *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) ("Given their importance, we have consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment.").

If Stevens wanted to draw the court's attention to parts of the agencies' declarations that did not appear in the agencies' Local Rule 56.1 statement, she should have filed her own Local Rule 56.1 statement citing those declarations. *Eason v. Nolan*, 416 Fed.Appx. 569, 569-70 (7th Cir. 2011) (affirming district court's refusal to consider facts in nonmoving party's response to moving party's Rule 56.1 statement because "a party runs afoul of the rule by commingling the separate requirements into one response"); *Cichon v. Exelon Generation*, 401 F.3d 803, 809-10 (7th Cir. 2005) (affirming district court's decision to ignore additional facts submitted by nonmovant in response to movant's Rule 56.1 statement rather than in a separate statement as required by Local Rule 56.1(b)); *Ammons*, 368 F.3d at 817 ("Rule 56.1 envisions *a separate statement* of additional facts.") (emphasis in original). Parties are not permitted to present additional facts in a different manner than what the rule provides. *De v. City of Chicago*, 912 F.Supp.2d 709, 715 (N.D. Ill. 2012) (citing *Ciomber v. Coop. Plus*, 527 F.3d 635, 643 (7th Cir. 2008)). The court should disregard all of the improper citations in Stevens's memorandum and could grant summary judgment for the agencies on this basis alone. *Stevo v. Frasor*, 662 F.3d 880,

887 (7th Cir. 2011) ("we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings").

## II. Searches' Adequacy

Even if the court were to ignore Stevens's violations of Local Rule 56.1, nothing she says in her response memorandum undercuts the agencies' declarations, which establish that their searches complied with FOIA's requirements.

### A. Declarations' Sufficiency

Stevens says that four of the six agencies' declarations should be disregarded because they do not meet the requirements of 28 U.S.C. § 1746. Dkt. 59 at 4. Only USGS's and USAID's declarations meet that standard, she says, because USGS's and USAID's declarants stated under penalty of perjury that the information in their declarations was true. *Id*. By contrast, she says, the declarants for BBG, HHS, USCIS, and ICE stated only that the information in their declarations was true to the best of their knowledge and belief. *Id*. She is wrong, for two reasons.

First, Stevens ignores that the four challenged declarations were, like the other two, signed under penalty of perjury. DSOF ¶ 81. Second, a declaration does not violate Rule 56(c)(4)'s personal knowledge requirement simply because it states that the facts are true to the best of the declarant's knowledge and belief. *E.g., Withers v. Wexford Health Sources*, 710 F.3d 688, 691 (7th Cir. 2013) (on the basis of a declaration that plaintiff stated was true "to the best of my knowledge and belief," reversing summary judgment for defendant). And although Stevens cites *Pinson v. DOJ*, 160 F.Supp.3d, 285 (D.D.C. 2016), that case *supports* the agencies' approach here: the court ruled that declarations containing descriptions of searches "conducted by individuals other than the declarant" are "acceptable in FOIA cases." *Id*. at 294; *see also Carney v. DOJ*, 19 F.3d 807, 814 (2d Cir. 1994) ("An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply

3

affidavits from each individual who participated in the actual search.").

Stevens says that a declaration "on information and belief" is inadmissible hearsay because by definition it is based on "second-hand information that the declarant believes to be true." Dkt. 59 at 4-5; *Weiss v. Cooley*, 230 F.3d 1027, 1034 (7th Cir. 2000) (declaration "on information and belief" was inadmissible). But the declarations here are not "on information and belief" in the way Stevens seems to think. All six declarants stated under penalty of perjury that the information in their declarations was true to the best of *their* knowledge and belief. DSOF ¶ 81.

### B. Locations

Stevens says that the agencies did not search for records in enough locations. But as explained below, the agencies did.

#### 1. BBG

Stevens complains that BBG (she uses its new name, USAGM) sent her request for "D3 Systems" contracts to three of its components but that only one of them actually searched for records, and she says that BBG has not declared that that component was the only location reasonably likely to have responsive records. Dkt. 59 at 6. The argument is forfeited, because in making her argument, Stevens cites evidence directly instead of citing a Local Rule 56.1 statement. *Id*. (citing Dkt. 56, Ex. A ¶ 5). And even if the argument were not forfeited, BBG has explained that its search was reasonably calculated to locate records responsive to Stevens's request and that it has no reason to believe that additional responsive records in its custody and control exist. DSOF ¶ 14. That statement should be deemed admitted because Stevens has not properly disputed it: she purports to dispute it in her Local Rule 56.1 response, but she cites no *evidence* as a basis for the supposed dispute. Dkt. 59-1 ¶ 14. Rather, she cites five paragraphs of *case law*, which is not the proper use of a Local Rule 56.1 response. *Grabianski v. Bally Total Fitness*, 169 F.Supp.3d 785, 788 (N.D. Ill. 2015) (Rule 56.1 statements are "not the proper venue" for "developing whatever

'spin' the parties wish to place on the facts").

### 2. HHS

Stevens purports to criticize the locations HHS searched, but her arguments actually target HHS's search process in general. Dkt. 59 at 6-7. Those arguments will be addressed below.

### 3. USCIS

Stevens says that USCIS's declaration does not explain what programs or files were searched. Dkt. 59 at 7 (forfeiting argument by citing evidence directly). The accusation is odd, since USCIS did exactly that. DSOF ¶¶ 28 (describing search of USCIS's verification division's email records and "databases called AVANT, CRM, SAS, and WebHQ"), 32 (describing search of USCIS's office of contracting's "digitized records stored on the office's computer 'J: drive'").

Stevens also complains that USCIS searched the offices that it determined were "most reasonably likely" to have records responsive to her request for records relating to its E-Verify program and to its contract with General Dynamics. Dkt. 59 at 7 (forfeiting argument by citing evidence directly). This was "insufficient," she says, because an agency must search "all" locations likely to contain responsive records, not just the locations "most likely" to have responsive records. Dkt. 59 at 7. It is true enough that "most likely" is not the relevant metric, *DiBacco v. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015), and that the FOIA standard requires an agency to show that its search was reasonably calculated to uncover "all" relevant documents. *Nat'l Day Labor Org. Network v. ICE*, 877 F.Supp.2d 87, 95 (S.D.N.Y. 2012). But here, USCIS did exactly that. DSOF ¶ 82 ("all files likely to contain responsive records were searched").

As Stevens notes, USCIS also asserted that it searched the offices "most reasonably likely" to contain responsive documents, and she seems to take from this an implication that there may have been other offices reasonably likely to contain responsive documents that USCIS did not search. But the possibility that an editor's red pen might have improved the wording of a given

5

sentence in a declaration does not overcome the presumption that USCIS conducted its search in good faith. *Rubman v. USCIS*, 800 F.3d 381, 387 (7th Cir. 2015) ("Good faith is presumed."). USCIS's declaration satisfies the Seventh Circuit's standard for what constitutes a good-faith FOIA search and should be given deference as a result. The declaration describes in detail the search for records responsive to Stevens's FOIA requests. DSOF ¶¶ 26-33. Nothing, aside from Stevens's conjecture, calls into question the adequacy of the locations USCIS searched.

      **4.    USAID**

Stevens complains that USAID's declaration provides "absolutely no details" about what searches and what locations were queried before this lawsuit began. Dkt. 59 at 8 (forfeiting argument by citing evidence directly). But a FOIA lawsuit does not turn on whether the agency complied with FOIA *before* the lawsuit was filed. *Mobley v. CIA*, 806 F.3d 586 (D.C. Cir. 2015) (affirming summary judgment for agencies where agencies did not even respond to FOIA request until after lawsuit was filed).

Stevens says she told USAID to search five specific offices but that USAID searched only one of them (the Office of Middle East Affairs) without explaining why the others were not reasonably likely to contain responsive records. Dkt. 59 at 8 (forfeiting argument by citing evidence directly). But the other offices are not standalone entities; they exist within a given bureau or independent office. DSOF ¶ 83. So UASID's search of its Office of Middle East Affairs encompassed the offices Stevens says were not searched. DSOF ¶¶ 83-84.

Stevens says that USAID has declared that it searched its Mission in West Bank and Gaza but has not provided information about what files were searched. Dkt. 59 at 8 (forfeiting argument by citing evidence directly). USAID has now clarified that every staff member in that mission was tasked with searching for the term "Northwestern" in their Gmail, Desktop, "My Documents" folder, local drive, and shared drives. DSOF ¶ 85.

Stevens complains that, although USAID has declared that it searched its "M/CIO/IA" office, its Bureau for Asia, and its Office of Afghanistan and Pakistan Affairs, it has not asserted that it searched the locations reasonably likely to contain responsive documents. Dkt. 59 at 8. But again, good faith is both presumed and evident here. USAID explained that it searched *all* of its email accounts for the search term "@northwestern.edu" between 2000 and 2015 and returned 24,736 non-responsive results. DSOF ¶ 55. The Bureau for Asia has clarified that it searched its accounting system for the term "northwestern." DSOF ¶ 86. And the Office of Afghanistan and Pakistan affairs searched its electronic files using the keyword "Northwestern University." DSOF ¶ 56. All of this demonstrates good faith.

    5.  ICE

Stevens says that ICE omitted certain offices from its list of offices that maintain records. Dkt. 59 at 8-9 (forfeiting argument by citing evidence directly). The argument is odd, since the list was prefaced by the phrase "including but not limited to." DSOF ¶ 87.

Stevens complains that ICE offices and employees were tasked with searching files "most likely" to contain responsive documents instead of all files likely to contain responsive records. Dkt. 59 at 9 (forfeiting argument by citing evidence directly). But as explained above, cherry-picking a single instance of a declarant's use of "most likely" does not defeat summary judgment when the declaration otherwise shows that the agency conducted a reasonable search for all responsive records. DSOF ¶¶ 57-79.

Stevens complains that ICE's Enforcement and Removal Operations office did not search for PLAnet records because PLAnet is a database used by a different component. Dkt. 59 at 9 (forfeiting argument by citing evidence directly). The argument is difficult to comprehend: as ICE has explained, it asked its legal office to handle the search, the legal office assigned the task to the division responsible for the PLAnet database, and *ICE produced an Excel spreadsheet containing*

7

*what Stevens asked for*. DSOF ¶¶ 60-61.

### C. Search Process

Stevens says that the agencies' search process was insufficient because the agencies did not search in good faith. Dkt. 59 at 10. But good faith is presumed, *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and Stevens has not offered anything to overcome that presumption. She complains that the agencies moved for summary judgment despite being "on notice" that Stevens was not satisfied with the search results. Dkt. 59 at 12. But FOIA plaintiffs are often unsatisfied with what agencies produce. Summary judgment turns on whether the search was adequate, not whether the requestor is satisfied. *CREW v. VA*, 69 F.Supp.3d 115, 123 (D.D.C. 2014) (FOIA search's adequacy "is generally not determined by the fruits of the search").

#### 1. BBG, USGS, and ICE

Stevens says that BBG, USGS, and ICE did not provide information on what "search terms or filters" they used to search. Dkt. 59 at 10 (forfeiting argument by citing evidence directly). She offers no case law for the proposition that an agency must provide "search terms or filters" to comply with FOIA. FOIA requires agencies to conduct good-faith searches that are reasonably calculated to uncover all relevant documents, *Hart v. FBI*, 1996 WL 403016, *2 (7th Cir. July 16, 1996), which agencies may establish by reasonably detailed, nonconclusory affidavits describing their efforts. *Baker & Hostetler LLP v. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006). Here, all three agencies complied with FOIA: (1) BBG searched for D3 Systems contracts as requested and produced 1,501 responsive pages (DSOF ¶¶ 11-13), and the fact that BBG did not explicitly state that it used the search term "D3 Systems" is not a reason to deny summary judgment; (2) USGS searched its electronic filing system "by the contracts' identifying numbers" (DSOF ¶ 39), meaning that the contract numbers *were* the search terms; and (3) ICE voluntarily produced a spreadsheet containing the information Stevens requested, which does not implicate

8

the concept of a search term, and for its other productions, ICE explained what search terms it used. DSOF ¶¶ 58-64, 67-68, 74, 78.

### 2. HHS

Stevens complains that HHS has declared that no documents indicated the existence of a contractual relationship between HHS and David Senn, without explaining what was searched or why. Dkt. 59 at 6 (forfeiting argument by citing evidence directly). But it is undisputed that HHS had no contractual relationship with Senn during the relevant time period. DSOF ¶ 17. In her Local Rule 56.1 response, Stevens purports to dispute that statement on the ground that the "cited exhibits" do not support it. Dkt. 59-1 ¶ 17. But the exhibit HHS cited (DSOF Ex. B) *does* support the statement. Instead of pointing to evidence to the contrary, Stevens complains in her Local Rule 56.1 response that HHS does not "explain how" it concluded that no contractual relationship existed. Dkt. 59-1 ¶ 14. It is improper to include argument in a Local Rule 56.1 statement. *Grabianski*, 169 F.Supp.3d at 788 (Rule 56.1 statements are "not the proper venue" for "developing whatever 'spin' the parties wish to place on the facts"). If Stevens had any *evidence* showing that HHS and Senn had a contractual relationship, she needed to present it in her own Local Rule 56.1 statement, and she did not. *SafeCard Services*, 926 F.2d at 1200 (agency affidavits "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims").

Stevens also complains that HHS did not explain why it looked "only" for contracts between HHS and Senn when her request also sought records relating to "work requested of, performed by, or discussed" between HHS and Senn. Dkt. 59 at 6 (forfeiting argument by citing evidence directly). But HHS has explained that, in addition to searching for contracts, it searched for correspondence between HHS and Senn. DSOF ¶¶ 17-18 (should be deemed admitted). And Stevens seems to agree, since she also complains that HHS did not search for correspondence

9

between HHS and Senn's *representatives* in addition to correspondence between HHS and *Senn*. Dkt. 59 at 6 (forfeiting argument by citing evidence directly). But Stevens's request did not identify any of Senn's representatives, so it was reasonable for HHS to limit its search to correspondence containing Senn's email address. If the results had shown that one or more of Senn's "representatives" had also corresponded with HHS, then it might have been appropriate to broaden the search. But the court should reject Stevens's argument that HHS had an obligation to search for all correspondence containing the domain "uthscsa.edu." Dkt. 59 at 10. A search like that would encompass correspondence involving any of the presumably thousands of students and employees affiliated with the University of Texas Health Science Center at San Antonio. *See* http://www.uthscsa.edu. Searches need only be reasonable; FOIA does not require an agency to boil the ocean for any and all possibly responsive documents. *DiBacco*, 795 F.3d at 181 (agency "need not knock down every search design advanced by every requester").

Stevens also says that HHS did not declare that its IT department was tasked to search for text messages as she had requested. Dkt. 59 at 7 (forfeiting argument by citing evidence directly). But HHS has explained that it does not maintain records of text messages (DSOF ¶ 25 (should be deemed admitted)), so there would be no point in tasking the IT department to search for records that do not exist. Stevens also complains that, although HHS has stated that its IT department was directed to conduct a certain search, HHS has not stated that the IT department actually did so. Dkt. 59 at 10. But HHS explained that it tasked its IT department to conduct the search and that the agency's FOIA director received the results. DSOF ¶¶ 18-19 (not coherently or meaningfully disputed by Stevens). And to the extent that Stevens invites the court to review the declaration itself, her reading of it seems almost willfully obtuse. After the declarant describes the searches that she directed the IT department to perform, the very next sentence is, "I received the results of the search on December 13, 2018." DSOF ¶¶ 88-89.

10

Stevens also complains that HHS has not explained why it did not search for materials relating to contracts involving age assessments of unaccompanied children by Southwest Key. Dkt. 59 at 7 (forfeiting argument by citing evidence directly). But HHS plainly did search for related materials, because HHS produced the financial reports that Southwest Key submitted to HHS in connection with their cooperative agreements. DSOF ¶ 20. And Stevens seems to admit that HHS conducted searches for materials related to age assessments: elsewhere in her memorandum she complains that HHS has not explained which search terms relating to age assessments it used or provided enough detail in general. Dkt. 59 at 10 (forfeiting argument by citing evidence directly). But HHS provided extensive detail about the searches it performed, DSOF ¶¶ 15-25, and good faith is presumed. *Hart*, 1996 WL 403016 at \*2. An agency is entitled to summary judgment if it establishes that it conducted a good-faith search through a reasonably detailed, nonconclusory affidavit. *Baker & Hostetler*, 473 F.3d at 318. HHS did that here.

### 3. USCIS

Stevens says that FOIA required USCIS to use broader search terms than "Northwestern University" and "HSSCCG07J00120" (the contract number she asked for records about). Dkt. 59 at 11 (forfeiting argument by citing evidence directly). She says FOIA requires agencies to use broad search terms, not terms most likely to locate a single document or terms that don't take into account shorter terms or abbreviations. *Id.* (citing *Bagwell v. DOJ*, 311 F.Supp.3d 223, 229-30 (D.D.C. 2018) (requiring defendants to search for "Penn State" and "PSU" in addition to "Pennsylvania State University")). But an agency is held only "to a standard of reasonableness; as long as this standard is met, a court need not quibble over every perceived inadequacy in an agency's response." *Physicians for Human Rights v. DOD*, 675 F.Supp.2d 148, 164 (D.D.C. 2009). USCIS's search was reasonable here: it used numerous search terms in addition to "Northwestern University," and searched its contract office's entire "J: drive" for the contract

11

number Stevens requested. DSOF ¶¶ 28, 32. Stevens cites *Looks Filmproduktionen GMBH v. CIA*, 199 F.Supp.3d 153 (D.D.C. 2016), but that case supports USCIS's position: the court granted summary judgment to the agency, finding that the plaintiff's requested search terms "would likely produce a greater number of unresponsive documents than the more targeted search terms employed by the agency." *Id*. at 168. A FOIA plaintiff does not evade summary judgment simply because one search out of many was not as expansive as she wished. *DiBacco*, 795 F.3d at 191 (agency must "show that its search efforts were reasonable and logically organized to uncover relevant documents; it need not knock down every search design advanced by every requester").

### 4. USAID

Stevens says that USAID told its Israel mission not to include emails from staff members who were Northwestern alumni, emails those staff members had received from Northwestern, or emails about logistics of Northwestern faculty passing through Israel. Dkt. 59 at 11 (forfeiting argument by citing evidence directly). She says that USAID has not explained why it decided to exclude these emails or why it was reasonable to assume that no Northwestern alumni on staff could have worked on substantive matters involving Northwestern. Dkt. 59 at 11. But again, it is reasonable for efficiency reasons to craft a search to avoid turning up a sea of unresponsive documents. *Looks Filmproduktionen*, 199 F.Supp.3d at 168.

Stevens says that USAID searched for the term "Northwestern University" without using shorter terms like "NU" and "Northwestern." Dkt. 59 at 11 (forfeiting argument by citing evidence directly). She says that USAID has not established that its search term was expansive enough to be reasonably calculated to uncover all responsive records, so the court should order USAID to perform a new search using broader terms. Dkt. 59 at 11. She admits that a FOIA search need not be "perfect," *Amnesty Int'l USA v. CIA*, 2008 WL 2519908 (S.D.N.Y. June 19, 2008), but she says that to benefit from the presumption of good faith the agency must provide logical explanations

for its decisions. Dkt. 59 at 12. She cites *Garcia v. DOJ* for the proposition that the agency must identify the searched files and recite facts that enable the court to conclude that the appropriate files were searched. 181 F.Supp.2d 356, 368 (S.D.N.Y. 2002). She omits that the *Garcia* court granted summary judgment to the agency after finding that the agency's description of its search was sufficiently detailed. *Id*. The same result is appropriate here.

**III.    Text Messages, Screenshots, and Records Maintained by Contractors**

Stevens complains that HHS and ICE have asserted that they cannot search for text messages without explaining what efforts they made or why it is impossible. Dkt. 59 at 12-13. She says that "technical difficulty" is not an exemption that allows an agency not to produce information. Dkt. 59 at 13. But the agencies did not assert technical *difficulty*; they asserted technical *inability*. DSOF ¶¶ 25, 71. HHS and ICE have explained that FOIA does not require an agency to search records it cannot search. Dkt. 5 at 2. Stevens offers nothing in response other than to call the agencies' inability to search for text messages "suspicious" because Customs and Border Protection searches electronic devices during border crossings and has the ability to search data from "foreign nationals and ordinary Americans." Dkt. 59 at 13 (forfeiting argument by citing evidence directly). She says that ICE's Enforcement and Removal Operations office has the ability to search cell phones as part of its investigative activity, and she says that the agencies have not made a "showing" that they cannot search for text messages (which is false, *see* DSOF ¶ 71), and that a preference not to do so is not a ground for "disregarding their archiving and/or FOIA obligations." Dkt. 59 at 13-14. The reference to "archiving" is a red herring; as the agencies have already explained, a FOIA lawsuit is not the proper vehicle for alleging a Federal Records Act violation. Dkt. 55 at 3. And although Stevens says that the agencies needed to provide more specificity about their inability to search for text messages, the case she cites has no apparent relevance. *Defs. of Wildlife v. Dep't of Ag.*, 311 F.Supp.2d 44, 55 (D.D.C. 2004) (not enough for

13

agency to assert simply that deputy undersecretary saw FOIA request and stated that he had no responsive documents).

FOIA applies to information maintained for an agency by an entity under government contract for the purposes of records management, 5 U.S.C. § 552(f)(2)(B), and Stevens says that such information exists here, where "an agency relinquishes possession of agency records to a contractor for the purposes of records management." Dkt. 59 at 14. But HHS has already explained that it had no contractual relationship with Senn during the requested time period, and nothing suggests that Southwest Key maintained any invoices for HHS for the purpose of records management. Dkt. 55 at 3-4.

## IV. Withholdings

Stevens says that the agencies have withheld records and redacted portions of other records without justification. Dkt. 59 at 15. She says that it is the agencies' burden, not her burden, to justify withholdings or redactions, and she says that she cannot challenge the basis of any redactions or other withholdings unless the agencies provide a *Vaughn* index or other explanation. Dkt. 59 at 16. But as the agencies have explained, Stevens has waived any challenge to the agencies' withholdings in this case. Dkt. 55 at 15. The parties reported in January 2020 that Stevens would be filing a motion to compel regarding whatever remaining issues she had with the agencies' productions, including "some search adequacy objections" and "possible redaction issues." DSOF ¶ 91; *see also* DSOF ¶ 90 (asking for leave to "file a motion to compel to address the deficiencies in productions *and the redactions*"). When Stevens's motion did not substantively discuss any redaction or other withholding issues, the parties' attorneys conferred and Stevens's counsel clarified that she was not challenging any withholdings. DSOF ¶ 80.

Stevens purports to dispute DSOF ¶ 80 in her Local Rule 56.1 response, but the evidence she cites shows exactly what DSOF ¶ 80 says: that her counsel clarified that Stevens was not

14

challenging any withholdings. Dkt. 59-1 ¶ 80 (asserting that defense counsel asked, "Just confirming our understanding from the call that exemptions and redactions are not at issue in this case, and what is at issue per the motion [to compel] are adequacy of the search issues," and that Stevens's counsel responded, "Yes, the motion to compel we filed does not challenge any redactions/exemptions applied.").

The court has expressed its desire not to engage in multiple rounds of briefing to resolve this case. DSOF ¶ 92 (Mr. Kolluri: "The last thing the government would want is multiple rounds of briefing . . . ." The Court: "No, we're not doing that."). But if the court were to find that Stevens has not waived this issue, then the court should allow the agencies to file a renewed motion for summary judgment justifying the redactions and other withholdings. The agencies relied on Stevens's counsel's representations in preparing their summary judgment memorandum and should not be prejudiced for having done so.

## Conclusion

For the reasons above, and for the reasons in the agencies' response to Stevens's motion to compel and memorandum in support of summary judgment (Dkt. 55), summary judgment should be granted in defendants' favor.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov