UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, )<br>)<br>          Plaintiff )<br>)<br>                             )<br>     v.                   )<br>)<br>BROADCASTING BOARD OF )<br>GOVERNORS et al. )<br>)<br>         Defendants ) | No. 1:18cv05391<br><br>Hon. Judge Rowland |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO COMPEL <u>and</u> RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Stevens hereby responds to Defendants' second Motion for Summary Judgment to address Defendants' deficient searches and unreasonable, overly broad, and impermissible withholding of scores of responsive documents. Attached to this response are a memorandum of law, a response to Defendant's statement of undisputed material facts and Plaintiff's Additional Statement of Facts, the declaration of Nicolette Glazer Esq. and exhibits annexed thereto, and the declaration of Jackie Stevens. Plaintiff respectfully requests that the Court deny Defendants' motion for summary judgment and order them to conduct an adequate search and to produce all responsive documents.

                                                                     Respectfully Submitted by
                                                              _____/s/ *Nicolette Glazer*_____
                                                              Nicolette Glazer Esq. CSB209713
                                                              Law Offices of Larry R Glazer
                                                               1999 Avenue of the Stars #1100
                                                               Century City, CA 90067
                                                               T:310-407-5353
                                                               F:310-407-5354
                                                               nicolette@glazerandglazer.com

## MEMORANDUM OF POINTS AND AUTHORITIES

The Freedom of Information Act (FOIA) mandates that government agencies make requested records available to any person unless one of nine narrow exemptions applies. 5 U.S.C. §552(a)(3)(A). The Act places the burden on the agency to demonstrate that it has conducted a good faith and reasonable search for the 'agency records' requested and to justify any withholding or redaction in the production. *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 220 (D.C. Cir. 2013). While government agencies are permitted to withhold from disclosure certain information that falls within one of the FOIA's nine exemptions, these exemptions are to be narrowly construed to promote the statute's broad disclosure policy. *In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992). Furthermore, federal courts may review agency action to determine whether the agency properly withheld the information, 5 U.S.C. §552(a)(4)(B), not blindly afford deference to the agency reasoning, *City of Chicago v. A.T.F.*, 423 F.3d 777 (7th Cir. 2005). To justify summary judgment, Defendants have the burden to make two showings: (1) that each search was adequate and (2) that any withheld document falls within an exemption to FOIA. Defendants have again failed to carry their burden on either issue; summary judgment should be denied.

I. **Defendants' Searches Remain Inadequate as a Matter of Law and Fact.**

An agency bears the burden to "show beyond material doubt that it has conducted a search reasonably calculated to uncover **all** relevant documents." *Nat'l Day Laborer Org. Network v. U.S. Immigration & Customs Enf't Agency*, 877 F. Supp. 2d 87, 95 (S.D.N.Y. 2012) (citation omitted, and emphasis added). In a Rule 56 adjudication in the FOIA context, at all times the burden is on the agency –not on the requester-- to establish the adequacy of the search. *Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995). To determine whether the search in response to a FOIA request was done in good faith and the agency had used methods reasonably calculated to produce *all* responsive documents, this Court must consider: (1) the search terms and the type of search performed; (2) the nature of the system(s) or database(s) searched; and (3) whether the search was "logically organized". *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (It is an agency's

"burden to show that its search efforts were reasonable and logically organized to uncover relevant documents.")

Defendants' sole support in seeking summary judgment are three new declarations, (Dkt 86, exhibits A, D, I,), three amended declarations, and their original versions, (*Id*. at Exhibits B, C, E, F, G, H). Defendants have not produced the actual search indices used in responding to the FOIA requests nor the records documenting the performed searches.

### A. *The searches performed in response to this Court's first MSJ decision are still deficient.*

1. **The Search Locations**

To satisfy its FOIA obligations, an agency need not search every place-responsive records might exist; rather, an agency needs to focus its search to those places that are reasonably likely to yield *all* relevant records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Despite being given notice of the deficiencies in their prior submissions, USAGM, HHS, USCIS, and USAID have each failed again to describe their respective databases and search methods in reasonable detail.

When an agency relies on sworn declarations to establish the adequacy of its search, those declarations "must be 'relatively detailed and non-conclusory.'" *Serv. Women's Action Network v. Dep't of Def.*, 888 F. Supp. 2d 231, 240-41 (D. Conn. 2012) (quoting *SafeCard*, 926 F.2d at 1200). The agency's declarations "must detail files searched and the general scheme of the agency file system," *id*. at 245, and they must "describe in reasonable detail the scope of the search and the search terms or methods employed," *id*. at 241. The Amended declarations in this case are insufficient to support summary judgment because each fails to describe the respective agency's general file system and fails to provide remotely reasonable detail about the scope and methods of their searches. (Response to Defendants' Statement of Facts [RDSOF] at 3, 6, 15, 26, 36, 37, 50); Plaintiff's Statement of Additional Facts [PSAF] at 1.) Defendants' failure to describe each of their recordkeeping scheme and the specific databases in which information is stored makes it

3

impossible to determine whether each Defendants has searched the specific databases within each component likely to contain all responsive records. For example, Mr. McLaren explained in his declaration that the employees who conducted the actual searches had left the agency. (RDSOF 12). He asserts that based on his own knowledge of where the agency retains contracts and how it conducts searches, the only methodology those departed employees would have used is to search in a "Momentum" search database and in "another system" for contracts before 2010. *Id*. Yet, Mr. McLaren failed to describe the agency's general recordkeeping system and how those two systems fit within the agency recordkeeping. Even if those two databases were the only ones searched, there is no way for the Court to determine that it was reasonable for the search to have been limited solely to those two database segments. Of note: after the agency's own FOIA Appeal Committee found the initial search deficient, the agency found 1**,487 additional pages** of responsive records but withheld in full 1,213 of them. Mr. McLaren elected not to even address where those 1,487 pages were found. (RDSOF 13, 14, PSAF 2). That the second search was clearly deficient is confirmed by Mr. McLaren: despite the agency being told to search for emails by the Appeals Committee, somehow, in conducting yet another search in 2021 – this time only for emails -- Mr. McLaren found 65 additional pages of responsive emails mentioning D3 Systems Inc. (PSAF 3). Although he conducted the 2021 search using expanded search terms, *Id.*, in an unidentified location where emails are kept by the agency, he did not conduct a similar expanded search for "system records, reports, draft reports, and notes" as the appellate unit had directed. *Id.* Nor does he explain where such records would be kept or describe 133 pages withheld. (PASF ¶4).

      Ms. Smith, on behalf of HHS, does not even attempt to explain the recordkeeping practices of the agency or the system of records used by the agency and its various units. (Exhibit B to Dkt 86) She declares in a conclusory fashion that ASPA "concluded" that there are no documents "indicating that a contractual relationship existed between HHS and Prof. Senn". (RDSOF26-27; PSAF 8-9). No details were provided in the declaration as to how that determination was made and what if any, searches were conducted and where. In her 2022 Declaration, Ms. Smith elaborated that the determination was made after a search in the "PSC network drive", (Dkt 86 Exhibit C ¶6),

no further details were provided. Similarly, according to the original Smith Declaration OGM "confirmed" it did "not receive or maintain" invoices "or other records documenting expenditures made by Southwest Key." (Dkt 86, Exh. B ¶12; PSAF 10) No details were provided as to how the 'no-records' determination was made and what if any searches were conducted by OGM and where. *Id*. Ms. Smith conveys her conversations with various agency employees but there is no information provided as to how Ms. Sebgoya was able to confirm that ORR did not enter into a contract with Prof. Senn: he conducts the age assessment not as 'a medical provider' but as a forensic investigation at the request of ICE. (PSFA 8-10) She also did not explain where the HSS IT group searched for emails or other "correspondence" with Professor Senn. (RDSOF 27 (Decl ¶14) No details have been provided as to where emails are stored by the agency or where written paper correspondence is kept. *Id*. In her amended declaration she simply declares that the IT group searched "in the email files of the ORR's Federal Field Specialists". (RDSOF 27( Decl. ¶9)).

    Ms. Munita, in turn, explains in her declaration that to conduct the supplemental search ordered by this Court, USCIS personnel familiar with "their computerized databases" searched in four such databases: SAS, AVANT. CRM, WebHQ. (PSAF 13). No details have been provided to this Court as to the system of records maintained by USCIS in general and as such, there is no way for the Court to conduct a meaningful review to determine that in fact, these four databases "were reasonably likely to contain responsive records." *Id*.

    Passing reference to 'personal files', 'shared drives, and 'email files' does not, however, fulfill Defendants' obligation *to explain* what databases it maintains, how it selected the ones that were searched in response to Plaintiff's requests, and what type of documents the searched databases contain. Several out-of-circuit district courts have rejected as insufficiently detailed agency declarations that tracked the declarations presented regarding the searched databases. In *Vietnam Veterans*, the Court determined that a FOIA officer's declaration was inadequate because she "state[d] that computer hard drives, shared drives, and email accounts were searched," but did not explain "whether there are other electronic files which were not searched, and if there are, why they were not searched." *Vietnam Veterans v. DHS*, 8 F. Supp. 3d 188, 221 (D. Conn.

2014); *Eberg v. Dep't of Def.*, 193 F. Supp. 3d 95, 109 (D. Conn. 2016) (agency declaration was inadequate where declarant stated that he "searched electronic databases with Share Drives on the Non-secure Internet Protocol Router Network (NIPRNET) allocated to" his office but failed to "explain how his office's files are organized into the NIPRNET, identify the names or number of databases he searched, or describe the types of files kept in or fields used by the databases he searched."). The *El Badrawi* court explained that a FOIA declarant must "attempt to describe the general scheme of [an agency's] file system" and provide "for example, a list of databases to which [the agency] has access and a delineation of what types of records each database contains." *El Badrawi v. DHS*, 583 F. Supp. 2d 285, 300 (D. Conn. 2008) ("The lack of such disclosure stymies El Badrawi's ability to advocate his position and does not meet the 'relatively detailed and nonconclusory' standard adopted by the Second Circuit."). This Court should adopt this approach to promote and accomplish the Act's remedial nature and the Congressional mandate of broad disclosures. Here, Defendants' failure to describe its recordkeeping scheme makes it impossible to determine whether each Defendant searched all databases likely to contain responsive records and complied with the Court's prior order. *Campbell*, 164 F.3d at 28 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) ("[A]n agency 'cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'").

  Defendants may argue in reply that agency action is presumed valid. But accepting government assertions at face value while requiring the requester to produce specific evidence to show Government's failure would be in sharp tension with FOIA's general presumption in favor of disclosure and the Government's allocated burden of proof. FOIA instructs courts how to approach ambiguity: in favor of disclosure. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 362 (2012) (concluding that FOIA is one of the "rare[]" statutes for which a narrow construction of exceptions is justified), *Dep't of the Air Force v. Rose*, 425 U.S. 352, 366 (1976) ("FOIA requires us to choose that interpretation most favoring disclosure."); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 164 (1989) (Scalia, J., dissenting) ("[O]ur doctrine of 'narrowly construing' FOIA exemptions requires . . . ambiguity to

be resolved in favor of disclosure."). Yet, the presumption in favor of disclosure would be absorbed if the Court adopts an expansive presumption of good faith in government action under the circumstances of this case. A presumption of "good faith" and/or differential review of a self-serving declaration of a single FOIA official far removed from the actual search process eviscerates the "de novo" review imposed by the Act itself. 1 JAMES T. O'REILLY, FEDERAL INFORMATION DISCLOSURE § 8:22, at 630 (Winter 2018) ("Deference to the findings of an expert agency has a part to play in virtually all administrative law controversies, except a FOIA case."); Christina E. Wells, "National Security" Information and the Freedom of Information Act, 56 ADMIN. L. REV. 1195, 1208 (2004) ("Although purporting to apply de novo review, [courts] effectively apply something less."). Applying blanket deference prevents the Court from weighing evidence and assessing credibility, including delays and demonstrable errors. (RDSOF at 64-66.)

    2. **Defendants have violated the Court's prior order.**

First, in its prior decision, the Court noted that HSS while claiming that no contracts with Prof Senn exist, has provided no information how it reached the decision and that the declaration submitted in support of the first motion for summary judgment "d[id] not list, for example, the files searched or the search terms used." (Dec. at 16). Ms. Smith asserts that she contacted Mata Sebgoya and conveys the assertions of various ORR employees claiming that no contractual relationship with Prof. Senn. In violation of the prior Court order Ms. Smith does not identify the process Mr. De La Cruz and Ms. Sebgoya used to reach their conclusions, what databases were searched, why said databases were selected, and what search terms were used. (PSAF at 8-9; Compare Smith' Suppl. Decl ¶¶ 6(listing search terms) and 7 (no details). The Declaration, however, does not explain the search process used to "confirm" that no records responsive to Stevens' broad request exist. The assertions of fact disregard the scope of records requested and defy credulity. (PSAF at 10-13). Senn told Stevens ORR was paying his university for his services. (PSAF at 10). Further, ORR produced a record from a third-party paying for the radiographic analysis. (Id.) On what authority would firms be billing and paying for services rendered by Senn and others without some form of contract or agreement? If obligated by the shelters, the contracts obligate these records to be provided to ORR. (Id.)

*Second,* the Court ordered that Defendants USCIS and USAID perform searches using "NU" and NWU" or explain the "good structural reason why only "Northwestern University was used as a search term." Decision at 20, 23. The original USAID declaration detailed the production made to Plaintiff, (Dkt 86 at 910, ¶¶ 7-10) but did not explain the search methods used to retrieve the records, Id. In the Supplemental Declaration USAID asserts that the "entire Gmail Vault" was searched using the terms "NWU", "NU", and "Northwestern". (RDSOF 50). The search retrieved the following "returns"

NWU: 30,747 "items"

Northwestern 1,486,618 "items"

NU: 1, 350, 410 items (Id.)

The declaration describes the burden in presenting a sampling but disingenuously uses the largest retrieval of 1,486,618 (Northwestern) but fails to explain the actual burden to sample the "NWU" items which are a mere 2% of the seize for "Northwestern". Nor does the declaration explain why the "NU" search term cannot be complemented with a restrictive term corresponding to the requested documents. The Mission in the West Bank and Gaza refused to perform an additional search because of some unidentified "grave concerns about potentially crashing the Mission network" (RDSOF 55). No explanation was given, and none is apparent why a search for NWU would crash the system but a search for Northwestern would not. The Mission in Pakistan was able to conduct the search. (Id. at 56).

*Post hoc* rationalizations are not properly credited even in deferential APA/NEPA review. *LLPs v. U.S. Army Corps of Engineers*, CIVIL ACTION 06-0587-WS-C, at *40 n.44 (S.D. Ala. Aug. 29, 2008). They have no place in a FOIA adjudication.

### 3. The Search Process

Defendants who were ordered to perform supplemental searches have also not established the adequacy of their respective search processes. Although an agency possesses discretion in fashioning the search criteria, this discretion is not unfettered. "It is clear beyond cavil that 'an

agency has a duty to construe a FOIA request liberally,' and that it must 'select the interpretation that would likely yield the greatest number of responsive documents.'" *Rodriguez*, 236 F. Supp. 3d at 36; *Conservation Force v. Ashe*, 979 F. Supp. 2d 90, 102 (D.D.C. 2013)). Consistent with this longstanding obligation, "an agency is not permitted to deny requesters information by narrowing the scope of its search to exclude relevant information." *Nat'l Sec. Counselors v. CIA*, 849 F. Supp. 2d 6, 12 (D.D.C. 2012). Defendants have ignored these obligations altogether: they failed to complete good faith searches and by providing deficient declarations are now attempting the prevent this Court from performing a judicial review of their actions. (RDSOF at 15-17, 26-30, 37, 48, 50,56-57; FSAF 3, 8-11, 13, 15-16).

### B. Defendants have not Discharged their Burden to Justify Withholding Responsive Records and Redacting the Majority of the Produced Records under FOIA exemptions.

An agency may only withhold records responsive to a FOIA request if the withheld information is exempt under FOIA. 5 U.S.C. § 552(b). To justifiably withhold responsive records, an agency must provide "reasonably detailed explanations why any withheld documents fall within an exemption." *Carney* , 19 F.3d at 812. While a *Vaughn* index is a common device used by agencies to meet this burden of proof, *Vaughn v. Rosen,* 484 F.2d 820 (D.C. Cir. 1973), a court may also award summary judgment on the basis of information provided in affidavits. Such affidavits must, however, "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and [may not be] controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981)

#### 1. Exemption 4 was improperly invoked

USAGM and USCIS have asserted that all 15 of the USAGM responsive surveys and much of the D3System contract have been properly withheld because the information is protected

from disclosure by FOIA Exemption 4, which "shields from mandatory disclosure [trade secrets and] commercial or financial information obtained from a person and [that is] privileged and confidential.' " *Argus Leader* , 139 S. Ct. at 2362 (quoting 5 U.S.C. § 552(b)(4) ). Exemption Four involves a tripartite test: (1) The information for which exemption is sought must be a trade secret or commercial or financial in character; (2) it must be obtained from a person; and (3) it must be privileged or confidential." *Id.* Plaintiff does not challenge the "person" aspect and no assertion of trade secrets has been made, thus at issue is whether the information in the records is (a) commercial and (b) confidential or privileged. It is not. *First*, as a general rule, courts typically find records to be commercial if they "reveal basic commercial operations, such as sales statistics, profits and losses, and inventories, or relate to the income-producing aspects of a business." *Plumbers & Gasfitters Loc. Union No. 1 v. U.S. Dep't of Interior* , No. 10-CV-4882, 2011 WL 5117577, at *2 (E.D.N.Y. Oct. 26, 2011) (citation omitted). But here the Vaughn indices do not provide enough information for the Court to conclude that such is the information at issue. (RDSOF 21-22, 43, PSAF 5 *Public Citizen v. U.S. Department of Health & Human Services* , 66 F. Supp. 3d 196 (D.D.C. 2014), a case involving the government's withholding of annual reports submitted by pharmaceutical companies to HHS, is instructive. In *Public Citizen*, the specific records at issue were "disclosure log summaries," which, among other things, "identify and describe interactions with prescribers, consumers, and other customers of [the pharmaceutical company's] various healthcare products, all vital business functions for [the company]." *Id.* at 208. Importantly, the summaries contained "details of identification and techniques related to [the company's] product promotion, its Code of Business Ethics, and compliance with industry guidelines in general." *Id.* Another company's Disclosure Log Summaries included information "about how [the company] compensates and disciplines its employees, details about internal investigations of the matters reported, ... along with activities such as promotional statements, call planning activities, sample distribution, travel and expense, and other interactions between sales representatives (or other [company] employees) and doctors, health care providers, and customers." *Id.* (cleaned up). The D.C. district court deemed the disclosure log summaries

commercial because the information contained within them was "sufficiently 'instrumental' to the companies' operations to qualify as 'commercial,' " given the "information about interactions between the companies' salespeople and customers, how the companies promote their products, and the way the companies implement their compliance programs." *Id.* Such critical details are missing from the declaration and Vaughn indices presented by USCIS and USAGM. In fact each line item here contains the same formulaic and ambiguous generalization that deprives the Court from performing a de novo review of the withholdings made.

2. **Exemption 5 was improperly invoked.**

Exemption 5 applies to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Not all agency records, however, are memorandums or letters. Consideration of the scope of Exemption 5 starts with its text. *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2362 (2019). In contrast to Exemption 5, other FOIA exemptions do apply more broadly to "records or information," 5 U.S.C. §552(b)(7), or to "information and data," id. §552(b)(9). If Congress intended any agency record or information to be eligible for potential withholding under Exemption 5, it clearly knew how to so specify. *Rojas v. Fed. Aviation Admin.*, 927 F.3d 1046, 1055 (9th Cir. 2019) ("[I]f Congress intended Exemption 5 to extend to all 'agency records,' it would have used that term, 5 U.S.C. §552(f)(1), (2), rather than the narrower 'inter-agency or intra-agency memorandums or letters,' §552(b)(5)."). In addition, the Supreme Court has interpreted this provision to "exempt those documents, and only those documents that are normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

The deliberative process privilege protects records that are **both** predecisional and deliberative. *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7 (D.C. Cir. 2014). A document is predecisional if it is "generated before the adoption of an agency policy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Here, none of the documents were pre-decisional as they do not pertain to the formation or adoption of an official agency policy and do not pertain to

any agency adjudication. (RDSOF 23, 68; PSAF 7, 19) Rather, the emails are routine communications regarding regular agency activities. A document is deliberative if "it reflects the give-and-take of the consultative process. The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" on policy matters. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980). Here, the challenged documents appear to be ordinary intra-agency correspondence divorced from any deliberative process tending to the agency's policy-making or adjudicative functions. To the extent that any document withheld is a communication *after* an announcement of a final decision on any of the underlying issue, those records would not be considered pre-decisional. *Nat'l Council of La Raza*, 411 F.3d at 356-57 (2d Cir. 2005).

  The question for attorney-client privilege assertions "is always whether the 'primary' or 'predominant purpose' of the communication is to render or solicit legal advice." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 181 (N.D. Ill. 2018). Here Defendants' invocation of the attorney-client is misplaced because: (1) rendering/receiving legal advice is not the primary purpose of the withheld communications; and (2) those communications were not kept confidential. It is well settled that documents are not automatically privileged just because an attorney is a recipient or author, here the ICE *Vaughn* index descriptions are too vague to meet the government's burden. This is especially so, in light of the fact that ICE has now unredacted most of its own agreed-upon sample. It is obvious that what ICE had withheld under exemption 5 are factual narratives and "messaging communications." *New York v. U.S. Dep't of Commerce*, No. 18-CV-2921 (JMF), 2018 WL 4853891, at *2 (S.D.N.Y. Oct. 5, 2018) (ordering disclosure of draft responses to Congress and the *Washington Post*); *Am. Civil Liberties Union of Mass., Inc. v. U.S. Immigration & Customs Enf't*, No. CV 19-10690-LTS, 2020 WL 1429882, at *6–7 (D. Mass. Mar. 24, 2020) (ordering disclosure of draft talking points, email communications, and a draft agenda). These cases conclude "that 'messaging' communications *can* be protected by the deliberative process privilege," but not "*all* deliberations over what to say are protected." *New*

*York*, 2018 WL 4853891, at *2. Given that agencies are in constant communication with the press, public, and Congress, the privilege must have limits. Accordingly, messaging communications are protected if they "reflect[ ] the give-and-take of the consultative process" and were "prepared to facilitate and inform a final decision or deliberative function entrusted to the agency." *Providence Journal Co. v. U.S. Dep't of Army*, 981 F.2d 552, 559–60 (1st Cir. 1992); *Am. Ctr. for Law and Justice v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 172 (D.D.C. 2018) (applying privilege to parts of emails discussing responses to media inquiries about a meeting that was the subject of a DOJ investigation); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 207–08 (D.D.C. 2010) (applying privilege to communications regarding agency's response to congressional and press inquiries related to specific investigations and prosecutions). Messaging communications are not protected where the "communications amount to little more than deliberations over how to spin a prior decision, or merely reflect an effort to ensure that an agency's statement is consistent with a prior decision." *New York*, 2018 WL 4853891, at *2. In response, ICE may argue that that some of the documents it has withheld contain draft responses, meaning they are inherently not-yet-finalized and, therefore, entitled to protection. But the fact that a document itself might not be finalized (is labeled as a draft, has redlines, or contains comments) does not "automatically exempt it from disclosure." *See New York Times Co. v. U.S. Dep't of Def.*, 499 F. Supp. 2d 501, 515 (S.D.N.Y. 2007) (ordering disclosure of draft documents). The heart of deliberative process privilege analysis is how the document relates to the agency's statutory purpose and decisionmaking process. ICE must show that the messaging communications are so "intimately bound up with [the] agency's central policy mission" to warrant protection. *New York*, 2018 WL 4853891, at *2. ICE does not and cannot make that showing here. It is not surprising that right before filing its motion ICE produced most of its sample unredacted. The unredacted version raise significant questions as to how much of the remaining 8,000 pages were similarly improperly redacted under b5. (PSAF at 26.) Such a guesswork has no place in FOIA adjudication. The agency has failed to meet its heavy burden of proof and production.

3. **Exemption 6 was improperly invoked.**

Exemption 6 generally protects personal information contained within government records pertaining to individuals whose private information is not a public concern. The threshold requirement for nondisclosure under Exemption 6 is that the withheld information must be contained in "personnel and medical files and similar files." 5 U.S.C. §552(b)(6). Courts have refined the types of information that are considered "similar files," excluding from its scope records that are predominantly related to the business of government. *Aguirre v. SEC*, 551 F. Supp. 2d 33, 54 (D.D.C. 2008) ("Correspondence does not become personal solely because it identifies government employees."). Here, Plaintiff challenges ICE and other Defendants' withholding of email's domains and names of individuals to whom emails are sent directly or when copied. (RDSOF 15, 20, 22-23, 31, 42) Neither the domain identifier of an employee's email address nor the names of ICE employees or contractors are, however, deserving of protection under Exemption 6. *Hopkins v. Department of the Navy*, Civil No. 84-1868, slip op. at 4 (D.D.C. Feb. 5, 1985) (release of names and official duty addresses of Marines stationed at Quantico, Virginia would not constitute invasions of personal privacy because it "would disclose nothing about any of the individuals listed other than the fact that they are members of the armed services, which is itself a matter of public record"); *National Western Life Insurance Co. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) ("It cannot be seriously contended that postal employees have an expectation of privacy with respect to their names and duty stations."); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (finding that employee names and work telephone numbers are dissimilar to personnel or medical files, but also note that the information is publicly available through the Office of Personnel Management, thus abrogating any invasion of privacy). Furthermore, information about federal employees not employed in law enforcement, including their names, present and past titles, grades, salaries, and job descriptions, is considered public information by regulation. *See* 5 C.F.R. §293.311 (providing that the name, title, and position of a federal employee is public record); *see also J v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763-65 (1989). A fortiori exemption 6 cannot be used to redact the titles of HSS employees and contractors.

Where, as here, there is no valid expectation of privacy in the information, there will be no privacy interests at stake for the purposes of Exemption 6.

Moreover, here Plaintiff is not seeking the information for the 'sake' of just having it. *See Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 158 (2004). Rather, Stevens is seeking the information to determine and analyze the extent to which ICE and its leadership has engaged in cover-up and have distorted the facts about age assessments, the $1 work program, the citizenship memoranda, and/or has misrepresented the actual facts to the media, courts, Congress, and the public at large. (Stevens Decl.) Under the "significance" test, courts have allowed the disclosure of details regarding government misconduct by high-ranking officials. *Dobrowski v. FCC*, 17 F.3d 275, 280 n.4 (9th Cir. 1994) (noting that "lower level officials . . . generally have a stronger interest in personal privacy than do senior officials"); *Trentadue*, 501 F.3d at 1234 ("The public interest in learning of a government employee's misconduct increases as one moves up an agency's hierarchical ladder."); *Perlman v. DOJ*, 312 F.3d 100, 107 (2d Cir. 2002) (finding that investigation of INS General Counsel for preferential treatment was of significant public interest due to his high status in the agency); *Am. Immigration Lawyers Ass'n v. EOIR*, 830 F.3d 667, 674-76 (D.C. Cir. 2016)(rejected a blanket redaction of the names of immigration judges who have had complaints filed against them). In sum, the names and email domains redacted here are not akin to personnel or medical files. The emails at issue are mostly "mundane interoffice communications that do not contain any detailed personal information." *Families for Freedom v. U.S. Customs & Border Prot.*, 837 F. Supp. 2d 287, 301 (S.D.N.Y. 2011).

### C. Segregation

When documents contain information subject to exemptions, the agency must segregate out and release any portions of those documents that consist of "purely factual material . . . in a form that is severable without compromising the private remainder of the documents." *E.P.A. v. Mink*, 410 U.S. 73, 91 (1973) superseded in part on other grounds by 1974 amendments to FOIA. Even if Defendants had adequately identified these documents and established that they contain material subject to Exemption 4 and 5, that would not end the matter, because Defendants has not shown

that these documents contained no non-exempt factual material that could have been segregated and released. *Mink*, 410 U.S. at 91. With the exception of the ICE declaration, no other Defendant even addressed segregation much less provided details for this Court to conclude that a segregation analysis was conducted at all. Thus, there is a genuine dispute as to whether Defendants are using Exemptions 4 and 5 to withhold entire documents that should be fully or partially released. Additionally, some of the partial withholdings that Defendant does list in the Vaughn index lack sufficiently detailed explanations to establish that these withholdings are proper.

CONCLUSION

The Court should deny Defendants' motion and order a bench trial.

Respectfully Submitted by
_____/s/ *Nicolette Glazer*_____
Nicolette Glazer Esq. CSB209713
Law Offices of Larry R Glazer
1999 Avenue of the Stars #1100
Century City, CA 90067
T:310-407-5353
F:310-407-5354
nicolette@glazerandglazer.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 6 June 2022 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all parties' registrants by operation of the Court's electronic filing system.

LAW OFFICES OF LARRY R. GLAZER

_____*s/ Nicolette Glazer Esq.*_____

Nicolette Glazer