## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JACQUELINE STEVENS,

Plaintiff,

v.

BROADCASTING BOARD OF
GOVERNORS, ET AL.,

Defendants.

Case No. 18-CV-5391

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Stevens filed a lawsuit under the Freedom of Information
Act (FOIA), 5 U.S.C. § 552, seeking to compel disclosure of records relating to various
FOIA requests she submitted to a number of federal agencies. This Court previously
addressed the adequacy of the agencies' searches in a prior summary judgment
opinion, finding that some agencies did not conduct an adequate search or failed to
explain their search processes. [72]. Defendants believe they have cured those
deficiencies and thus now renew their motion for summary judgment, arguing that
they have performed legally adequate searches and that they properly withheld
information under certain FOIA exemptions. [84]. For the reasons explained below,
this Court grants Defendants' motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a
matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND

This Court takes the following facts from Defendants' statement of facts (DSOF) [86], Plaintiff's response to Defendants' statement (PRSOF) [89-1]. This Court also reviewed Plaintiff's statement of additional facts [89-1], and Defendants'

response to Plaintiff's statement [92], but did not find that they contained any material facts pertinent to the analysis. This Court presumes familiarity with, and incorporates by reference, its prior summary judgment ruling [72].

## I. The Parties

Plaintiff Jacqueline Stevens is a professor at Northwestern University. DSOF ¶ 3. Defendant Broadcasting Board of Governors (BBG) is a federal agency from which Plaintiff has sought information via FOIA. *Id.* ¶ 4. In 2018, BBG changed its name to U.S. Agency for Global Media (USAGM). *Id.* Defendant Department of Health and Human Services (HHS) is an executive branch department from which Stevens has sought information through FOIA. *Id.* ¶ 5. Defendants U.S. Citizenship and Immigration Services (USCIS), U.S. Geological Survey (USGS), U.S. Agency for International Development (USAID), and Immigration and Customs Enforcement (ICE) are also federal agencies from which Stevens has served FOIA requests. *Id.* ¶¶ 6–9.

## II. The FOIA Request to USAGM

Plaintiff submitted a FOIA request to USAGM in June 2016, seeking:

> D3 Systems, Inc. contracts (including addenda) and work products associated with these contracts produced since January 1, 2003. This includes but is not limited to background information and work status updates shared with or received from D3 Systems, Inc. and its employees or subcontractors, email, system records, reports, draft reports, and notes.

*Id.* ¶ 10. According to James McLaren, Acting Deputy General Counsel of USAGM, the FOIA office sent Plaintiff's request to employees Carol Prahl and Bill Bell, and also to Cherlynn Peters of USAGM's Contracts Office. [86] at 20. The FOIA Office

sent a total of 123 responsive pages to Plaintiff. *Id.* McLaren attests that, based on his knowledge of how USAGM retains contracts and conducts searches for FOIA requests, there is only one methodology the employees could have used: they searched for "D3 Systems" by vendor code within "Momentum," a search database available to the Agency since 2010. *Id.* The same search conducted today, according to McLaren, yields all D3 Systems contract actions. *Id.*

Plaintiff timely appealed but did not contest the adequacy of the original searches conducted by the FOIA office. *Id.* at 21. On October 16, 2017, the agency's FOIA Access Appeal Committee granted Plaintiff's appeal, finding that the Contracts Office failed to search for all the background information and work status updates shared with and/or received from D3 Systems. *Id.* The Contracts Office completed a supplemental search on June 17, 2018, which produced 1,487 additional pages, of which USAGM withheld 1,195 pages under FOIA exemptions (b)(4), (b)(5), and (b)(6). *Id.*; DSOF ¶ 14. After this Court's 2021 summary judgment ruling, USAGM further searched its emails and found 65 pages that either mention D3 Systems, were shared with D3 Systems, or discuss internally any contract that D3 Systems was invited to bid on, even if D3 Systems were not ultimately awarded the contract. DSOF ¶ 15. McLaren used the following search parameters: "BBG59-C-10-0104," "BBG50-P-15-0859," "BBG50-P-16-0599," "D3 Systems," "Intermedia," and matthew.warshaw@d3systems.com. USAGM produced 65 pages in July 2021. *Id.*

USAGM withheld 14 surveys under Exemption 4, and also withheld one of those surveys under Exemption 6. *Id.* ¶ 16. According to McLaren, the questions

4

posed in a survey "are an important proprietary item," and that if the surveys and methodology were published to the general public, that information "could be misused by foreign governments to thwart agency objectives" and "may distort the market." [86] at 22–23.

USAGM also redacted portions of 65 pages of emails under Exemptions 4, 5, and 6. DSOF ¶ 19. Throughout the 65 pages, USAGM redacted phone numbers, names of subordinate agency personnel, and names and email addresses of individual third-party contractor personnel under Exemption 6. *Id.* ¶ 20. Additionally, USAGM redacted proprietary or confidential pricing data submitted by Gallup, a third-party entity, under Exemption 4. *Id.* ¶ 21.

### III. The FOIA Requests to HHS

Plaintiff submitted two FOIA requests to HHS in May 2018. *Id.* ¶ 24. The first request sought: (1) all material related to work requested of, performed by, or discussed with Professor David Senn or his representatives between January 1, 2016 and the date of production; and (2) all correspondence between HHS' refugee resettlement office and employees of ICE and CBP related to age assessments of individuals in the custody of HHS' refugee resettlement office or ICE. *Id.* The second request sought: (1) contracts and related materials produced or received by the refugee resettlement office related to age assessments of unaccompanied alien children by refugee resettlement office care provider Southwest Key; and (2) all invoices or other records maintained or submitted by Southwest Key documenting expenditures by HHS for conducting age assessments. *Id.* ¶ 25.

Celeste Smith, FOIA Director for HHS, provided a declaration in this matter. [86] at 50. In November 2018, she referred part 1 of Plaintiff's first FOIA request to the office of the Assistant Secretary for Public Affairs (ASPA). [86] at 50–51. ASPA concluded that no documents indicated that a contractual relationship existed between HHS and Professor David R. Senn during the time period listed in the FOIA request; thus, Smith determined no responsive documents would exist as correspondence with Professor Senn. *Id.* In explaining her process for making this determination, Smith states that she referred a portion of the request to ASPA and received a response from Garfield Daley, Government Information Specialist, who at the time, served as Acting FOIA Director at the HHS' Program Support Center (PSC) responsible for overseeing the operation of the PSC FOIA office. *Id.* at 51. Daley searched the PSC network drive for "David Senn," "Senn," and "Professor Senn" and found no responsive records to indicate that any contracts or correspondence existed relating to Professor Senn. *Id.* Daley advised Smith that no records existed for contracts with or work performed by Professor Senn for HHS. *Id.* Smith also contacted Mata Sebgoya, who works as a Policy Analyst in the Division of Policy and Procedures at the Office of Refugee Resettlement (ORR), who indicated that ORR did not have a contractual relationship with Professor Senn. *Id.*

To respond to part 2 of the first FOIA request, Smith explains that the HHS Information Technology (IT) group conducted a search to identify responsive emails from ORR's Federal Field Specialists. *Id.* at 51–52. The IT group searched emails for

6

the following terms: "age assessment" or "age assessments"; "age" and "assess*" and "practice" or "protocol" or "policy." *Id.* at 52.

In response to Plaintiff's second FOIA request, Smith determined that HHS did not receive or maintain records of invoices or of other records documenting expenditures made by Southwest Key. *Id.* at 51. Smith explains in her declaration that she initially referred this request to ASPA and received a response from Glenn Voelker, Government Information Specialist, ASPA/HHS. *Id.* Voelker told Smith that any invoices would be maintained by the Administration for Children and Families (ACF). *Id.* Smith then contacted Sebgoya at ORR, who advised that Southwest Key would not have been required to submit invoices regarding expenditures for age assessments. *Id.* Sebgoya explained that this was the case because a forensic dental exam was not a line item in Southwest Key's budget. *Id.* Smith also attests that she received confirmation from Bernard Morgan, Senior Grants Management Specialist, Office of Grants Management, ACF/HHS, that ACF does not receive or collect invoices from a grantee such as Southwest Key as a standard practice, and that none were received or collected from Southwest Key. *Id.*

In November 2018, HHS produced 78 pages of records responsive to part 1 of Stevens' second request, including cooperative agreements between HHS and Southwest Key, along with financial reports submitted by Southwest Key. DSOF ¶ 30. HHS also supplemented this production in January 2019 by producing 66 more pages of cooperative agreements between HHS and Southwest Key. *Id.*

HHS produced records responsive to Plaintiff's first request in several rounds. In January 2019, it produced 88 pages responsive to part 1 of the first request and identified 471 pages responsive to part 2 of the first request. *Id.* ¶ 31. Of the 471 pages responsive to part 2 of the first request, HHS released 29 pages in full and referred 442 pages to DHS for review because the pages originated with that agency. *Id.* In February 2019, HHS produced 158 pages without redaction, produced 150 pages with redactions pursuant to FOIA exemption (b)(6), and referred 989 pages to DHS because the pages originated with that agency. *Id.* In March 2019, HHS identified 2,956 responsive pages to Stevens' first requests, producing 82 pages without redaction, producing 2,146 pages with redactions under FOIA exemption (b)(6), and referring the remaining 728 pages to DHS. *Id.* Smith attests that HHS redacted employees' titles in addition to their names to protect the employees' identities because in some cases, employees could be identified by their titles. [86] at 52.

### IV. The FOIA Request to USCIS

In May 2018, Plaintiff submitted two FOIA requests that USCIS consolidated into one case for expediency. DSOF ¶ 33. The consolidated request sought: (1) all information in any form from Northwestern University, Evanston, IL used for registering, reviewing, and renewing E-Verify for employees at Northwestern University between January 1, 2008 and the present with the exception of individual-level data entered into the system. This includes but is not limited to email, submission forms, data submitted online; (2) all email between Northwestern employees or agents of Northwestern pertaining to E-Verify, including all

attachments, linked documents, and referenced documents between January 1, 2008 and the present. This includes email related to specific personnel, with the understanding that names and other identifying information will be redacted; (3) copies of all contracts (and associated attachments, including for the Scope of Work), and evaluations of work performed for contractors creating, licensing, maintaining, supporting, or assessing software and databases used by USCIS and third parties for verification eligibility of employment through E-Verify between January 1, 2005 to present; and (4) copies of USCIS evaluations on which contracting officers rely for purposes of renewing contracts between January 1, 2005 to present. *Id.*

USCIS produced the responsive records in 2018 and did not withhold or redact any material under any FOIA exemption. *Id.* ¶ 34. In denying USCIS' first motion for summary judgment with respect to the adequacy of the search USCIS performed, this Court found that USCIA' search was not reasonably calculated to return all responsive records insofar as it utilized only the search term "Northwestern University" and did not additionally search for hits corresponding to the search terms "NWU" and "NU." *Id.* ¶ 35; *see* [72] at 20. After this Court's ruling, USCIS' FOIA staff contacted USCIS' Verification Division and asked the office to conduct another search. DSOF ¶ 36. The Verification Division staff determined that the computerized databases SAS, AVANT, CRM, and WebHQ were reasonably likely to contain responsive records and queried those systems using the search terms "NWU," "NU," and "Northwestern University." *Id.* ¶ 37. The search returned no additional responsive records. *Id.*

USCIS received another FOIA request from Plaintiff in August 2018, seeking information relating to two particular contracts with General Dynamics. *Id.* ¶ 39. This Court previously found USCIS' search for records responsive to this request was adequate. *Id.* ¶ 40; *see* [72] at 20. USCIS withheld material responsive to Plaintiff's August 2018 request under exemptions 3, 4, and 6. DSOF ¶ 41. Plaintiff does not challenge the withholdings under exemptions 3 and 6. *Id.* ¶ 42. As for USCIS' withholdings under exemption 4, USCIS redacted price quotes from General Dynamics, including projected yearly quantity and price proposals for work performance under a contract. *Id.* ¶ 44. USCIS asserts that this information is private and confidential, as disclosure would threaten the company's competitive position by providing competitors with the dollar amounts that it proposed to USCIS. *Id.* USCIS also redacted information General Dynamics provided regarding the quantities and prices of computer equipment that it would provide pursuant to a particular contract. *Id.* ¶ 45. USCIS additionally redacted information regarding a contract modification to add a support facility to be managed by General Dynamics. *Id.* ¶ 46.

**V. The FOIA Request to USAID**

Plaintiff submitted a FOIA request to USAID in October 2015, seeking records relating to contracts or emails with Northwestern University, including records relating to Northwestern's campus in Doha, Qatar. *Id.* ¶ 47. USAID conducted a search, which this Court discussed and considered in its prior summary judgment opinion. *Id.* ¶ 48; *see* [72] at 21–23. This Court denied summary judgment because

USAID used only the term "Northwestern" without using other common abbreviations for the school. [72] at 23.

Since this Court's first summary judgment ruling, an e-discovery expert at USAID attempted to search USAID's entire Gmail vault which encompasses USAID's email and cloud-stored records. DSOF ¶ 50. USAID searched for the terms "NWU," "NU," and "Northwestern," which yielded 307,747 items for "NWU"," more than 1.4 million items for "Northwestern," and more than 1.3 million items for "NU." *Id.* Christopher Colbow, FOIA Officer for USAID, submitted a declaration for this case. [86] at 148. Colbow attests that each item could "be an email or a document or one or more pages." *Id.* at 149. Colbow explains that USAID attempted to create a sampling methodology that would allow it to sample with a 95% confidence level with a confidence interval of 10 (meaning a 10% margin of error), but faced multiple challenges attempting to implement this methodology. *Id.* USAID would have to export the entire universe of the search, which would result in duplicating potentially terabytes of data. *Id.* USAID does not know the length of this process nor the costs, as the size of the data set is unknown until exporting begins. *Id.* Even if USAID could overcome this challenge, according to Colbow, its Forensics/e-Discovery expert estimated that sampling 96 random items from each of the three sets of records would take between 7 to 42 days for each set; and even if USAID could dedicate the manpower for that effort, the exported files remain searchable for only 15 days, so the process may not even succeed based on the 7-to-42 day estimated time to completion. *Id.* Colbow also asserts that a sampling is impractical and unlikely to

result in relevant documents, because: (1) the term "Northwestern" is a directional locator; "NWU" is an acronym for North-West University in South Africa; and (3) "NU" is a descriptor of one of the 56 recognized ethnic groups of China and a common letter combination in words like "January." *Id.* at 150.

After this Court's first summary judgment ruling, USAID's Mission in Pakistan, which had already searched the term "Northwestern" previously, searched its Office of Education's Google Docs folder using the terms "NWU" and "NU" and found no responsive records. DSOF ¶ 56. Similarly, USAID's Bureau for the Middle East, which had previously searched for the term "Northwestern," used the search terms "NWU" and "NU" on its Google drive and on the shared network drive of its predecessor bureau and found no responsive records. *Id.* ¶ 57. Since conducting its previous search, USAID's Asia Bureau and Office of Afghanistan and Pakistan Affairs reintegrated into USAID's Asia Bureau. *Id.* ¶ 58. After this Court's first summary judgment ruling, the Asia Bureau searched its shared drive and Google drive using the search terms "Northwestern," "NWU," and "NU" and found no responsive records. *Id.*

## VI. The FOIA Requests to ICE

Plaintiff submitted ten FOIA requests to ICE between March and July 2018. *Id.* ¶ 59. This Court granted summary judgment to ICE with respect to the adequacy of its searches for responsive records. *Id.*

12

Regarding ICE's withholdings and redactions, this Court directed ICE to submit a *Vaughn* index[1] with Defendants' renewed motion for summary judgment, to enable it to assess the propriety of withholdings. *Id.* ¶ 60; [71]. Because ICE produced more than 8,000 pages of responsive material, the parties agreed to present this Court with a subset of records to serve as a sample for summary judgment purposes. DSOF ¶ 61. ICE withheld information under exemption 5 based on the deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine. *Id.* ¶ 62.

## VII. Claims and Procedural History

Plaintiff brought this lawsuit under FOIA, 5 U.S.C. § 522, seeking records she alleges that the various federal agencies wrongfully withheld from her relating to twenty-nine FOIA requests she submitted to eleven different federal agencies. [1]; [72] at 5.[2]

Defendants moved for summary judgment for the first time in March 2021, at which time outstanding issues remained as to requests Plaintiff submitted to six

---

[1] A "*Vaughn* index describes the documents withheld or redacted and the FOIA exemptions invoked, and explains why each exemption applies." *White Coat Waste Project v. U.S. Dep't of Veterans Affs.*, 404 F. Supp. 3d 87, 94 n.4 (D.D.C. 2019) (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1145 n.1 (D.C. Cir. 2015)).

[2] Plaintiff's joinder of the various agencies in a lawsuit challenging unique FOIA requests to each of those agencies arguably is impermissible under the Federal Rules of Civil Procedure. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) ("Unrelated claims against different defendants belong in different suits") (quoting *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007)). Nevertheless, it does not appear that Defendants have raised the issue of misjoinder, and the case has already reached the summary judgment stage. Thus, this Court declines at this juncture to sever any parties. *See* Fed. R. Civ. P. 21 ("Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.").

13

agencies—USAGM, HHS, USCIS, USGS, USAID, and ICE. [72] at 5. After considering the record, this Court granted summary judgment as to USGS and ICE on the issue of adequacy of search. *Id.* at 25. This Court denied summary judgment to USAGM and HHS because those agencies provided insufficient detail in their declarations in their declarations describing their search process. *Id.* This Court also denied summary judgment to USCIS and USAID because their searches relating to "Northwestern University" were inadequate. *Id.* This Court's first summary judgment opinion did not consider the propriety of any agencies' withholding of documents under any FOIA exemption.

The remaining six agencies now renew their motion for summary judgment, arguing that the record entitles them to judgment because (1) they have conducted reasonably adequate searches in response to Plaintiff's FOIA requests; and (2) they properly withheld documents under FOIA exemptions. [84]. Plaintiff opposes the motion, challenging: (1) the adequacy of searches by USAGM, HHS, USCIS, and USAID; and (2) the withholdings by USAGM, HHS, USCIS, and ICE. [89]. Plaintiff does not challenge the withholdings made by USGS or USAID. *See* [85] at 2; *see generally* [89].

## ANALYSIS

The FOIA requires federal agencies to make their records available to the public upon request. 5 U.S.C. § 552(a)(3). For summary judgment purposes, the proper standard on summary judgment depends on whether this Court is considering

the adequacy of an agency's search or the propriety of its withholdings. *Stevens v. U.S. Dep't of State,* 20 F.4th 337, 342 (7th Cir. 2021).

To "prevail on summary judgment in this type of FOIA claim, the agency must show that there is no genuine issue of material fact about the adequacy of its records search." *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015). A "search is adequate if it is the result of 'a good faith effort' and is also 'reasonable in light of the request.'" *Stevens*, 20 F.4th at 342 (quoting *Rubman*, 800 F.3d at 387). Courts presume good faith, and an agency "is entitled to support its searches through affidavits." *Id.* The affidavits must be "reasonably detailed, set forth the search terms used in electronic searches and the kind of search performed by the agency, and aver that all files likely to contain responsive documents were searched." *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018).

If, on the other hand, a plaintiff challenges an agency's withholdings, a different standard applies. If "material is responsive, an agency must release it unless the agency can carry its burden to establish that the material falls under one of the nine FOIA exemptions." *Stevens*, 20 F.4th at 344 (citing 5 U.S.C. § 552(b)); *see also Stevens v. U.S. Immigr. & Customs Enf't*, 432 F. Supp. 3d 752, 760 (N.D. Ill. 2020) ("Because disclosure is the 'dominant objective' of FOIA, courts are to construe the exemptions narrowly.") (quoting *Patterson v. Internal Revenue Serv.*, 56 F.3d 832, 836 (7th Cir. 1995)). A district court may grant summary judgment to the government in a FOIA case only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to

demonstrate that material withheld is logically within the domain of the exemption claimed." *Patterson*, 56 F.3d at 836 (quoting *PHE, Inc. v. Dep't of Justice,* 983 F.2d 248, 250 (D.C. Cir. 1993)).

With these standards in mind, this Court turns to the parties' arguments as to each of the challenged FOIA requests.

## I.  USAGM

USAGM moves for summary judgment, arguing that it had performed an adequate search and that it appropriately withheld documents under Exemption 4. [85] at 3–5, 11.

### A.  Adequacy of Search

In this Court's first summary judgment order, it found that the scope of USAGM's search was adequate, but that USAGM failed to adequately describe its search process, including providing its search terms. [72] at 15–16.

USAGM has remedied this problem. In a new declaration from McLaren, USAGM details its search process. Specifically, McLaren attests that, based on his knowledge of how USAGM retains contracts and conducts searches for FOIA requests, there is only one methodology the employees could have used when they conducted the initial search for responsive documents in 2016 and 2017: they searched for "D3 Systems" by vendor code within "Momentum," a search database available to the Agency since 2010. [86] at 20. Search of contracts prior to 2010 would have used another system. *Id.* The same search conducted today, according to McLaren, yields all D3 Systems contract actions. *Id.* McLaren also explains that, after

16

the FOIA appeals office had determined that the USAGM's Contracts Office had not thoroughly searched email, system records, reports, draft reports, and notes, the Contracts Office in 2018 completed a supplemental search for all contractual material mentioning "D3" as a contracting party or "D3 Systems," yielding 1,487 additional pages. [86] at 21. After this Court's 2021 summary judgment ruling, USAGM further searched its emails and found 65 pages that either mention D3 Systems, were shared with D3 Systems, or discuss internally any contract that D3 Systems was invited to bid on, even if D3 Systems were not ultimately awarded the contract. DSOF ¶ 15. McLaren used the following search parameters: "BBG59-C-10-0104," "BBG50-P-15-0859," "BBG50-P-16-0599," "D3 Systems," "Intermedia," and matthew.warshaw@d3systems.com. USAGM produced 65 additional pages in July 2021. *Id.* McLaren avers that he has no reason to believe that additional responsive records exist within the agency's custody and control. [86] at 22. McLaren's declaration satisfies this Court's initial concerns regarding the adequacy of USAGM's search, as it is "reasonably detailed, set[s] forth the search terms used in electronic searches and the kind of search performed by the agency, and aver[s] that all files likely to contain responsive documents were searched." *Henson*, 892 F.3d at 875.

Plaintiff, for her part, complains that USAGM has merely described the search of the "Momentum" database and "another system" for pre-2010 contracts without first describing USAGM's "general recordkeeping system and how those two systems fit within the agency recordkeeping." [89] at 4. But McLaren has explained in his declaration that the agency's Contracts Office conducted the search for all D3

Systems, Inc. contracts from 2003 because that office was the "logical location" for responsive documents based on the FOIA request, and that "Momentum" and the other "system" for pre-2010 contracts were the two search databases available for the Contracts Office to conduct the search. [86] at 20. This account of USAGM's "methods provides sufficient detail for [this Court] to say that its methods were reasonable." *Stevens,* 20 F.4th at 343.

Plaintiff also argues that USAGM does not adequately detail how it conducted a supplemental search in 2018 that yielded the additional 1,487 pages of documents. [89] at 4. This Court disagrees. McLaren explains that, to yield these additional documents, the Contracts Office searched for *contractual material* (as opposed to the initial search by vendor code) for material referencing "D3" or "D3 Systems." [86] at 21. The "agency's actions to rectify the failings of the initial search that demonstrate an adequate search was performed." *Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at \*6 (N.D. Ill. Nov. 4, 2014).

Plaintiff additionally criticizes McLaren for conducting an additional email search in 2021 using expanded search terms, which yielded a few dozen additional responsive pages. [89] at 4. Plaintiff suggests that this Court should be suspicious that this additional search yielded new documents that had not previously been captured by other searches, *id.*, but this Court has the opposite impression. After all, the agency undertook this search as a show of good faith to ensure that all responsive documents have been identified. An agency's good faith "can be reinforced by evidence of the agency's attempts to satisfy the [FOIA] request." *Henson*, 892 F.3d at 875.

Moreover, the fact that the first searches did not yield these new documents does not necessarily mean that they were not reasonably adequate. It "is inevitable that a search may fail to find every single responsive document, but FOIA does not require such a high standard—a search need not be perfect, only adequate." *Stevens*, 2014 WL 5796429, at *5 (internal quotation marks and citation omitted); *see also Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 825 (N.D. Ind. 2015) (explaining that the "agency won't be denied summary judgment simply because a better search could be imagined").

In sum, this Court concludes that USAGM has conducted a reasonably adequate search in response to Plaintiff's FOIA request.

### B. Exemption 4

In opposing summary judgment, Plaintiff also challenges USAGM's withholding of surveys Exemption 4. [89] at 9–11.

Exemption 4 protects from disclosure "matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Exemption 4 applies when "disclosing the contested information would cause 'substantial competitive harm to the firm that owns the information.'" *Henson*, 892 F.3d at 877 (quoting *Gen. Elec. Co. v. NRC*, 750 F.2d 1394, 1402–03 (7th Cir. 1984)). Information is "confidential" under Exemption 4 where it "is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019).

19

Here, USAGM properly invoked Exemption 4. The *Vaughn* Index describes the withheld surveys as proprietary and redacted emails as containing proprietary or confidential pricing information, *see* [86] at 24–27, and McLaren further explains in his declaration that if the information "were published to the general public, there would be no benefit to the United States public," and that instead, "the survey information could be misused by foreign governments to thwart agency objectives¸ *id.* at 22. These assertions that the withheld information was both proprietary and undisclosed to the general public suffice to meet USAGM's burden of showing that Exemption 4 applies. *See Henson*, 892 F.3d at 877.

For these reasons, this Court grants summary judgment to USAGM.

## II.     HHS

This Court next considers whether HHS has complied with its FOIA obligations. In its original summary judgment order, this Court ruled that HHS had not adequately explained how it determined that it: (1) had no contract with Professor Senn during the relevant time period; and (2) did not receive invoices or similar records from Southwest Key. [72] at 16–17. This Court also faulted HHS for not listing the search terms it used when searching for emails on the subject of "age assessment." *Id.* at 17. This Court found other aspects of HHS' search adequate. *Id.* at 17–18.

### A.     Adequacy of Search

HHS again moves for summary judgment on the adequacy of its search. This Court finds that HHS has rectified the errors this Court identified in its first summary judgment order.

First, HHS explains how it determined that HHS had no contract with Professor Senn. Smith's declaration states that Garfield Daley, then acting FOIA Director for HHS' Program Support Center (PSC) searched the PSC network drive for "David Senn," "Senn," and Professor Senn," and found no responsive records indicating that any contract or correspondence existed relating to Professor Senn. [86] at 51. Smith also confirmed this through speaking with her colleague Mata Sebgoya, who reported that James De La Cruz, the senior supervisor of HHS' refugee resettlement office, represented that the office had no contractual relationship with medical services providers such as Professor Senn. *Id.* These additional details adequately demonstrate HHS' good faith effort in searching for whether a contractual relationship existed between it and Professor Senn during the relevant time period. Plaintiff argues that Professor Senn conducts age assessments not as a medical provider but as a forensic investigator at the request of ICE. [89] at 5. If that were the case, however, it is unclear why HHS (rather than ICE) would have a contractual relationship with Professor Senn. Plaintiff also insists that a contract must exist because Professor Senn told her that HHS was paying his university for his services. [89] at 7. But if that were true, then it would make more sense that HHS maintained a contract with Senn's university, not Senn himself.

Likewise, Smith provides more color as to how HHS determined that no invoices existed for Southwest Key: she avers that she referred the request for invoices to government information specialist Glenn Voelker, who advised that invoices would be maintained by HHS' Administration for Children and Families (ACF); she also consulted with Sebgoya, who advised that Southwest Key would not have been required to submit invoices regarding expenditures for age assessments to ACF; and she received further confirmation from Bernard Morgan, a senior grants management specialist for ACF, that ACF does not receive or collect invoices from a grantee such as Southwest Key and that none were received or collected from Southwest Key. [86] at 51. This detailed description satisfies the Court that HHS conducted a thorough search of responsive records.

HHS additionally cures its past deficiencies by explaining the search terms it used relating to age assessment within the email files of ORR's Federal Field Specialists. Smith states that HHS used the following terms: "age assessment or "age assessments"; and (2) "age" and "assess*" and "practice" or "protocol" or "policy." *Id.* at 52. This search, Smith explains, would have located any emails that contained a combination of the word "age," any word with the root "assess" (i.e., assessing, assessment, assessed, assessing), and any of the words "practice," "protocol," or "policy." *Id.* at 52. This Court finds these terms reasonable.

### B. Exemption 6

HHS also moves for summary judgment, arguing that it appropriately redacted the names and titles of various employees under Exemption 6. [91] at 13.

Exemption 6 permits an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" covers records "on an individual which can be identified as applying to that individual." *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 264 (D.D.C. 2014) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). Here, HHS explained, through Smith's declaration, that it redacted employees' titles in addition to their names to protect the employees' identities. [86] at 52. According to Smith, HHS ran Google searches of titles at specific HHS shelter facilities, and those searches yielded names of individuals who currently or formerly held those titles. *Id.* Thus, Smith concluded that redacting titles would be appropriate because employees can sometimes be identified by their titles. *Id.*

Plaintiff's sole argument posits that public employees' names and titles are considered public information by regulation. [89] at 4. Plaintiff cites 5 C.F.R. § 293.311, which states that a federal employee's name and position, among other things, is "information" that is generally "available to the public." But that regulation also states that the "agency will generally not disclose information where the data sought is a list of names" or "present or past position titles" "of Federal employees which . . . [w]ould otherwise be protected from mandatory disclosure under an exemption of the FOIA." *Id.* § 293.311(b). This "regulation accordingly, by its own terms, does not disarm an otherwise available FOIA exemption." *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 260 (D.D.C. 2018). Plaintiff does not

otherwise argue that HHS employees do not have a privacy interest in keeping their titles private. Thus, this Court grants summary judgment to HHS.

## III. USCIS

In its original summary judgment order, this Court found that USCIS had adequately searched all files reasonably likely to contain responsive material to Plaintiff's FOIA requests, but that USCIS might have missed responsive documents by searching only "Northwestern University" and not also "NWU" and "NU" for responsive documents. [72] at 18–20.

### A. Adequacy of Search

USCIS argues that it has now cured the search term issue this Court previously identified because its Verification Division—which this Court previously approved as the office reasonably likely to maintain responsive records—queried its computerized databases (named SAS, AVANT, CRM, and WebHQ) and found no additional responsive records using the additional search terms. [86] at 7–8. USCIS' representative, Cynthia Munita, submits an affidavit attesting to this fact and asserting that USCIS believes that all responsive records have been located and produced. [86] at 75.

Plaintiff contends that "there is no way" for this Court to determine whether, in fact, these four databases were reasonably likely to contain responsive records. [89] at 5. But Munita avers that the Verification staff determined that those computerized databases were the ones "reasonably likely to contain responsive records," and that USCIS has no reason to believe additional records exist within its custody and

24

control. [86] at 75. This satisfies the Court that USCIS has searched the correct databases for responsive documents. *See, e.g.*, *Stevens v. U.S. Dep't of State*, No. 17 C 2494, 2020 WL 1330653, at *4 (N.D. Ill. Mar. 23, 2020) (holding that the plaintiff's "speculation that responsive records may be found in other locations is not enough to undermine" the agency's detailed affidavit stating that it conducted a thorough search of all "locations that were reasonably likely to contain records responsive to" the FOIA request), *aff'd*, 20 F.4th 337 (7th Cir. 2021); *see also, e.g.*, *Knight First Amend. Inst. at Columbia Univ. v. Centers for Disease Control & Prevention*, 560 F. Supp. 3d 810, 825 (S.D.N.Y. 2021) (noting that an "an agency need not search an office that individuals well-positioned to have knowledge of the offices reasonably determine is unlikely to have responsive documents") (internal quotation marks and citation omitted).

### B.    Exemption 4

As she did with USAGM, Plaintiff challenges USCIS' invocation of Exemption 4. [89] at 10–11. Plaintiff argues that USCIS' *Vaughn* index is "formulaic" and "ambiguous." *Id.* at 11. This Court overrules Plaintiff's challenge. USCIS' detailed *Vaughn* index, which this Court has reviewed, explains USCIS' basis for redacting under Exemption 4. For instance, many of the redactions concern "price quotes" that USCIS' contractor, General Dynamics, provides to USCIS. *E.g.*, [86] at 102–03. As USCIS explains, it redacted actual dollar figures provided by General Dynamics because this information "is customarily and actually treated as private confidential, since disclosure would threaten the company's competitive position within the

25

business arena by providing competitors an unfair advantage if competitors knew the exact dollar amount the contractor was proposing to charge the government." *Id.* Contractors' pricing information falls squarely within Exemption 4's ambit. *See Canadian Com. Corp. v. Dep't of Air Force*, 514 F.3d 37, 43 (D.C. Cir. 2008); *Skybridge Spectrum Found. v. F.C.C.*, 842 F. Supp. 2d 65, 80 (D.D.C. 2012).

For these reasons, this Court grants summary judgment to USCIS.

## IV.    USAID

In considering USAID's efforts on Defendants' first summary judgment motion, this Court identified only one issue with USAID's searches: like USCIS, USAID searched their files using only the search term "Northwestern" and not other common terms like "NWU." [72] at 22–23. USAID now renews its motion for summary judgment, arguing that it rectified the omission where it could and explained why it was not able to do so where it could not. [85] at 8–10.

As USAID explains, it conducted the additional searches for the terms "NU" and "NWU" for the Mission in Pakistan and for the Bureau for the Middle East; and as it turned out, USAID found no responsive documents in either place. [86] at 150–51. These places have now indisputably conducted reasonably adequate searches.

As to other locations, USAID was less successful in executing searches. USAID's Mission in West Bank and Gaza asked its IT specialist to search local drives and shared drives using the terms "NWU" and "NU."  [86] at 150. The specialist declined to conduct the additional searches, representing that it believed the Mission's system would be at an elevated risk of crashing and having an elongated

recovery period, if recovery could even be accomplished. *Id.* And USAID also faced issues when performing a more global search for the terms "NWU," "NU," and "Northwestern" on its cloud drive, which houses all agency email and shared information. *Id.* at 148–49. As USAID's declarant, Christopher Colbow, explains, those searches hit on millions of items, and to even sample items from each search would present an "incredibly burdensome task." *Id.* at 149. Colbow estimates that even sampling 96 items from each dataset would entail 7 to 42 days of work, and that conducting that sampling might be rendered even more impracticable by security concerns rendering exported files searchable for only 11 working days. *Id.* at 149–50. Further, Colbow explains that based on other searches conducted by USAID, he believes that there would be a high yield of false positives—that is, the terms "NU," "NWU," and "Northwestern" are likely to turn up items having nothing to do with Northwestern University. *Id.*

Under FOIA, "an agency shall provide the record in any form or format requested by the person if the record is *readily reproducible* by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B) (emphasis added). The term "readily reproducible" is not synonymous with "technically feasible." *Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 55 (D.D.C. 2015) (quoting *Scudder v. CIA*, 25 F. Supp. 3d 19, 38 (D.D.C. 2014)). Thus, the Court may consider the burden on the agency in determining whether the documents are readily reproducible. *Id.* The agency's evidence of burden "must be not only compelling, but also demonstrate that compliance with a request would imposes a *significant* burden or interference with

the agency's operation." *Public.Resource.org v. U.S. Internal Revenue Serv.*, 78 F. Supp. 3d 1262, 1266 (N.D. Cal. 2015). Courts "often look for a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." *Wolf v. C.I.A.*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008). Assuming an agency details the burden of such a process, it is excused from complying with FOIA requests where it must review a "vast quantity of material." *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990).

Based on Colbow's representations, this Court finds that USAID has offered a sufficiently detailed explanation regarding the burden of conducting additional searches of "NU" and "NWU" in the cloud drive and in the Mission in West Bank and Gaza. Based on the technological challenges, the overwhelming number of documents, and impracticability of reviewing such a vast quantity of material, this Court concludes that FOIA does not require USAID to: (1) run the additional searches for the Mission in West Bank and Gaza; or (2) extract and review samples of documents hitting on "Northwestern," "NWU," and "NU" from its cloud drive. USAID is excused from running those searches and has now conducted a reasonably adequately search for responsive documents.

Moreover, Plaintiff has not challenged any of USAID's withholdings. *See generally* [89]. This Court therefore grants summary judgment to USAID.

## V.    ICE

This Court previously found that ICE conducted an adequate search in response to Plaintiff's FOIA request and granted summary judgment on that point.

[72] at 25. ICE moves now for summary judgment on its withholdings based on Exemption 5. [85] at 13–14.

Exemption 5 allows the agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 522(b)(5). Exemption 5 covers the deliberative-process privilege, which protects government "documents reflecting the deliberative or policy-making processes of governmental agencies." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004). This privilege distinguishes between "predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785–86 (2021). Documents are "predecisional" if generated before the agency's final decision, and "deliberative" if prepared to help the agency formulate its position. *Id.* at 786. Exemption 5 also incorporates the attorney-client privilege and the attorney work-product protection. *Id.* at 785; *Nat'l Immigrant Just. Ctr. v. U.S. Dep't of Just.*, No. 12-CV-04691, 2018 WL 1508531, at *3 (N.D. Ill. Mar. 27, 2018), *aff'd,* 953 F.3d 503 (7th Cir. 2020).

Here, ICE provided a *Vaughn* index describing eighty-one entries of documents it withheld or redacted under Exemption 5, pursuant to the deliberative-process privilege, the attorney-client privilege, the attorney work product privilege, or a combination of those privileges. [86] at 156, 160–74. This Court has reviewed the *Vaughn* index and finds the entries very detailed as to the bases under which ICE

has withheld certain documents. For instance, ICE describes entry 2 as a document comprising a "draft Request for Proposal – Questions and Answers relating to a detention facility in Houston, Texas." *Id.* at 160. ICE describes the draft as "incomplete in that it contains unanswered questions, suggestions of who could address the questions, draft answers and edits, as well as internal questions." *Id.* The document is an attachment to emails between ICE Enforcement and Removal Operations employees and refers to aspects regarding "contract/set-up of a contract detention facility." *Id.* ICE withheld this document to "prevent[] the premature disclosure of proposed policies." *Id.* This description satisfies the Court that the document is both predecisional and deliberative. *See, e.g.*, *Stevens*, 20 F.4th at 345 (finding emails containing preliminary agendas for official visits, memo drafts, and the like to be protected under Exemption 5).

Although Plaintiff contests ICE's withholdings, she lodges no specific objection to any entry on the *Vaughn* index, instead arguing generally that ICE does not show that its communications warrant protection. [89] at 13. Absent any specific objection, however, this Court will not further question ICE's withholdings, particularly in light of its independent review of the adequacy of ICE's *Vaughn* index and the fact that ICE has produced already 8,000 pages of material. *See Stevens*, 20 F.4th at 345 (overruling the plaintiff's "general objections" to the agency's Exemption 5 withholdings, because the plaintiff "provides no specifics" and the court was satisfied with its independent review of the *Vaughn* index and the fact that the agency had

produced 350 documents); *see* [86] at 156. Accordingly, this Court grants summary judgment to ICE.

## CONCLUSION

For the reasons explained above, this Court grants summary judgment [84] to the remaining agencies—USAGM, HHS, USCIS, USAID, ICE, and USGS. The Clerk is directed to enter judgment in Defendants' favor. Civil case terminated.

E N T E R:

Dated: March 9, 2023

_____
MARY M. ROWLAND
United States District Judge

31